IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-00190-PAB-KLM

JOHN M. MBAKU,
LUVIBIDILA JOLIE LUMUENEMO,

      Plaintiffs,

v.

BANK OF AMERICA, NATIONAL ASSOCIATION,
as successor by merger to BAC Home Loans Servicing, LP
f/k/a Countrywide Home Loans Servicing LP,

      Defendant.

_____

**ORDER**
_____

      This matter is before the Court on the Recommendation of United States

Magistrate Judge Kristen L. Mix (the "Recommendation") [Docket No. 22] filed on

August 20, 2012.  The magistrate judge recommends that the Court grant the motion to

dismiss [Docket No. 13] filed by defendant Bank of America, National Association

("BANA").  Plaintiffs filed timely objections [Docket No. 23] on September 4, 2012.

Thus, the Court will "determine de novo any part of the magistrate judge's disposition

that has been properly objected to" by plaintiffs.  FED. R. CIV. P. 72(b)(3).  In light of

plaintiffs' pro se status, the Court construes their filings liberally.  *See Haines v. Kerner*,

404 U.S. 519, 520 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991).

## I.  PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE RECOMMENDATION

      Plaintiffs make several objections to the Recommendation, which the Court

reviews below.

**A.  Fair Debt Collection Practices Acts**

Plaintiffs allege that defendant violated the federal Fair Debt Collection Practices Act ("FDCPA"), *see* 15 U.S.C. § 1692 (2012) and the Colorado FDCPA.  Colo. Rev. Stat. § 12-14-101 (2012).[1]  The Recommendation concluded that plaintiffs failed to allege facts showing that defendant is a "debt collector" subject to the FDCPA.  Docket No. 22 at 7-9.  Plaintiffs object, arguing that defendant meets the statutory definition of a debt collector because defendant did not receive assignment of plaintiffs' loan until after the loan was in default.  Docket No. 23 at 3.

The FDCPA defines a debt collector as a person "who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6); *see also* Colo. Rev. Stat. § 12-14-103(2)(a).  An assignee is not a debt collector under the FDCPA unless the debt is in default at the time of assignment.  *See* 15 U.S.C. § 1692a(6)(F)(iii); *see also* Colo. Rev. Stat § 12-14-103(2)(b)(VII)(C) ("'Collection agency' does not include . . . [a]ny person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent that: . . . [s]uch activity concerns a debt which was not in default at the time it was obtained by such person"); *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) ("a debt collector does not include . . . an assignee of a debt, as long as the debt was not in

_____

[1] As the Colorado FDCPA is patterned on the federal law, plaintiffs' FDCPA claims will be addressed together.  *See Udis v. Universal Commc'ns Co.*, 56 P.3d 1177, 1180 (Colo. App. 2002).

2

default at the time it was assigned.").

The complaint asserts that, as of September 2010, plaintiffs were unemployed
and were eligible for the Home Affordable Modification Program ("HAMP").  Docket No.
1 at 5, ¶ 24.  The complaint also asserts that defendant instituted foreclosure
proceedings on August 16, 2010.  Docket No. 1 at 3, ¶ 7; *see also* Docket No. 1-1 at 2
(Notice of Election and Demand for Sale by Public Trustee dated August 16, 2010).[2]
The complaint further asserts that defendant did not receive assignment of the loan
until April 28, 2011.  Docket No. 1 at 3, ¶ 8; Docket No. 1-1 at 4 (Assignment of Deed of
Trust from Mortgage Electronic Registration System (MERS) to BAC Home Loans
Servicing, L.P., dated April 28, 2011).  Defendant does not challenge plaintiffs'
assertion that it is a debt collector because it received assignment of the loan after
default.  *See* Docket No. 24 at 3-4.

Without identifying a statutory provision, plaintiffs allege that defendant violated
the state and federal FDCPA when it "harassed plaintiffs by sending its agents to
plaintiffs' home on several occasions for dubious purposes."  Docket No. 1 at 15, ¶ 90.

---

[2] When considering a motion to dismiss, a court typically disregards facts
supported by documents other than the complaint unless it first converts the motion to
dismiss into a motion for summary judgment.  *Jackson v. Integra Inc.*, 952 F.2d 1260,
1261 (10th Cir. 1991).  However, a court may consider documents outside of the
complaint on a motion to dismiss in certain instances.  Of relevance here is the
exception permitting a court to consider documents subject to judicial notice, including
court documents and matters of public record, *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24
(10th Cir. 2006), as well as the exception allowing consideration of such documents that
are both central to the plaintiffs' claims and to which the plaintiffs refer in their
complaint.  *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th
Cir. 1997).  The Court has examined the documents submitted by the parties in
connection with the complaint and the motion to dismiss and has determined that each
of the documents cited in this opinion may appropriately be referenced by the Court.

### 1. Posting a Notice

Plaintiffs allege that on November 22, 2011, defendant posted a notice on their

front door stating in pertinent part:

> This property has been determined to be vacant and abandoned.  This
> information will be reported to the mortgage servicer responsible for
> maintaining the property.  The mortgage servicer intends to protect this
> property from deterioration.  The property may have its locks replaced and/or
> plumbing systems winterized in the next few days.  If the property is <u>NOT</u>
> VACANT and ABANDONED, please call BAC Field Services immediately at
> (866) 515-9759.

Docket No. 1 at 15, ¶ 90; Docket No. 1-1 at 28.  Plaintiffs assert that the notice

"constitutes contact by embarrassing media, so as to advertise to the whole

neighborhood its attempt to collect a debt."  Docket No. 1 at 25, ¶¶ 169, 174.

The FDCPA contains a number of substantive provisions that might apply to

plaintiffs' factual allegations.[3]  For one, it prohibits conduct whose "natural consequence

. . . is to harass, oppress, or abuse any person in connection with the collection of a

debt."  15 U.S.C. § 1692d; *see also* COLO. REV. STAT. § 12-14-106(1).  Examples of

harassment include using obscene language, threatening violence, or, with the intent to

annoy or abuse any person, calling repeatedly or continuously.  15 U.S.C. § 1692d(1),

(2), (5); *see also* COLO. REV. STAT. § 12-14-106(1)(a), (b), (e).  The FDCPA also

prohibits the use of "unfair or unconscionable means to collect or attempt to collect any

debt."  15 U.S.C. § 1692f; *see also* COLO. REV. STAT.  § 12-14-108(1).  In this case,

defendant's conduct does not violate § 1692d.  The natural consequence of the notice

---

[3] Plaintiffs challenge only the posting of the notice and not defendant's right to
take the action described in the notice or defendant's determination that the property
was vacant.  *See* Docket No. 1 at 23-25.

4

was to provide plaintiffs with a means of notifying defendant that their property was not

vacant.  Although it is also natural that the notice would cause plaintiffs concern, the

notice itself provides a way of alleviating that concern.  The alternative–changing the

locks without posting a notice–seems far more likely to "harass, oppress, or abuse"

plaintiffs.  15 U.S.C. § 1692d.

Several FDCPA provisions bar practices that might inappropriately publicize a

consumer's debt.  Specifically, the FDCPA prohibits communicating with a consumer

regarding a debt via post card, 15 U.S.C. § 1692f(7); *see also* COLO. REV. STAT. § 12-

14-108(1)(g), and publishing a "list of consumers who allegedly refuse to pay debts,

except to a consumer reporting agency" or to a potential creditor, employer, or insurer

of the debtor.  15 U.S.C. § 1692d(3), 1681b(a)(3); *see also* COLO. REV. STAT. § 12-14-

106(1)(c).  The FDCPA also prohibits communicating to a third party any information

related to the collection of a debt "without the prior consent of the consumer given

directly to the debt collector, or the express permission of a court of competent

jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy."

15 U.S.C. § 1692c(b); *see also* COLO. REV. STAT. § 12-14-105(2).  The statute defines

communication as the "conveying of information regarding a debt directly or indirectly to

any person through any medium."  15 U.S.C. § 1692a(2); *see also* COLO. REV. STAT.

§ 12-14-103(3).

In *Zortman v. J.C. Christensen & Associates*, 870 F. Supp. 2d 694, 707-08 (D.

Minn. 2012), the court held that a debt collector did not violate the FDCPA's prohibition

on third-party communications by leaving a voicemail message identifying neither a

consumer nor a debt.  The message stated, in pertinent part: "We have an important

5

message from J.C. Christensen & Associates.  This is a call from a debt collector." *Id*. at 696.

Plaintiffs argue that the posted notice was unlawful because it wrongfully published plaintiffs' status as debtors.  Docket No. 1 at 25, ¶¶ 169, 174.  However, the notice does not violate § 1692d(3) as it does not state that plaintiffs "allegedly refuse to pay debts," only that defendant believed the residence to be vacant.  It does not violate § 1692c(b) as it does not identify a debtor or a debt.  *See Zortman*, 870 F. Supp. 2d at 707-08.  It states that the property has been determined to be vacant and abandoned and that its status will be reported to the mortgage servicer.  Docket No. 1-1 at 28. Given the importance of providing notice to individuals at risk of losing their home, the purpose of the FDCPA would not be served by punishing defendant's conduct here.[4]

Plaintiffs' general statement that defendant's agents made several other visits for "dubious" purposes, without additional information, is too vague to state a claim under the FDCPA.  *See* FED. R. CIV. P. 8; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

## 2.  *Deceptive Representations*

The FDCPA bars the use of "false, deceptive, or misleading representation[s] or

---

[4] The importance of notice in this instance is underscored by Colorado law, which requires that a party seeking foreclosure post a notice of the upcoming Rule 120 hearing "in a conspicuous place on the property that is the subject of the sale.  If possible, the notice shall be posted on the front door of the residence."  COLO. REV. STAT. § 38-38-105(3).

means in connection with the collection of any debt," 15 U.S.C. § 1692e, including the "threat to take any action that cannot legally be taken." *Id*. at § 1692e(5); *see also* COLO. REV. STAT. § 12-14-107.  Plaintiffs allege that defendant violated the FDCPA by falsely misrepresenting itself as a mortgagee, Docket No. 1 at 25, ¶¶ 168, 173, and that defendant lacked the right to foreclose on plaintiffs' property.  Docket No. 1 at 15, ¶ 84.

Under Colorado law, a "holder of an evidence of debt" may elect to foreclose when a borrower has violated a covenant in a deed of trust.  COLO. REV. STAT. § 38-38-101(1).  A holder of an evidence of debt ("holder") is the "person in actual possession of or person entitled to enforce an evidence of debt." *Id*. at § 38-38-100.3(10).  The term includes the "person in possession of a negotiable instrument evidencing a debt, which has been duly negotiated to such person or to bearer or indorsed in blank." *Id*. at § 38-38-100.3(10)(c).  In order to foreclose, the holder must file a notice of election and demand signed by the holder (or the holder's attorney) and the original evidence of debt with the public trustee for the country where the property is located. *Id*. at § 38-38-101(1)(b).  However,  in lieu of filing the original evidence of debt, the holder may foreclose as a "qualified holder" by filing a "copy of the evidence of debt and a certification signed and properly acknowledged by a holder of an evidence of debt . . . under which the holder claims to be a qualified holder and certifying or stating that the copy of the evidence of debt is true and correct." *Id*. at § 38-38-101(b)(II).  A qualified holder must also agree to:

> indemnify and defend any person liable for repayment of any portion of the original evidence of debt in the event that the original evidence of debt is presented for payment to the extent of any amount, other than the amount of a deficiency remaining under the evidence of debt after deducting the amount bid at sale.

*Id.* at §§ 38-38-101(1)(b)(II), (2)(a); *see also In Re Miller*, 666 F.3d 1255, 1264-65 (10th Cir. 2012) ("holder of an evidence of debt" may foreclose under Colorado law by producing a copy of the evidence of the debt, a copy of the deed of trust, and a qualified holder statement).

In this instance, defendant complied with Colorado law by submitting a copy of plaintiffs' promissory note endorsed in blank, a copy of the deed of trust, and a qualified holder statement. Docket No. 1-1 at 9, 13-19, 24-26. Thus, defendant has complied with the statutory requirements under Colorado law. *See* COLO. REV. STAT. § 38-38-101. As plaintiffs' allegations establish that defendant complied with Colorado's statutory foreclosure requirements, plaintiffs do not state a claim under § 1692e.

## B. Truth in Lending Act

The magistrate judge recommended that the Court dismiss plaintiffs' claim under the Truth in Lending Act ("TILA") because it is time-barred. Docket No. 22 at 11; *see* 15 U.S.C. §§ 1601 *et seq.* Plaintiffs object on the grounds that signing their loan documents did not consummate their loan agreement because those documents do not identify the "true lender." Docket No. 23 at 6. Plaintiffs assert that Taylor Bean and Whitaker Mortgage Corporation ("TBW"), the entity that the loan documents list as the lender, is not the "true lender" because it "did not loan plaintiffs a single dollar" and that "someone else or some other entity . . . funded, lent, or table funded the loan."[5] Docket

---

[5] Under TILA, "[t]able funding occurs when the creditor does not provide the funds for the transaction at consummation out of the creditor's own resources, including drawing on a bona fide warehouse line of credit, or out of deposits held by the creditor. Accordingly, a table-funded transaction is consummated with the debt obligation initially payable by its terms to one person, but another person provides the funds for the transaction at consummation and receives an immediate assignment of the note, loan

No. 23 at 5.  Plaintiffs further assert that the "promissory note should have been between the plaintiffs and the true lender" and that TBW's "false representation" regarding its identity as lender precluded the necessary "meeting of the minds."  Docket No. 23 at 6.

A consumer must bring a TILA claim within one year of the violation, which occurs when the consumer credit transaction is consummated.  15 U.S.C. § 1640(e); *Stevens v. Rock Springs Nat'l Bank*, 497 F.2d 307, 309 (10th Cir. 1974).  State law determines the date on which the transaction is deemed consummated.  12 C.F.R. § 226 (Suppl. I 2011).

In *Jackson v. Grant*, 890 F.2d 118, 120-21 (9th Cir. 1989), the court held that a borrower's loan was not consummated when he signed the promissory note and deed of trust because the name of the lender was left blank on both documents.  In addition, the borrower received a statement indicating that the broker was not the lender, that the lender was not presently known, and that the borrower was not guaranteed a loan.  *Id*. The court held that the loan agreement did not become binding until the broker subsequently agreed to fund the loan itself.  *Id*. at 121.  In *In re Ramsey*, 176 B.R. 183, 187 (B.A.P. 9th Cir. 1994), the court distinguished *Jackson* because the borrower in that case knew who was financing the loan when he signed the loan documents.  The court held that he was legally obligated on the loan as of the "date he signed the

---

contract, or other evidence of the debt obligation."  12 C.F.R. § 226 (Suppl. I 2011). When a loan is table funded, TILA imposes restrictions on the payments that a creditor may receive.  *Id*.  TILA does not state that table funding alters the statute of limitations for filing a claim.  *See* 12 C.F.R. § 226.36; 12 C.F.R. § 226.23(a)(3).

promissory note and deed of trust and agreed to borrow money from an identifiable

lender." *Id*.

The situation here is similar to *In re Ramsey*.  Plaintiffs' deed of trust identifies

TBW as the lender.  Docket No. 1 at 13.  As of February 22, 2008, the date the deed of

trust was signed, plaintiffs were obligated on their mortgage to TBW.  *See In re*

*Ramsey*, 176 B.R. at 187; *see also Pennington v. Equifirst Corp.*, 2011 WL 1541283, at

*4 (D. Kan. Apr. 21, 2011) ("Contrary to the situation in *Jackson*, plaintiffs' proposed

amended complaint alleges that the documents plaintiffs signed on March 23, 2007

identified the lender on the promissory note and the mortgage as defendant EquiFirst

. . . . Thus, the lender was identified and plaintiffs cannot rely upon the holding in

*Jackson* to claim that there was no meeting of the minds with the lender.").

Plaintiffs concede that their loan documents identify TBW as the lender.  Docket

No. 23 at 6; *see also* Docket No. 1-1 at 13, 24.  Thus, plaintiffs' loan was consummated

when they signed the documents on February 22, 2008 and their TILA claim is time-

barred.

### C.  Emergency Mortgage Relief Act

The magistrate judge recommended that plaintiffs' complaint under the

Emergency Mortgage Relief Act ("EMRA") be dismissed because plaintiffs failed to

allege that they contacted the Department of Housing and Urban Development ("HUD")

or another federal agency regarding their request for emergency mortgage relief, as

required by the statute.  Docket No. 22 at 10; *see* 12 U.S.C. § 2702(2).  Plaintiffs object

to the Recommendation on the grounds that, in the case of an application for relief as

part of the Home Affordable Modification Program, EMRA requires that the holder of the mortgage submit all necessary documents.  Docket No. 23 at 4.

Plaintiffs argument runs counter to the plain language of EMRA, which states that no assistance shall be extended unless the "mortgagor and holder of the mortgage have indicated in writing to the Secretary of Housing and Urban Development . . . and to any agency or department of the Federal Government responsible for the regulation of the holder that circumstances . . . make it probable that there will be a foreclosure . . . . "  27 U.S.C. § 2702(2); *see also Lopezlena v. Litton Loan Serv., LP*, 2012 WL 4479580, at *2 (W.D. Wash. 2012).  There is no legal basis exempting plaintiffs from EMRA's requirements.

Thus, plaintiffs have failed to state a claim for relief under EMRA.

### D.  State Law Claims

The magistrate judge, having recommended dismissal of plaintiffs' federal claims, recommended that the Court decline to exercise supplemental jurisdiction over their state law claims.  Docket No. 22 at 12.  However, the Court retains subject matter jurisdiction on the basis of diversity and will thus consider plaintiffs' state law claims de novo.  *See* Docket No. 1 at 4, ¶ 18 ("Plaintiffs are citizens of Colorado and the defendant is a corporate citizen of North Carolina.  The amount in controversy exceeds $160,000.00."); Docket No. 24 at 2-3 ("this Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because the parties are completely diverse and the amount in controversy exceeds $75,000.").

### 1. Fraud

Plaintiffs allege that defendant defrauded them by misrepresenting its authority to foreclose on their property.  Docket No. 1 at 20, ¶¶ 114-19.

A claim for fraud requires a plaintiff to show: "(1) that the defendant made a false representation of material fact; (2) that the one making the representation knew that it was false; (3) that the person to whom the representation was made was ignorant of the falsity; (4) that the representation was made with the intention that it be acted upon; and (5) that the reliance resulted in damage to the plaintiff."  *Vinton v. Virzi*, 269 P.3d 1242, 1247 (Colo. 2012).  In "averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  COLO. R. CIV. P. 9(b).

Plaintiffs allege that: (1) defendant falsely represented its legal right to foreclose on their property; (2) defendant knew this representation was false; (3) plaintiffs acted in reliance on defendant's false representation when they filed for bankruptcy; and (4) they suffered harm as a result of the bankruptcy filing.  Docket No. 1 at 6, ¶ 35; *id.* at 15, ¶¶ 84, 88-89.[6]

Plaintiffs do not allege that defendant initiated foreclosure proceedings with the intent of inducing plaintiffs' reliance.  On the contrary, plaintiffs allege that defendant

---

[6] In the same section of the complaint, entitled "Scheme to Defraud Plaintiffs out of their Home," Docket No. 1 at 15, plaintiffs allege that defendant should have been estopped from foreclosing because it did not object to the bankruptcy court's discharge of plaintiffs' debts.  Docket No. 1 at 15, ¶ 87.  It is not clear whether this allegation is part of the fraud claim or an independent matter.  However, a Chapter 7 discharge voids only personal debts and does not preclude a mortgagee's ability to foreclose on the collateral.  11 U.S.C. § 524(a); *In re Vogt*, 257 B.R. 65, 70 (Bankr. D. Colo. 2000) ("it is clear that a creditor that holds security for the discharged debt can still foreclose on the collateral to collect that debt").

was motivated in part by its expectation that plaintiffs would not challenge the
foreclosure.  Docket No. 1 at 15, ¶ 85 ("in furtherance of its fraud scheme, BOA made
the strategic decision that most homeowners will not challenge its claimed status as
mortgagee/assignee").  Instead of remaining passive as they allege defendants hoped,
plaintiffs attempted to prevent the foreclosure by filing for bankruptcy, objecting to
defendant's evidence in the Rule 120 hearing, and filing a motion for a preliminary
injunction in this Court.  *See, e.g.*, Docket No. 1 at 2, ¶ 5 (plaintiffs challenged identity
and credibility of witnesses in Rule 120 hearing); *id.* at 6, ¶ 36 ("In their bankruptcy
petition, plaintiffs indicated to the Bankruptcy Court their intention to keep their
residential property."); *see id.* at 4, ¶¶ 13-17 (seeking preliminary injunction against
foreclosure sale).  Plaintiffs do not allege that defendant sought to induce plaintiffs to
file for bankruptcy.  Thus, plaintiffs fail to state a claim for fraud.

### 2. *Colorado Consumer Protection Act*

Plaintiffs allege that defendant "affirmatively misrepresented and knowingly
concealed, suppressed and failed to disclose material facts" in violation of the Colorado
Consumer Protection Act ("CCPA").  Docket No. 1 at 21, ¶ 125; *see* COLO. REV. STAT.
§§ 6-1-101, 6-1-105.

A private cause of action under the CCPA has five elements:

(1) that the defendant engaged in an unfair or deceptive trade practice; (2)
that the challenged practice occurred in the course of defendant's business,
vocation, or occupation; (3) that it significantly impacts the public as actual
or potential consumers of the defendant's goods, services, or property; (4)
that the plaintiff suffered injury in fact to a legally protected interest; and (5)
that the challenged practice caused the plaintiff's injury.

*Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998).  Section 6-1-105(1)(e) prohibits

Case 1:12-cv-00190-PAB-KLM   Document 26   Filed 02/01/13   USDC Colorado   Page 14 of 19

"[k]nowingly mak[ing] a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith." A "false representation" is one that induces action or inaction or has the capacity to attract consumers. *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 147 (Colo. 2003). To determine whether a false representation significantly impacts the public, courts consider "(1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future." *Id*. at 149.

Plaintiffs' complaint does not clearly state the conduct that allegedly constitutes a false representation under the CCPA. Plaintiffs allege that defendant misrepresented its right to foreclose on their home, but absent allegations that this conduct has or will affect other consumers, this is not sufficient to state a CCPA claim. *See Rhino Linings*, 62 P.3d at 149. Plaintiffs also allege that defendant is "well aware of MERS' dubious status as a proper mortgage registry" but nonetheless "proceeds with foreclosure" and that "MERS lacks internal controls to ensure accuracy, while holding itself out to the courts, investors, and the public as an authoritative source of mortgage title." Docket No. 1 at 8, ¶ 42. These allegations do not establish that defendant made a false representation within the meaning of the CCPA, as plaintiffs do not allege that defendant's representation of its relationship with MERS induces consumer action or inaction or tends to attract customers. *See Rhino Linings*, 62 P.3d at 147. Thus,

14

plaintiffs fail to state a claim under the CCPA.

Plaintiffs also argue that defendant was negligent per se in violating the CCPA. Negligence per se is a common law doctrine under which "legislative enactments . . . can prescribe the standard of conduct of a reasonable person, or duty, such that a violation of the statute or ordinance constitutes a breach of duty of care." *Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 266 P.3d 412, 417 (Colo. App. 2011).  As the Court has held that plaintiffs fail to state a claim for breach of the CCPA, they cannot establish the requisite violation of a statute necessary to a claim for negligence per se.

### 3.  Breach of Contract

Plaintiffs allege that defendant breached its contractual obligations by failing to adhere to HUD regulations and by breaching the covenant of good faith and fair dealing.

Breach of contract has four elements: the existence of a contract; the plaintiff's performance of the contract or justification for non-performance; the defendant's breach of the contract; and resulting damages.  *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).  The performance element requires "substantial performance," meaning that the defendant has "received substantially the benefit he expected."  *Id.* (internal citations omitted).

Here, plaintiffs do not allege that they substantially performed the contract.  They concede that their loan went into default and do not offer a justification for non-performance.  *See* Docket No. 23 at 3; *see also* Docket No. 1-1 at 2 (Notice of Election and Demand for Sale by Public Trustee stating that plaintiffs violated deed of trust

15

covenants by failing to pay principal and interest when due).  Thus, they cannot assert a

claim for breach of contract.  *See W. Distrib.*, 841 P.2d at 1058.

### 4. Intentional Infliction of Emotional Distress

Plaintiffs allege that defendant intentionally caused plaintiffs severe emotional

distress by posting a notice on plaintiffs' front door stating that it had determined the

property was vacant.  Docket No. 1 at 23.

Intentional infliction of emotional distress ("IIED") has three elements: "(1) the

defendant engaged in extreme and outrageous conduct; (2) recklessly or with the intent

of causing the plaintiff severe emotional distress; (3) causing the plaintiff to suffer

severe emotional distress."  *Han Ye Lee v. Colorado Times, Inc.*, 222 P.3d 957, 966-67

(Colo. App. 2009).  The "level of outrageousness required for conduct to create liability"

under this tort is "extremely high" as it must be "so outrageous in character, and so

extreme in degree, as to go beyond all possible bounds of decency and to be regarded

as atrocious, and utterly intolerable in a civilized community."  *Coors Brewing Co. v.

Floyd*, 978 P.2d 663, 666 (Colo. 1999) (internal citations omitted).

Plaintiffs' allegations do not rise to this level.  It was neither extreme nor

outrageous for an entity possessing and filing the requisite documentation under

Colorado law to institute foreclosure proceedings on borrowers in default.  *See* Colo.

Rev. Stat. § 38-38-101.  Nor was it extreme or outrageous for defendant to post the

notice on plaintiffs' front door, which, as discussed earlier, serves the purpose of

providing notice to any occupants of action that will be taken to preserve the property.

Plaintiffs do not allege conduct on the part of defendants that could reasonably be

considered "utterly intolerable in a civilized community."  *See Coors Brewing*, 978 P.2d at 666.  Thus, plaintiffs' claim for intentional infliction of emotional distress fails.

### 5.  Negligent Infliction of Emotional Distress

Plaintiffs allege that defendant's conduct constitutes negligent infliction of emotional distress.  Docket No. 1 at 23, ¶¶ 153-56.

A claim for negligent infliction of emotional distress ("NIED") requires a showing that "defendant's negligence created an unreasonable risk of physical harm and caused the plaintiff to be put in fear for his or her own safety, that this fear had physical consequences or resulted in long-continued emotional disturbance, and that the plaintiff's fear was the cause of the damages sought."  *Draper v. DeFrenchi-Gordineer*, 282 P.3d 489, 496-97 (Colo. App. 2011).  Plaintiffs have not alleged that defendant created a risk of physical harm and thus this claim fails.

### 6.  Negligence

Plaintiffs allege that defendant breached its duty of care by posting the notice on plaintiffs' home.  A claim for negligence has four elements: duty; breach of duty; causation; and damages.  *Redden v. SCI Colo. Funeral Servs., Inc.*, 38 P.3d 75, 80 (Colo. 2001).

Plaintiffs allege that defendant acted negligently by posting a notice on their door informing them that their locks would be changed unless they called the listed number.  Docket No. 1 at 24, ¶ 158.  They further allege that this act directly and proximately caused them "severe emotional distress, mental pain and suffering and adverse physical consequences."  Docket No. 1 at 24, ¶ 160.

However, plaintiffs' allegations do not establish that defendant breached a duty owed to plaintiffs. *See Iqbal*, 556 U.S. at 678. Plaintiffs state that defendant had a duty to "exercise reasonable care with respect to plaintiffs as to certain facts, including but not limited to the fact that defendant's agent threatened to lock plaintiffs' [sic] out of their home by changing the locks, was reasonably foreseeable." Docket No. 1 at 24, ¶ 159. This statement is not sufficient to state a negligence claim, as it merely restates the challenged conduct without explaining the nature of the duty at issue. These assertions do not establish any breach of duty on defendant's part. Thus, plaintiffs have failed to state a claim for negligence.

### E.  Due Process

Plaintiffs object to the Recommendation on the grounds that it does not address their claim that Rule 120 of the Colorado Rules of Civil Procedure violates the due process clause of the Constitution. Docket No. 23 at 2 ("Plaintiffs also alleged in their complaint that it is a due process violation for the state court to allow a financial entity such as Bank of America (BOA) to proceed with foreclosure sale without evidence that the trust deed and note have been duly transferred."); *see* COLO. R. CIV. P. 120; *see* U.S. Const., amend. XIV, § 1. Although this claim is not enumerated as a cause of action in the complaint, it is alleged in the complaint's introduction, which states in part:

> Because it is so limited in scope, and plaintiffs contend that it violates the due process clause of the U.S. Constitution by improperly shifting the burden from the bank to the plaintiffs, the language of C.R.C.P. 120 invites homeowners such as plaintiffs to file their own lawsuit in another forum and raise their objections and defenses there. In other words, the bank as movant need not prove it is the real party in interest but plaintiffs need to prove they are not. . . . Indeed, C.R.C.P. 120 provides for no deposition, witnesses may testify via telephone even when their identity and credibility is challenged as was done by plaintiffs in this case. The defendant is

18

> deemed to have standing by mere possession of a note, without regard to ownership of the mortgage, the note, the assignment, as well as forgery and other misrepresentation. . . . To illustrate, plaintiffs could illegally obtain or otherwise steal a promissory note and mortgage from any bank or other private entity, and present themselves at a Colorado Rule 120 hearing and be deemed by mere possession of the note to be the proper party to foreclose.   The state court, without more, would issue an order for foreclosure sale.

Docket No. 1 at 2-3, ¶¶ 4-6.  Construed liberally, *Haines*, 404 U.S. at 520, this language alleges both a facial challenge to Rule 120 and an as-applied challenge premised on plaintiffs' proceedings in state court.  Defendant did not move to dismiss this claim, and thus it survives.[7]  Docket No. 13.

## II.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Recommendation of United States Magistrate Judge [Docket No. 22] to dismiss plaintiffs' state law claims and plaintiffs' federal claims under the FDCPA, EMRA, TILA, and HUD regulations is ACCEPTED.  It is further

**ORDERED** that defendants' motion to dismiss [Docket No. 13] is GRANTED. Plaintiffs' due process claim survives.

DATED February 1, 2013.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge

---

[7] Although "a court may dismiss sua sponte when it is patently obvious that the plaintiff could not prevail on the facts alleged," *Hall*, 935 F.2d at 1110, such dismissals are "strong medicine, and should be dispensed sparingly."  *Chute v. Walker*, 281 F.3d 314, 319 (1st Cir. 2002).  The Court concludes that sua sponte dismissal is not appropriate in this instance.