**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2013 MAY 24  PM 12: 31

JEFFREY P. COLWELL
CLERK

Civil Action No.: 1:12-cv-00190-PAB-KLM

JOHN M. MBAKU, and
LUVIBIDILA JOLIE LUMUENEMO,

BY_____DEP. CLK

       Plaintiffs,

v.

BANK OF AMERICA, NATIONAL ASSOCIATION,
SUCCESSOR BY MERGER TO BAC HOME
LOANS SERVICING, LP FKA COUNTRYWIDE
HOME LOANS SERVICING LP,

Defendant.

---

## AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
## JURY REQUESTED

---

## INTRODUCTION

Plaintiffs sue the defendant and allege as follows:

1. This is a civil action from two Colorado homeowners who refinanced their home on February 22nd 2008 with Taylor Bean and Whitaker Mortgage Corp. ("TBW"), a now defunct Florida Corporation that was located at 1417 North Magnolia Ave. Ocala, FL 34475. As more specifically explained herein, plaintiffs seek judicial redress for harms caused by the defendant's violations of federal and state statutes as well as fraudulent foreclosure of plaintiffs' property.

2. Plaintiffs seek, *inter alia*, the injunction of foreclosure and eviction proceedings based on the defendant's violation of federal and state statutes as well as fraudulent acts. Plaintiffs also seek damages and other relief.

3. Colorado is non-judicial foreclosure state, although, a judicial order must be sought prior to foreclosure sale if an assignment occurred within one year. Colo. Rev. Stat. § 6-10-132. A foreclosure hearing is not rigorous in terms of burden of proof on the defendant. The hearing is governed by Colorado Rules of Civil Procedure 120. (**Rule 120**). Those proceedings are limited in purpose to two questions only: Default and 50 U.S.C. § 520 (Military active duty membership).

4. Because it is so limited in scope, and plaintiffs contend that this state statute is unconstitutional on its face and/or as applied in this case; as it violates the due process clause of the U.S. Constitution by improperly shifting the burden of proof from the bank to the plaintiffs. The language of Rule 120 invites homeowners such as plaintiffs to file their own lawsuit in another forum and raise their objections and defenses there.

5. In other words, the bank as movant need not prove it is the real party in interest but Plaintiffs need to prove they are not. In fact, the state court does not inquire as to how the bank as movant came in possession of the deed of trust and note. Plaintiffs are unaware of any case raising this issue and reviewed by the 10th circuit court of appeals. In pertinent part, Colorado Rule 120 reads as follows:

> "…Neither the granting nor the denial of a motion under this
> Rule shall constitute an appealable order or judgment.
> The granting of any such motion shall be without prejudice
> to the right of any person aggrieved to seek injunctive or
> other relief in any court of competent jurisdiction…"

6. Indeed, Rule 120 provides for no deposition, witnesses may testify via telephone even when their identity and credibility is challenged as was done by plaintiffs in this case.

The defendant is deemed to have standing by mere possession of a note, without regard to ownership of the mortgage, the note, the assignment, as well as forgery and other misrepresentation. To illustrate, as Rule 120 was applied in this case, had the hearing been held over the course of three days, three separate banks could have appeared: Bank of America (BOA) on Day one; Wells Fargo on Day two and Citibank Day three, each deemed to have proper standing by possessing the note.

7. To further illustrate, Plaintiffs could also illegally obtain or otherwise steal a promissory note and mortgage from any bank or other private entity, and present themselves at a Colorado Rule 120 hearing and be deemed by mere possession of the note to be the proper party to foreclose. The state court, without more, would issue an order for foreclosure sale.

8. Had the Defendant initiated judicial foreclosure proceedings against the Plaintiffs— Plaintiffs would have been afforded the right to a "standing" defense as judicial foreclosure actions in Colorado which are governed by C.R.C.P. 105 (**Rule 105**) provides a single procedure for the complete adjudication of the rights of all the parties to or affecting real property.

9. By enacting a law favoring financial institutions (in the absence of the original evidence of debt, only a financial institution may avail itself of Rule 120 as a qualified holder under Colo. Rev. Stat. § 38-38-100.3(20)), the Colorado legislature has created two classes of citizens, one that is afforded the "standing" defense in a judicial foreclosure brought by a private or individual lender; and the other for whom the burden of proof shifts by having to bring its own lawsuit.

10. Nothing in the history of Rule 120 suggests that a financial institution need not be the real party in interest in a non-judicial foreclosure as it is required in a judicial foreclosure, however Rule 120 as it was and is applied in the case of Plaintiffs—suggests that mere possession of a promissory note equals standing. Even more perplexing, in the present case, the Defendant admitted in its pleadings that it does not own plaintiffs' loan and claims that Government National Mortgage Association (GNMA), also known as Ginnie Mae is the owner.

11. Although, the Defendant is expected to comply with basic principles of contract law and consumer protection law; the Defendant has proceeded to foreclose on plaintiffs' property with willful disregard of knowledge, facts and statutes. For example, the defendant initiated foreclosure proceedings on August 16, 2010 and then sought a judicial order in October 27, 2011 pursuant to Colo. Rev. Stat. § 6-10-132. It therefore follows that on August 16, 2010 the defendant did not have a proper assignment, although it falsely claimed on the document titled "STATEMENT BY ATTORNEY FOR QUALIFIED HOLDER PURSUANT TO 38-38-101, C.R.S." to be the then current beneficiary of the Deed of Trust and holder of the original evidence of debt. See "Notice of Election and Demand for Sale by Public Trustee" dated August 16, 2010 **(EXHIBIT 1)**. In fact, the defendant was neither because as a mere servicer, it is not, nor was it the custodian of Plaintiffs' note and deed of trust on that day. Records from Mortgage Electronic Registration Systems Inc. (**"MERS"**) will show that Bank of America, N.A. (**BOA**) was not in possession of Plaintiffs' note and deed of trust on that day.

12. In order to foreclose, the Defendant fabricated false and forged documents purporting to transfer both the note and the deed of trust from MERS to itself (The "**Assignment**"). In

fact MERS does no such thing because it does not exist for that purpose. As explained further below, Mercedes Judilla who is an employee and/or agent of BOA, at the behest of her employer and/or principal fabricated and recorded the false assignment in order to give legitimacy to the foreclosure proceedings against the Plaintiffs.

13. Additionally, under Colo. Rev. Stat. § 38-38-100.3(10) a "solely as nominee" entity such as MERS cannot be the "holder of an evidence of debt." Colorado law specifically recognizes that MERS as an "Electronic Registry" has no power (authority) to enforce the note to which it is not a party (its name appears nowhere on the note) or Deed of Trust and as such MERS has no power of assignment in Colorado.

14. This is despite of two Colorado federal court cases that pointed to the contrary. Also, as explained below MERS did not and could not have created/fabricated or recorded the assignment because internal MERS documents submitted to this Court for judicial notice clearly state that MERS does not exist for the purpose of creating or transferring beneficial rights, title and interest in real property.

15. These acts were actually done by BOA's own employee, Mercedes Judilla; acting as a MERS signing officer. See Rule 3 of MERS membership rules (signing officer resolution) available at: http://www.mersinc.org/MersProducts/publications.aspx?mpid=1

16. The MERS purported assignment of the Deed of Trust (per case law cited below a MERS assignment is ineffective) did not take place until April 28, 2011 (Date on "Assignment of Deed of Trust") and purportedly signed by one "Mercedes Judilla" who then purportedly personally appeared almost a month later on May 26, 2011 before one purported Notary Public by the name of Terry Fishman. Said assignment was recorded on August 1, 2011. See "Assignment of Deed of Trust" (**EXHIBIT 2**).

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction of this action under 28 U.S.C. §§ 1331 and 1332 (federal question and diversity jurisdiction) because plaintiffs' claims arise under the laws of the United States. Plaintiffs are citizens of Colorado and the defendant is a corporate citizen of North Carolina. The amount in controversy exceeds $160,000.00; thereby exceeding the jurisdictional amount of $75,000.00

18. At all times material hereto, the defendant was doing business in the state of Colorado and all or part of the events which gave rise to this action took place in the state of Colorado. Venue is proper in this Court under 28 U.S.C. § 1391 because the plaintiffs reside in this judicial district and because the defendant does business in this judicial district, and because many of the events or omissions as well as some of the alleged misrepresentation giving rise to the claims occurred in this judicial district. This Court may grant relief in this action under 28 U.S.C. § 1651 (All Writs Act); 28 U.S.C. § 2201 (Declaratory Judgment Act).

## THE PARTIES

19. Plaintiffs John M. Mbaku and Luvibidila Jolie Lumuenemo are natural persons who reside at 1177 South Alton Street Unit A, Denver, CO 80247, a condominium property. Defendant, Bank of America, N.A.("BOA") is a corporate entity with a business address of 100 North Tryon Street, Charlotte, N.C., 28255. BOA, through its various agents, has initiated foreclosure proceedings against the above-named plaintiffs. BOA has initiated these proceedings in the State of Colorado.

## LEGAL AND FACTUAL BACKGROUND

20. In furtherance of its fraud scheme, the defendant did not produce its purported assignment at the Rule 120 hearing. This omission was willful with the intent to commit fraud upon the plaintiff and the State Court. Further, evidence adduced through discovery, subpoena and/or trial will show that misrepresentations as to "holder of the evidence of debt" and "beneficiary of the deed of trust" were also made in defendant's letter to the Arapahoe Public Trustee **(EXHIBIT 3)** dated August 16, 2010 as well as in the "Statement by Attorney for Qualified Holder pursuant to Colo. Rev. Stat. § 38-38-101". **(EXHIBIT 4)**. As explained above, the Defendant was not in possession of the note at the outset of non-judicial foreclosure and did not in fact meet the definition of holder of the evidence of debt" , "beneficiary of the deed of trust"  and "qualified holder" as claimed on the documents submitted to the Public Trustee.

21. For example, the defendant claims as of August 16, 2010 to be the holder of the promissory note, as the term is defined in Colo. Rev. Stat. § 38-38-100.3(10). If that were the case, there would have been no need for a purported assignment, purportedly by MERS of both the Deed of Trust and Promissory Note on April 28, 2011. See **(EXHIBIT 2)**

22. Plaintiffs have a clear legal right to seek temporary and permanent injunctive relief as plaintiffs reside in the property. The defendant is seeking through fraud to take possession, custody and control of the property and ultimately remove the plaintiffs from their home. Plaintiffs have no adequate remedy at law to redress the harm complained of, and the sale of the plaintiffs' property, under the circumstances of record, is contrary to

equity and good conscience in that such a sale is being instituted by parties who have no legal standing under the United States Constitution to institute or maintain the foreclosure *ab initio*.

23. The specific facts set forth in this complaint demonstrate that unless preliminary injunction against the foreclosure sale set for Wednesday July 10, 2013 is granted, plaintiffs will suffer the irreparable injury, loss, and damage of the loss of their home and eviction therefrom.

24. As the Defendant has no legal standing under the United States Constitution to institute or maintain a foreclosure of the property, there is no harm to said Defendant with the granting of the requested relief, and any claimed harm is substantially outweighed by the irreparable harm to the Plaintiffs if the relief requested herein is not granted.

25. The granting of the relief requested herein is in the public interest, as the consuming public, including plaintiffs, will continue to be harmed by the illegal and unlawful conduct of the Defendant if the relief requested herein is not granted. Under the circumstances where there is no harm to the defendant with the granting of the requested relief, no bond should be required as a prerequisite to the granting of the relief requested herein as there are no costs or other damages which could be contemplated on the part of the defendant with the granting of the requested relief for which a bond would otherwise be necessary.

26. Moreover, Renee Hertzler, a Bank of America executive, said in a deposition that she has signed as many as eight thousand foreclosure documents a month without reviewing them. See Ariana Eunjung Cha in theWashington Post (October 1, 2010) available at

http://www.chron.com/business/article/Bank-of-America-is-latest-to-freeze-foreclosures-1708626.php

27. Consequently, the defendant has admitted that in all of its foreclosure cases, it, as a moving party, prosecutes its claims with a complete disregard as to whether or not it has met its burden. Thus, BOA has consistently, through its actions and/or inactions, acted fraudulently in initiating and continuing its foreclosure claims with respect to plaintiffs' property. Said failures to adhere to procedural requirements have directly and proximately placed plaintiffs in imminent danger of losing their home.

28. Said failures to adhere to procedural requirements have directly and proximately caused severe and irreparable damage to plaintiffs' credit standing. BOA's omissions and misrepresentations were made with the knowledge of their falsity, or with such utter disregard and recklessness as to whether they were true or false and with the intent of misleading plaintiffs into relying upon them.

29. Relying on BOA's misrepresentation as mortgagee/assignee, and prior to the initial foreclosure sale date, Plaintiffs hired a bankruptcy attorney and filed in accordance with federal statutes, a petition for bankruptcy protection and relief in the United States Bankruptcy Court for the District of Colorado

30. In their bankruptcy petition, plaintiffs indicated to the Bankruptcy Court their intention to keep their residential property. On or about December 10, 2010, the Bankruptcy Court issued an order (automatic stay) blocking the sale of plaintiffs' residence.

31. It is typical for a lender (mortgagee/assignee), in such cases, to appear in court and either: 1) enter into a modification agreement with the debtor or; 2) file a motion for relief from stay on the foreclosure sale of the property. . In order to be able to do so, the said lender

(mortgagee/assignee) must offer to the U.S. Bankruptcy Court a "proof of claim". In other words, the lender has to prove to the Bankruptcy Court that it is the rightful owner of the note, and that it therefore has standing. This is also referred to as being the "real party in interest" pursuant to Fed. R. Bankr. P. 7017 which is a restatement of Fed. R. Civ. P. 17(a)(1).

32. BOA never appeared in any of the scheduled meetings of the bankruptcy proceedings. Instead, BOA remained idle for almost seven months. BOA later reappeared for the limited-purpose Colorado Rule 120 hearing where defenses to foreclosure fraud as well as other statutory and regulatory defenses are not permitted. Indeed, on October 27, 2011, BOA filed a motion with the Arapahoe County District court for an "order authorizing the public trustee to sell certain real estate under a power of sale contained within a deed of trust." **(EXHIBIT 5)**.

33. In the said hearing, BOA made no claim that it is the successor of TBW and offered no proof that the note was assigned to it. BOA simply cited in its motion, "MERS" as nominee. However, "solely as nominee" status (per the language on Page 1 of the Deed of Trust **(EXHIBIT 6)**) does not give rise to power of assignment as MERS holds no ownership interest in the note or mortgage. MERS is used to track ownership of loan servicing rights and ownership rights, and even though at times, MERS claims to be the beneficiary of a loan, MERS does not collect any loan payments, have no right to collect such, and have no other financial interest other than being paid its ordinary fees for the tracking and registration service. See Landmark Nat'l Bank v. Kesler, 216 P.3d 158 (Kan. 2009); Yet, BOA was able to obtain an order to proceed with the foreclosure sale of plaintiffs' property. **(EXHIBIT 7)** The said sale was to take place on February 1st 2012.

34. It therefore stands to reason that if BOA is not a direct successor of TBW, then there must be a third party involved which purportedly received full and complete assignment from TBW. This purported third party must have then in turn, given full and complete assignment to BOA. However, BOA proffered no such evidence. BOA's cornerstone argument is that in Colorado possession alone equals standing. This is however not the case as the Colorado Supreme court indicated in *Goodwin v District Court,* 779 P.2d 837 (Colo. 1989).

35. It should however be noted that, as this lawsuit was pending, BOA voluntarily moved to dismiss its own Action in State Court. The State Court entered an Order dismissing the Action without prejudice on September 21, 2012. However since then, BOA filed yet another motion in State Court on May 3, 2013, which is now the second attempt seeking the foreclosure sale of Defendant's property.

36. BOA is currently proceeding with foreclosure action despite its own admission that it does not own Plaintiffs loan, and claims that Government National Mortgage Association (GNMA) also known as Ginnie Mae does. Therefore with full knowledge that it does not satisfy the standing requirement per the United States Constitution, BOA wraps itself of the mantle of authority of Colorado State law including but not limited to Rule 120; Colo. Rev. Stat. § 38-38-100.3(10),(20) and Colo. Rev. Stat. § 38-38-101(1)(b)(II); and violates Plaintiffs' due process rights under the U.S. Constitution. By so doing, BOA continues to be as it was in its previous foreclosure attempt, a state actor and/or engages in state action.

37. Plaintiffs' and other foreclosed-upon mortgage loans have previously been securitized and are purportedly owned at the time of foreclosure by a securitization trust. Under the

law governing the creation of many securitization trusts, the contractual arrangements setting forth the manner and conditions under which mortgage loans were to be sold into a securitization is crucial to whether the securitization succeeded in owning the plaintiffs' mortgage it purportedly bought.

38. For example, many securitizations are created as trusts under New York law. New York trust law provides that "[i]f the trust is expressed in the instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized . . . is void." N.Y.E.P.T. L. § 7.2-4.

39. Because the governing document in these securitizations—known as a Pooling and Servicing Agreement ("PSA")—both creates the securitization trust and purports to sell the loans into the trust, the conditions of such sale set forth in the PSA must be carefully adhered to and not be subject to any variance or exception outside the four corners of the contract. If those terms and conditions are not properly followed, the sale may be void. In such an event, the securitization would not own the loan it supposedly owns as a result of the securitization transaction.

40. The typical PSA provides a number of conditions for the effective transfer of the mortgage loan. For example, the seller typically must transfer certain documents to the purchaser, including: (1) the original loan note with an endorsement either in blank or to the order of the purchaser; (2) the original mortgage with evidence of recording on it; and (3) an assignment of the mortgage either in blank or filled out in the name of the purchaser.

41. In addition, where the entity endorsing the note or assigning the mortgage in these documents is not the original lender or mortgagee, the PSA further requires that evidence

of a complete chain of endorsements or assignments are also transferred. Despite the existence of such rules in PSAs, on information and belief, such conditions were frequently not complied with in connection with the securitization of plaintiffs' and other Colorado mortgages recorded in MERS' name.

42. Typical language of a PSA requires that the following be delivered and reads as follows:

(i) the original Mortgage Note bearing all intervening endorsements showing a complete chain of endorsement from the originator to the last endorsee, endorsed "Pay to the order of _____, without recourse" and signed (which may be by facsimile signature) in the name of the last endorsee by an authorized officer. . . ; (iii) the original Mortgage with evidence of recording thereon or a certified true copy of such Mortgage submitted for recording. . . ; [and] (vi) the originals of all intervening assignments of Mortgage (if any) evidencing a complete chain of assignment from the applicable originator to the last endorsee (or, in the case of a MERS Designated Loan, MERS) with evidence of recording thereon

43. When MERS seeks to assign a mortgage or has its member, BOA, foreclose on a mortgage loan on behalf of a securitization trust that, despite being registered as the mortgage owner in the MERS System, does not own the loan, MERS and BOA (who in the present case are one and the same) act without authority. This is yet again a deceptive trade practice and fraudulent act.

44. Plaintiffs will show that proper PSA procedures were not followed with respect to plaintiffs' loan. Typical PSA language requiring that the entity selling a loan to the Trust (the "Depositor") to deliver to the Trustee a given number documents must be adhered to,

otherwise the sale is ineffective. Thus, the entity purporting to foreclose (i.e. BOA), is not acting behalf of the true owner of the note.

45. To illustrate, in foreclosure proceedings against Plaintiffs, BOA presented itself as a successor by merger of Countrywide Home Loans. Indeed, prior to April 2009, BAC Home Loans Servicing, LP did business under the name Countrywide Home Loans Servicing. Many securitizations of mortgage loans originated by Countrywide Home Loans, contained similar conditions as described above, regarding the endorsement and delivery of the promissory note at the time of securitization.

46. Section 2.01 of the PSA for the Countrywide securitization known as CWABS, Inc., Asset-Backed Certificates, Series 2006-8 requires that in connection with the transfer of mortgage loans to the securitization trust, that the Depositor deliver and deposit with the Trustee "the original Mortgage Note, endorsed by manual or facsimile signature in blank in the following form: 'Pay to the order of _____ without recourse', with all intervening endorsements that show a complete chain of endorsement from the originator to the Person endorsing the Mortgage Note . . .".

47. However, in a 2009 hearing for a consumer bankruptcy proceeding, an employee for the Bank of America entity responsible for servicing the securitized Countrywide mortgage loans testified under oath that Countrywide did not have a practice of delivering original documents such as the note to the Trustee. *See In re Kemp*, 440 B.R. 624, 626 (Bankr. D.N.J. 2010) (No. 08-18700) (Aug. 11, 2009), Tr. at pp.6-8, 16-17.

48. In addition, the same employee further testified that allonges are typically prepared in anticipation of foreclosure litigation, rather than at the time the mortgage loans are purportedly securitized. Both of these facts are contrary to the requirements of the PSA

that the note be endorsed in blank and delivered to the trustee at the time of securitization. This also explains BOA's reluctance to appear in Plaintiffs' bankruptcy proceeding and file a proof of claim.

49. During the course of the rule 120 hearing, BOA produced a note (**EXHIBIT 8**) with no actual signature on it but rather a "***facsimile signature***" that is part of a signature stamp it claims to be proper endorsement. Plaintiffs contend that the said signature is a forgery, a fabricated signature just as the assignment of the promissory note and deed of trust was fabricated. As a result, BOA cannot and would not offer TBW corporate record (resolution) relating to a facsimile signature of that officer as being valid. There is no date as to the purported endorsement, and no notary signature or stamp. More importantly, there was no allonge indicating that it has been transferred to another party.

50. BOA under the mantle of Colorado State law stands for the proposition that standing or real-party in interest issue simply does not apply. Under such proposition, multiple bank plaintiffs such as Wells Fargo, Citibank, Chase bank etc.; may come to court and waive a copy of a note or the note itself which is not properly endorsed to it or endorsed to "blank" and claim to be the rightful owner of plaintiffs' note. Although it now claims not to be the owner of the note, at the Rule 120 hearing, BOA misled the State court to believe that it was by representing itself as the true owner.

51. In the instant case, the note itself was purportedly "signed" by one "Eria Carter-Shaw". BOA cannot and would not provide evidence as to: a) who this person is; b) what her title and position are; c) whether this person had the authority to endorse the note, as described in corporate records and on what date—as the signature is not dated; d) whether this document was in fact "signed" by her; e) who the notary public who

witnessed the signature is; f) where the notary log book is; g) whether the notary's

signature is in fact legitimate and not fraudulent; h) whether the identity of the notary has

been verified.

52. There is no verified identity as to "Eria Carter-Shaw" and Plaintiffs contend that she does

not exist. She did not "sign" the document; therefore the purported "signature" is a

forgery. She does not have the authority to "sign" a mortgage assignment. Compliance

with the technical requirements of the law is essential in protecting the rights of

homeowners such as Plaintiffs and others who have an interest in the property being

foreclosed.

53. Compliance with these requirements is not onerous to the defendant and any burdens are

far outweighed by the interest of justice and that of the Public. This willful disregard of

knowledge, facts and statutory law has caused severe distress and other damages to

Plaintiffs such as a decline in property value.

54. Moreover, Plaintiffs' note was delivered to one or more parties, such as a "Trust" under

the terms of a "Pooling and Service Agreement" and the Trust has, in turn, created and

sold several classes of securities to investors in "Mortgage Backed Securities"- to be

consistent with Constitutional standing requirement- it is necessary for the Trust or the

Investors to initiate the foreclosure action if they can prove they hold legal title to the

note; or a representative, if the representative can prove full and complete assignments

from the owner or owners of the said note.

55. Furthermore, the securitization system was set up in such a way as to eliminate the risks

caused by predatory lending, defaulting loans, and other risks by insuring and cross-

collateralizing thousands of loans in a loan pool. In fact, plaintiffs will show that the loan

has in fact been paid-off in full by insurance proceeds, money from various guarantors, by the investors, and/or by the federal government. If the loan has been paid, there is no right to foreclose.

56. More specifically, in its latest attempt to foreclose, the Defendant has admitted that the loan has been paid off by the Federal Housing Administration (**FHA**) insurance fund, and that it is seeking to foreclose for the purpose of transferring title to the FHA, so that the FHA will in turn sell the property to "help replenish the FHA Mortgage Insurance Fund."

57. It is the most basic of legal principles that one may not ask a court for relief unless it is the party that has been injured. No matter how BOA may mince words, the only parties with any potential to apply for relief in non-judicial or judicial foreclosure proceedings are the investors. Any other would-be forecloser and party, is simply put, an imposter seeking to circumvent due process requirements. If the Defendant's proposition that mere possession is sufficient, then this non-judicial foreclosure law in Colorado is not only unconstitutional as applied to Plaintiffs' case but also unconstitutional on its face.

58. In securitized loan cases, due process requires that the requirements of pleading, notice and hearing on the merits at which real witnesses with personal knowledge must account for the securitized transaction from one end to the other. In addition, there is also an inherent conflict issue between the apparent authority of the trustee on the Deed of trust, the trustee of the pooled assets and the trustee for the holders of mortgage backed securities. Similarly, a conflict may exist between the "depositor" (custodian of the alleged mortgage and note that was securitized), the trustee, and the certificate holders (investors).

59. By proceeding to foreclose on plaintiffs' property while failing with knowledge to hold the necessary rights as the mortgagee or assignee at the time of the foreclosure, BOA committed and continues to commit a fraudulent act upon which Plaintiffs relied to their detriment. And in furtherance of its fraud scheme, BOA made the strategic decision that most homeowners will not challenge its claimed status as mortgagee/assignee; and whenever bankruptcy proceedings are involved, BOA made the willful decision of not filing a motion to lift the stay for fear of being unmasked as a fraud pursuant to Fed. R. Bankr. P. 7017 which is a restatement of Fed. R. Civ. P. 17(a)(1). This is the type of behavior well-suited for punitive damages award by a jury, in order to deter future fraud cases such as this. Counsels and foreclosure law firms aiding and abetting in such a scheme should be subject to sanctions and reported to the state bar.

60. BOA by fraudulently foreclosing on plaintiffs, proximately caused plaintiffs to file for bankruptcy. But for BOA fraudulent acts, plaintiffs would not have filed for bankruptcy. As a result, plaintiffs suffered great fear and anxiety due to the bankruptcy and potential loss of their only home.

61. Plaintiffs further suffered other losses as a result of the foreclosure. For example, as a result of spending time preparing the present complaint and otherwise defending the first and second foreclosure actions, Plaintiffs have lost wages. BOA also proximately caused plaintiffs' credit standing to be degraded and as a result, plaintiffs suffered great distress.

62. In the interest of specificity, Plaintiffs further detail and reassert their allegations as follows: MERS has no beneficial right, title, interest under plaintiffs' deed of trust and promissory note; BOA as a servicer, has no beneficial right, title, interest under plaintiffs'

deed of trust and promissory note; BOA illegally obtained or otherwise stole plaintiffs' promissory note and deed of trust;

63. On August 16, 2010; BOA was not in actual possession of Plaintiffs' promissory note or deed of trust and because it had no such possession, it could not be the then current beneficiary of Plaintiffs' deed of trust and therefore falsely claimed to be the then current beneficiary of Plaintiffs' deed of trust;

## FRAUD AS TO "MORTGAGEE/ASSIGNEE" STATUS

64. On August 16, 2010; BOA by and through Attorney Christa Nicole Kirk, misrepresented itself as mortgagee/assignee (current beneficiary) of plaintiffs' deed of trust and initiated non-judicial foreclosure proceedings against the plaintiffs; BOA's misrepresentation was material; BOA made the misrepresentation with knowledge of its falsity or with such utter disregard and recklessness as to whether it was true or false as Attorney Christa Nicole Kirk knew that she had no personal knowledge as to whether it was true or false. BOA made the misrepresentation with the intent of misleading plaintiffs into relying upon it and file for bankruptcy;

65. Plaintiffs justifiably relied on the misrepresentation; Plaintiffs were subsequently required to retain an attorney in order to assist Plaintiffs in asserting plaintiffs' claims and protecting Plaintiffs' rights; Plaintiffs were subsequently forced and were left with no other option than to file for bankruptcy in order to protect their home;

66. Plaintiffs' home lost value as a result of foreclosure proceedings; Plaintiffs' credit standing was adversely affected as a result of foreclosure proceedings; BOA's misrepresentation constitutes an unfair and deceptive trade practice under Colorado law; BOA's misrepresentation was made with malice;

67. BOA's misrepresentation took place while it engaged in the ordinary course of its business; BOA's misrepresentation is routine as it forecloses on hundreds of thousands of loans across Colorado and the country and has impacted the consuming public at large and will continue to impact any consumer of its services;

68. Plaintiffs have suffered injury as to their legally protected property rights and interest; BOA's routine misrepresentation has injured the plaintiffs; BOA's misrepresentation violates Colorado consumer protection law.

**FRAUD AS TO "HOLDER-OF-AN-EVIDENCE-OF-DEBT" STATUS**

69. On August 16, 2010; BOA by and through Attorney Christa Nicole Kirk, misrepresented itself as a "holder of an evidence of debt" and initiated non-judicial foreclosure proceedings against the plaintiffs; BOA's misrepresentation was material; BOA made the misrepresentation with knowledge of its falsity or with such utter disregard and recklessness as to whether it was true or false as Attorney Christa Nicole Kirk knew that she had no personal knowledge as to whether it was true or false;

70. BOA made the misrepresentation with the intent of misleading plaintiffs into relying upon it and file for bankruptcy; Plaintiffs justifiably relied on the misrepresentation; Plaintiffs were subsequently required to retain an attorney in order to assist Plaintiffs in asserting Plaintiffs' claims and protecting Plaintiffs' rights; Plaintiffs were subsequently forced and were left with no other option than to file for bankruptcy in order to protect their home;

71. Plaintiffs' home lost value as a result of foreclosure proceedings; Plaintiffs' credit standing was adversely affected as a result of foreclosure proceedings; BOA's misrepresentation constitutes an unfair and deceptive trade practice under Colorado law;

BOA's misrepresentation was made with malice BOA's misrepresentation took place while it engaged in the ordinary course of its business;

72. BOA's misrepresentation is routine as it forecloses on hundreds of thousands of loans across the country and has impacted the consuming public at large and will continue to impact any consumer of its services; Plaintiffs have suffered injury as to their legally protected property rights and interest; BOA's routine misrepresentation has injured the plaintiffs; BOA's misrepresentation violates Colorado consumer protection law.

**FRAUD AS TO "QUALIFIED HOLDER" STATUS**

73. On August 16, 2010; BOA by and through Attorney Christa Nicole Kirk misrepresented itself as a "qualified holder" and initiated non-judicial foreclosure proceedings against the Plaintiffs; BOA's misrepresentation was material; BOA made the misrepresentation with knowledge of its falsity or with such utter disregard and recklessness as to whether it was true or false as Attorney Christa Nicole Kirk knew that she had no personal knowledge as to whether it was true or false;

74. BOA made the misrepresentation with the intent of misleading plaintiffs into relying upon it and file for bankruptcy; Plaintiffs justifiably relied on the misrepresentation; Plaintiffs were subsequently required to retain an attorney in order to assist Plaintiffs in asserting Plaintiffs' claims and protecting plaintiffs' rights; Plaintiffs were subsequently forced and were left with no other option than to file for bankruptcy in order to protect their home;

75. Plaintiffs' home lost value as a result of foreclosure proceedings; Plaintiffs' credit standing was adversely affected as a result of foreclosure proceedings; BOA's misrepresentation constitutes an unfair and deceptive trade practice under Colorado law;

BOA's misrepresentation was made with malice; BOA's misrepresentation took place while it engaged in the ordinary course of its business;

76.  BOA's misrepresentation is routine as it forecloses on hundreds of thousands of loans across the country and has impacted the consuming public at large and will continue to impact any consumer of its services; Plaintiffs have suffered injury as to their legally protected property rights and interest; BOA's routine misrepresentation has injured the Plaintiffs; BOA's misrepresentation violates Colorado consumer protection law;

77. Because MERS is a mere registry, BOA cannot obtain a valid assignment or transfer of the deed of trust and note from MERS. Also, BOA cannot obtain a valid assignment or transfer of the deed of trust and note from any other person or entity because no legal and valid chain of title documentation which begins with TBW regarding Plaintiffs' property exists;

78. Further, Eria Carter Shaw whose name appears on Plaintiffs' purportedly endorsed note does not exist; Eria Carter Shaw is not a corporate officer of TBW; the term "EVP" is not a corporate officer designation of TBW; Eria Carter Shaw was not authorized to endorse Plaintiffs' promissory note; Eria Carter Shaw's facsimile signature was not authorized; Eria Carter Shaw did not sign plaintiffs' promissory note; Eria Carter Shaw purported undated endorsement is invalid; Eria Carter Shaw's purported signature is not notarized and therefore invalid;

79. In addition, Mercedes Judilla is in fact an employee or agent of BOA and not an employee of MERS; Mercedes Judilla is simply a limited agent of MERS; and MERS does not supervise, direct, nor does it have the right to supervise or direct, any of the work performed by Mercedes Judilla; other than MERS' corporate resolution, Mercedes

Judilla does not seek, nor does she receive, any instruction, permission or approval from MERS to act on MERS' behalf;

80. Other than MERS' corporate resolution, there is no contract, agreement, or written undertaking of any sort between MERS and Mercedes Judilla relating to any actions taken or permitted to be taken by Mercedes Judilla on behalf of MERS; Mercedes Judilla is not covered by any insurance policy for officers of MERSCORP or MERS Inc.; Mercedes Judilla is not paid any compensation by MERS;

81. Mercedes Judilla is not an assistant secretary of MERS; MERS' corporate resolution does not authorize Mercedes Judilla to act on behalf of MERS as a custodian of Plaintiffs' or any other promissory note and deed of trust; Mercedes Judilla while acting as a MERS' certifying officer misrepresented herself as having the power or authority to transfer the beneficial right, title and interest in plaintiffs' promissory note and deed of trust;

82. Mercedes Judilla did not personally sign the purported assignment of Plaintiffs' promissory note and deed of trust; Mercedes Judilla did not personally appear before Terry Fishman, the purported notary public to sign the purported assignment of Plaintiffs' promissory note and deed of trust; Mercedes Judilla did not prove to Terry Fishman, the purported notary public, "on the basis of satisfactory evidence to be the person whose name is subscribed to" the purported assignment of plaintiffs' promissory note and deed of trust as claimed on the purported notary public acknowledgment;

83. Mercedes Judilla did not acknowledge to Terry Fishman, the purported notary public, that she executed the purported assignment of plaintiffs' promissory note and deed of trust in her "authorized capacity" as claimed on the purported notary public acknowledgment; Mercedes Judilla did not acknowledge to Terry Fishman, the purported notary public, that

"by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument" as claimed on the purported notary public acknowledgment;

84. On April 28, 2011; Mercedes Judilla acted as an attorney in fact for TBW; Prior to April 28, 2011; Mercedes Judilla had no recorded power of attorney for TBW as required under Colorado law; nor did she ever have a power of attorney recorded at any time;

85. BOA has no notices of assignments filed with the Arapahoe County Clerk & Recorded naming TBW or any other entity or person as assignor; Terry Fishman, the purported notary public, did not personally sign the purported notarization of the purported assignment of plaintiffs' promissory note and deed of trust; Terry Fishman, the purported notary public is an employee or agent of BOA; and is not a notary public;

86. Because MERS is not a party to plaintiffs' promissory note; it therefore does not have the power or authority to transfer any beneficial right, title or interest in plaintiffs' promissory note; in fact, in internal documents that surfaced during the course of this litigation, MERS concedes in its own Procedures Manual that it "cannot transfer the beneficial rights to the debt," (See MERS Procedures Manual, Release 19.0, at Page 63) and its terms of membership acknowledge that the MERS system is "not a vehicle for creating or transferring beneficial interests in mortgage loans." (See ¶ 6 of MERS' Membership Terms and Conditions, Release 2.0).

87. MERS therefore admits that it does not have the power or authority to transfer any beneficial right, title or interest in Plaintiffs' deed of trust; and in the event that MERS did indeed have such power, it was rescinded by TBW as it rejected its MERS contract in bankruptcy in 2009.

88. Indeed TBW filed for bankruptcy on August 24, 2009, and as part of the bankruptcy
repudiated (rejected) its contract with MERS. Any act taken by Mercedes Judilla as a
BOA employee or agent while acting as a MERS signing officer thereafter, including but
not limited to, the execution of foreclosure documents, assignments as "nominee" is
fraudulent. See Third Amended and Restated Joint Plan of Liquidation of the Debtors and
the Official Committee of Unsecured Creditors, In re Taylor Bean and Whitaker Corp.,
REO Specialists, LLC and Home America Mortgage, Inc., Case No. 3:09-bk-07047-JAF,
in the U.S. Bankruptcy Court for the Middle District of Florida, Jacksonville Division.

89. BOA has a policy of avoiding the filing of motions to lift automatic stay in bankruptcy
proceedings and deliberately avoided filing a motion to lift the automatic stay in
Plaintiffs' bankruptcy proceedings because it knew that it had no valid assignment of the
note and deed of trust to support a proof of claim in bankruptcy court;

90. BOA had full knowledge that plaintiffs' deed of trust did not and could not follow
plaintiffs' promissory note as it did not legally obtain the note nor was it in possession of
the note at the time foreclosure proceedings commenced; BOA's pursuit of foreclosure
proceedings with knowledge that a TBW mortgage has not and cannot follow the note is
an unfair and deceptive trade practice under Colorado law;

91. and was done with malice and took place while it engaged in the ordinary course of its
business; as it routinely forecloses on hundreds of thousands of loans across Colorao and
the country and has impacted the consuming public at large and will continue to impact
any consumer of its services; Plaintiffs have suffered injury as to their legally protected
property rights and interest; BOA's routine pursuit of foreclosure proceedings with

knowledge that a TBW mortgage has not and cannot follow the note has injured the plaintiffs;

92. BOA's pursuit of foreclosure proceedings with knowledge that a TBW mortgage has not and cannot follow the note violates Colorado consumer protection law; Plaintiffs' deed of trust and promissory note were separated; Plaintiffs' promissory note is unenforceable; Plaintiffs' promissory note is an unsecured debt and all of plaintiffs' unsecured debts were discharged in bankruptcy on April 7, 2011;

93. Investors in plaintiffs' promissory note receive regular and timely payments of principal and interest on plaintiffs' promissory note as part of a larger pool; Plaintiffs' promissory note was sold in the secondary mortgage market, either individually, pooled or as part of mortgage-backed securities; the said securitization was created as a trust. The sale of plaintiffs' loan into the trust did not comply with all the terms and conditions set forth in the Pooling and Servicing Agreement ("PSA");

94. The said securitization trust does not own plaintiffs' loan; the authority of the public trustee conflicts with that of the trustee of the pooled assets and the trustee for the holders of mortgage backed securities; there is a conflict between the "depositor" (custodian of the alleged mortgage and note that was securitized), the trustee, and the certificate holders (investors);

95. The trust or investors are the only party who may satisfy the constitutional standing requirement to foreclose provided they hold legal title to both plaintiffs' promissory note and deed of trust; BOA is fully aware that the sale of plaintiffs' loan into the trust did not comply with all the terms and conditions set forth in the PSA; BOA is pursuing foreclosure proceedings against the plaintiffs on behalf of the securitization trust;

96. BOA's pursuit of foreclosure proceedings against the plaintiffs on behalf of the
securitization trust with knowledge that the securitization trust does not own plaintiffs'
loan constitutes an unfair and deceptive trade practice Colorado law that harmed the
Plaintiffs; BOA maliciously pursued foreclosure proceedings against the Plaintiffs;
BOA's pursuit of foreclosure proceedings against the Plaintiffs took place while it
engaged in the ordinary course of its business;

97. BOA's pursuit of foreclosure proceedings against the plaintiffs is routine as it forecloses
on hundreds of thousands of loans across Colorado and the country and has impacted the
consuming public at large and will continue to impact any consumer of its services;
Plaintiffs have suffered injury as to their legally protected property rights and interest;
BOA's routine pursuit of foreclosure proceedings against the Plaintiffs has injured the
Plaintiffs.

98. BOA's pursuit of foreclosure proceedings against the plaintiffs on behalf of the
securitization trust with knowledge that the securitization trust does not own plaintiffs'
loan violates Colorado consumer protection laws and harmed the plaintiffs; BOA's
attempt through Mercedes Judilla, to assign plaintiffs' mortgage and note on behalf of the
securitization trust with knowledge that the securitization trust does not own plaintiffs'
loan constitutes an unfair and deceptive trade practice under Colorado law that harmed
the plaintiffs.

99. BOA's attempt through Mercedes Judilla, to assign plaintiffs' mortgage and note took
place while it engaged in the ordinary course of its business; BOA's attempt through
MERS (in the present case Mercedes Judilla), to assign plaintiffs' mortgage and note as
well as that of other consumers is routine as it forecloses on hundreds of thousands of

loans across the country and has impacted the consuming public at large and will continue to impact any consumer of its services;

100.     Plaintiffs have suffered injury as to their legally protected property rights and interest; BOA's routine attempt through MERS, to assign plaintiffs' mortgage and note in order to pursue foreclosure proceedings against the Plaintiffs has injured the Plaintiffs; BOA's attempt through MERS, to assign plaintiffs' mortgage and note behalf of the securitization trust with knowledge that the securitization trust does not own plaintiffs' loan violates Colorado consumer protection law and harmed the plaintiffs; BOA's attempt through MERS to assign plaintiffs' mortgage and note was done with malice.

101.     Plaintiffs' loan was federally or otherwise insured and guaranteed; Plaintiffs' loan has been paid off with insurance proceeds by various guarantors, investors or the federal government; Plaintiffs' loan is federally or otherwise insured and guaranteed by the FHA Mortgage Insurance Fund.

102.     Government National Mortgage Association (Ginnie Mae) guarantees the timely payments of principal and interest on plaintiffs' promissory note; BOA knew that Freddie Mac, Ginnie Mae or another entity, including but not limited to an insurance company, guarantees the timely payments of principal and interest on Plaintiffs' promissory note. BOA's pursuit of foreclosure proceedings with knowledge that Freddie Mac, Ginnie Mae or another entity guarantees the timely payments of principal and interest on plaintiffs' promissory note constitutes an unfair and deceptive trade practice under Colorado law. BOA's pursuit of foreclosure proceedings against the plaintiffs took place while it engaged in the ordinary course of its business;

103.     BOA's pursuit of foreclosure proceedings against the plaintiffs is routine as it

foreclosures on hundreds of thousands of loans across Colorado and the country and has

impacted the consuming public at large and will continue to impact any consumer of its

services; Plaintiffs have suffered injury as to their legally protected property rights and

interest; BOA's routine pursuit of foreclosure proceedings against the plaintiffs has

injured the plaintiffs;

104.     BOA's pursuit of foreclosure proceedings with knowledge that Freddie Mac,

Ginnie Mae or another entity guarantees the timely payments of principal and interest on

plaintiffs' promissory note violates Colorado consumer protection law;  BOA's pursuit of

foreclosure proceedings against the plaintiffs was done with malice;

105.     BOA initiated foreclosure proceedings on behalf of an unknown entity or

individual investor; Said unknown investor illegally obtained plaintiffs' note and deed of

trust; Said unknown investor has no beneficial right, title or interest under plaintiffs' note;

Said unknown investor has no beneficial right, title or interest under plaintiffs' deed of

trust;BOA's pursuit of foreclosure proceedings with knowledge that said unknown

investor has no beneficial right, title or interest under plaintiffs' deed of trust and note

constitutes an unfair and deceptive trade practice under Colorado law;

106.     BOA's pursuit of foreclosure proceedings against the plaintiffs took place while it

engaged in the ordinary course of its business; BOA's pursuit of foreclosure proceedings

against the plaintiffs is routine as it forecloses on hundreds of thousands of loans across

the country and has impacted the consuming public at large and will continue to impact

any consumer of its services; Plaintiffs have suffered injury as to their legally protected

property rights and interest;  BOA's routine pursuit of foreclosure proceedings against the

plaintiffs has injured the plaintiffs; BOA's pursuit of foreclosure proceedings with

knowledge that said unknown investor has no beneficial right, title or interest under

plaintiffs' deed of trust and note violates Colorado consumer protection laws;

107.     BOA's pursuit of foreclosure proceedings against the plaintiffs was done with

malice; By pursuing foreclosure proceedings, BOA intentionally under color of state law,

violated and continues to violate plaintiffs' due process rights in violation of 42 USC§

1983; BOA intentionally violated plaintiffs' due process rights by fabricating and failing

to produce the purported MERS assignment or other valid assignment at the Rule 120

hearing;

108.     BOA acted maliciously by omitting to produce the purported April 28, 2011

assignment; BOA as a founding member, created MERS for purposes of evading state

recording fees and requirements;

109.     In 2009, TBW ceased to be a MERS member; In 2009, MERS ceased to be an

agent of TBW and as such ceased to be the mortgagee of record for TBW; A new deed of

trust designating TBW as the sole beneficiary was then and is required today and may be

recorded; the Arapahoe county district court's failure to require of BOA the production of

a valid assignment of plaintiffs' deed of trust violated plaintiffs' due process rights;

110.     The Arapahoe county district court's failure to require of BOA the production of a

valid assignment or otherwise inquire as to the manner in which BOA acquired plaintiffs'

promissory note violated plaintiffs' due process rights; the Arapahoe county district

court's failure to require of BOA the production of evidence as to the origin, date and

purpose of delivery of plaintiffs' promissory note to BOA, violated plaintiffs' due

process rights.

111.     The Arapahoe county district court violated plaintiffs' due process rights, by shifting the real-party-in-interest burden from the defendant to Plaintiffs; the Arapahoe county district court violated plaintiffs' due process rights, by allowing during the Rule 120 hearing testimony via telephone of a witness whose identity and credibility was challenged and BOA's witness was not who he claimed to be on the telephone;

112.     The requirement that plaintiffs need file their own lawsuit in order to defend an improper foreclosure violates plaintiffs' due process rights; BOA while acting through MERS recorded the purported April 28, 2011 assignment with knowledge that the purported assignment of Plaintiffs' note and deed of trust was fabricated and is otherwise invalid; BOA (acting through MERS) maliciously recorded the purported April 28, 2011 assignment of plaintiffs' note and deed of trust;

113.     BOA is liable for the filing of the fabricated and invalid assignment of plaintiffs' note and deed of trust pursuant to Colo. Rev. Stat. §38-35-109(3); BOA is liable for causing to be filed with knowledge, a notice of election and demand containing a material misstatement or false claim pursuant to Colo. Rev. Stat. §38-35-109(3);

114.     No transaction ever took place between MERS and BOA regarding Plaintiffs' note and deed of trust, and no "consideration of the sum of ten dollars and other valuable consideration" was ever paid by BOA to the purported assignor MERS as claimed on the purported assignment of plaintiffs' promissory note and deed of trust; BOA, by and through Mercedes Judilla acting as a MERS' certifying officer; falsely claimed the "receipt, adequacy and sufficiency" of a (non-existent) consideration as claimed on the purported assignment of plaintiffs' promissory note and deed of trust;

115.     MERS' corporate resolution does not authorize Mercedes Judilla to act on behalf of MERS to receive funds paid as consideration for an assignment; MERS' corporate resolution does not authorize Mercedes Judilla to act on behalf of MERS as a custodian of funds paid as consideration for an assignment; MERS' purported assignment of plaintiffs' promissory note and deed of trust is void for lack of consideration;

116.     BOA has intentionally inflicted emotional distress upon the plaintiffs; BOA has negligently inflicted emotional distress upon the plaintiffs; Plaintiffs have suffered and continue to suffer from gastrointestinal pain due to emotional distress; Plaintiffs have suffered and continue to suffer from sleeplessness due to emotional distress; Plaintiffs have suffered and continue to suffer from diarrhea due to emotional distress;

117.     Plaintiffs have suffered and continue to suffer from sleeplessness due to emotional distress; Plaintiffs have suffered and continue to suffer from panic attacks due to emotional distress; Plaintiffs have suffered and continue to suffer from depression due to emotional distress; Plaintiffs have suffered a loss of pregnancy due to emotional distress; Plaintiffs have suffered and continue to suffer from infertility due to emotional distress;

118.     BOA had a duty to exercise reasonable care with respect to plaintiffs; BOA has a legal duty not to engage in fraud; BOA has violated the Colorado fair debt collection and practices act; BOA deliberately avoided an appearance in plaintiffs' bankruptcy proceedings; BOA purposefully remained idle for almost seven months in order to mask its inability to prove "holder of an evidence of debt" status; BOA purposefully remained idle for almost seven months in order to mask its inability to prove "qualified holder" status;

119.     BOA purposefully remained idle for almost seven months in order to mask its

inability to prove mortgagee/assignee" status; BOA purposefully chose to proceed with

the Rule 120 hearing as a means to conceal its inability to prove "mortgagee/assignee"

status; BOA purposefully chose to proceed with the Rule 120 hearing as a means to

conceal its inability to prove "valid transferee" status as to plaintiffs' promissory note;

120.     BOA has no proof of purchase as to plaintiffs' promissory note for itself or any

other entity; TBW did not assign, transfer plaintiffs' promissory note and deed of trust to

BOA or any other entity or third party;

121.     BOA has no proof or evidence that plaintiffs' note and deed of trust were legally

transferred to it; BOA has evidence as to the date and purpose plaintiffs' promissory note

and deed of trust was transferred to it; BOA knowingly engages in inherently deceptive

foreclosure practices; BOA has the ability to access and change MERS records without

any oversight or transparency;

122.     The great majority of consumers in Colorado and around the country is

unsophisticated and is unlikely to challenge BOA's foreclosure practices; BOA's

argument with knowledge of MERS' Procedures Manual, release 19.0, as well as

Membership Terms and Conditions, release 2.0 that MERS can validly transfer the

beneficial rights to plaintiffs' promissory note, constitutes an attempt to perpetrate fraud

upon this United States district court;

123.     The fact that BOA with knowledge of MERS' Procedures Manual, release 19.0,

as well as Membership Terms and Conditions, release 2.0, attempted and has

successfully argued in state and federal courts across the country that MERS can validly

transfer the beneficial rights of debt, constitutes an achievement of fraud upon those courts and those consumers foreclosed upon;

124.    BOA's argument with knowledge of MERS' Procedures Manual, release 19.0, as well as Membership Terms and Conditions, release 2.0, that MERS can validly transfer the beneficial rights to plaintiffs' promissory note, constitutes an unfair and deceptive trade practice under Colorado law; BOA's argument took place while it engaged in the ordinary course of its business; BOA's argument is routine as it forecloses on hundreds of thousands of loans across Colorado and the country and has impacted the consuming public at large and will continue to impact any consumer of its services; Plaintiffs have suffered injury as to their legally protected property rights and interest; BOA's routine argument has injured the plaintiffs;

125.    BOA's argument with knowledge of MERS' Procedures Manual, release 19.0, as well as Membership Terms and Conditions, release 2.0, that MERS can validly transfer the beneficial rights to plaintiffs' promissory note, violates Colorado consumer protection law; BOA's argument in state court pleadings and that fees can be collected from plaintiffs in violation of the bankruptcy discharge injunction constitutes an unfair and deceptive trade practice under Colorado law; BOA's argument in state court pleadings that fees can be collected from plaintiffs in violation of the bankruptcy discharge injunction violates Colorado consumer protection law;

126.    BOA's argument in state court pleadings that fees can be collected from Plaintiffs in violation of the bankruptcy discharge injunction violates the Office of the Comptroller of the Currency ("OCC") consent cease and desist order; BOA proximately caused plaintiffs to file for bankruptcy; Plaintiffs suffered great fear and anxiety due to the

bankruptcy and potential loss of their only home; BOA proximately caused Plaintiffs to lose wages in order to defend foreclosure proceedings brought by BOA; BOA proximately caused the plaintiffs to divert funds allocated to the payment of its Homeowners Association dues to the defense of foreclosure proceedings brought by BOA; BOA, by and through its attorney Christa Nicole Kilk and agent/employee Mercedes Judilla engaged in mail and wire fraud in violation of 18 USC §§ 1341, 1343.

## CAUSES OF ACTION

## COUNT I.

### Fraud

127.　　Plaintiffs incorporate paragraphs 1 through 126 as if fully set forth herein. Whereas the Defendant initiated foreclosure proceedings on or about August 16, 2010 against the Plaintiffs, it thereby misrepresented to the plaintiffs that it was in actual possession of Plaintiffs' note, when in fact it was not. Said claim of possession of Plaintiffs' promissory note is material, as under Colorado law it confers the status of "a holder of evidence of debt" and "qualified holder" as those terms are defined under Colorado statute.

128.　　As a mere servicer and not the custodian of Plaintiffs' note at the time foreclosure proceedings commenced, the Defendant knew that the representation was false and intended for the Plaintiffs to file for bankruptcy. Whereas the Plaintiffs had no apparent reason to doubt the representations of a large and respected financial services company such as the Defendant, the Plaintiffs rightfully relied on the misrepresentations. Relying on the misrepresentations and to protect their property with a bankruptcy protective order, the Plaintiffs filed for bankruptcy that they would not have filed but for the

misrepresentations of the Defendant. Also, Plaintiffs' credit standing suffered as their credit file with all three major credit bureaus, Equifax, Trans Union and Experian; now reflect a foreclosure.

129.     Plaintiffs' home value has been reduced to $144,000. Plaintiffs also currently suffer and have suffered severe emotional distress which caused gastrointestinal pain; sleeplessness; diarrhea; panic attacks; depression; loss of pregnancy and infertility.

130.     The fact that the Defendant fabricated false documents, concealed and/or failed to disclose them, and the misrepresentations that were made were material to the transaction at hand. Said omissions and misrepresentations were made with the knowledge of their falsity, or with such utter disregard and recklessness as to whether they were true or false and with the intent of misleading plaintiffs into relying upon them and file for bankruptcy protection.

131.     The reliance of plaintiffs on the statements and omissions that were made by the defendant are justifiable, given the circumstances, and said reliance resulted in injury to plaintiffs as their present lawsuit will attest. At all times, the defendant acted with a conscious, willful and malicious disregard for the rights and safety of plaintiffs, knowing that there was a great probability that its acts would cause harms to plaintiffs such as the filing of a bankruptcy petition.

132.     Because of actions and omissions outlined above, the defendant has committed fraud upon plaintiffs. Plaintiffs have suffered damages as a direct and proximate result of the actions of the defendant. Further, Plaintiffs were required to retain an attorney to assist Plaintiffs in asserting Plaintiffs' claims and protecting Plaintiffs' rights in bankruptcy proceedings.

## COUNT II.

### Violation of Colo. Rev. Stat. § 6-1-101, et seq.

### (Colorado Consumer Protection Act)

133.     Plaintiffs incorporate paragraphs 1 through 132 as if fully set forth herein.

Plaintiffs are homeowners who are defendants in foreclosure proceedings initiated by the

defendant. Whereas the Defendant fabricated a false document (i.e. the assignment)

purporting to transfer beneficial rights and recorded it in official county records;

Defendant engaged in an unfair or deceptive trade practice;

134.     Whereas the fabrication of the false document (i.e. the assignment) occurred in

the course of the Defendant's business as per Arapahoe county records it forecloses and

has foreclosed upon thousands of homeowners with such fabricated assignments;

Whereas over a thousand of Colorado homeowners have lost their homes in foreclosure

on the basis of such fabricated assignments, and those homeowners were not legally

trained so as to detect the fraudulent nature of the assignment; the Defendant's action has

significantly impacted the public;

135.     Whereas Plaintiffs' property was put in foreclosure and as a result lost value in

excess of $20,000; the Plaintiffs have suffered injury to their legally protected property

interest. The Defendant's practice of fabricating false assignments has caused the

Plaintiffs' injury and has the potential to cause injury to thousands of Colorado

homeowners in the future.

136.     Colorado and other states throughout the nation have enacted laws to protect

consumers against unfair, deceptive or fraudulent business practices, unfair competition

and false advertising. Colorado and other states throughout the nation provide consumers with a private right of action under these statutes. In violation of these statutes, the defendant has affirmatively misrepresented and knowingly concealed, suppressed and failed to disclose material facts with the intent that others rely upon such concealment and deception in connection with the foreclosure process.

137.     More specifically, the Defendant's use of its MERS' membership by and through its own employees, (in the present case, Mercedes Judilla) limited MERS agency to fabricate a false assignment induces Colorado consumers to believe that the assignment is legitimate and therefore do not challenge the foreclosure of their property. And where an assignment exists, it is not to be ignored because it is a document that establishes chain of title, even if its existence is not mandatory under Colorado law.

138.     The conduct of the defendant, as set forth above, constitutes unfair, fraudulent and/or deceptive trade practices prohibited under the Colorado Consumer Protection Act and the consumer protection/fraud act of various other states. As a result of the Defendant's unfair, fraudulent and/or deceptive practices, plaintiffs have suffered an ascertainable loss of monies and property value.

139.     Plaintiffs have suffered damages as a direct and proximate result of the actions of the defendant. Further, plaintiffs have been required to retain an attorney to assist Plaintiffs in asserting Plaintiffs' claims and protecting Plaintiffs' rights in bankruptcy proceedings.

## COUNT III.

### TORT

### (Negligence Per Se)

140.     Plaintiffs incorporate paragraphs 1 through 139 as if fully set forth herein. The Defendant's actions as described above, including but not limited to the fabrication of a false assignment are a violation of the Colorado Consumer Protection Act (**CCPA**). The Defendant has a legal duty under the CCPA not to fabricate a false assignment that induces the Plaintiffs to believe that it purchased in a valid contractual transaction for the sum of ten dollars as consideration, Plaintiffs' promissory note and Deed of Trust. The CCPA was enacted in part for the public safety such that Colorado Citizens like the Plaintiffs might be safe in their property rights from the illegal taking thereof, by way of false assignments.

141.     By fabricating the false assignment, the Defendant breached that duty. In foreclosing on the Plaintiffs' property in whole or in part on the basis on the false assignment, Plaintiffs' property lost value and suffered other damages including but not limited to Plaintiffs' credit standing as their credit file with all three major credit bureaus, Equifax, Trans Union and Experian; now reflect a foreclosure. Plaintiffs also currently suffer and have suffered severe emotional distress which caused gastrointestinal pain; sleeplessness; diarrhea; panic attacks; depression; loss of pregnancy and infertility.

142.     The defendant in its position as the purported mortgagee/foreclosing party had a legal duty not to engage in illegal acts with respect to the Plaintiffs; including but not limited to the fabrication of a false assignment and the forging of the endorsement of the promissory note. The plaintiffs are protected under federal and state statutes, including

but not limited to Colorado Consumer protection Act. Colo. Rev. Stat. § 6-1-101, et seq. The defendant's breach of said duty constitutes negligence per se.

143.     As a result, Plaintiffs have suffered severe emotional distress, mental pain and suffering; and adverse physical consequences as a direct and proximate result of the actions of the Defendant. Further, plaintiffs have been required to retain an attorney to assist plaintiffs in asserting plaintiffs' claims and protecting plaintiffs' rights in bankruptcy proceedings.

## COUNT IV.

### TORT

### (Intentional infliction of Emotional Distress)

144.     Plaintiffs incorporate paragraphs 1 through 143 as if fully set forth herein. The defendant's actions as described above, including but not limited to fabricating the false assignment; engaging in forgery and the recording in official records of a fabricated and otherwise forged document, the Defendant engaged in an extreme and outrageous conduct. The fabrication of the false assignment is at the very least reckless and was done with the intent of causing the Plaintiffs severe emotional distress as losing one's home does.

145.     Because the Defendant foreclosed on the Plaintiffs' property in whole or in part on the basis of the false assignment, Plaintiffs suffer and have suffered severe emotional distress which caused mental pain; gastrointestinal pain; sleeplessness; diarrhea; panic attacks; depression; loss of pregnancy and infertility, which are the adverse physical consequences as a direct and proximate result of the actions of the Defendant. Further,

plaintiffs have been required to retain an attorney to assist plaintiffs in asserting plaintiffs' claims and protecting plaintiffs' rights in bankruptcy proceedings.

## COUNT V.

### TORT

### (Negligence)

146.     Plaintiffs incorporate paragraphs 1 through 145 as if fully set forth herein. The Defendant has a legal duty not to fabricate a false assignment that induces the Plaintiffs to believe that it purchased in a valid contractual transaction for the sum of ten dollars as consideration, Plaintiffs' promissory note and Deed of Trust. The Defendant in its position as the foreclosing party also had a duty to exercise reasonable care with respect to Plaintiffs as to the actions of its own employee or agent Mercedes Judilla who fabricated a false assignment in order to facilitate foreclosure proceedings brought by the Defendant.

147.     By failing to supervise its own employee and/or agent, the Defendant breached that duty to exercise reasonable care. As a result, Plaintiffs suffer and have suffered severe emotional distress, mental pain; gastrointestinal pain; sleeplessness; diarrhea; panic attacks; depression; loss of pregnancy and infertility, which are the adverse physical consequences as a direct and proximate result of the actions of the Defendant.. Further, Plaintiffs have been required to retain an attorney to assist Plaintiffs in asserting Plaintiffs' claims and protecting Plaintiffs' rights in bankruptcy proceedings.

## COUNT VI.

### Violation of COLO. REV. STAT. § 12-14-101, et seq.

### (Colorado Fair Debt Collections Practices Act)

148.    Plaintiffs incorporate paragraphs 1 through 147 as if fully set forth herein. The defendant's actions as described above constitute a use of deception to collect a debt. The defendant in a rush to seize plaintiffs' home, *inter alia*, misrepresented itself as mortgagee. By fabricating the false assignment; engaging in forgery and recording in official county records of the fabricated and otherwise forged document, the Defendant engaged in an unfair or unconscionable means to collect or attempt to collect a debt in violation of Colo. Rev. Stat. § 12-14-108(1). The Defendant's conduct is also a violation of Colo. Rev. Stat. § 12-14-107 because the false assignment as part of the foreclosure process constitutes the use of a false, deceptive and misleading representation and/or means in connection with the collection of a debt.

149.    As a result, Plaintiffs have suffered severe emotional distress, mental pain and suffering and adverse physical consequences as a direct and proximate result of the actions of the Defendant. Further, plaintiffs have been required to retain an attorney to assist Plaintiffs in asserting Plaintiffs' claims and protecting Plaintiffs' rights in bankruptcy proceedings.

## COUNT VII.

### Violation of Colo. Rev. Stat. § 38-35-109(3)

### (Spurious Lien)

150.    Plaintiffs incorporate paragraphs 1 through 149 as if fully set forth herein.

By filing and recording the false assignment purporting to transfer Plaintiffs' promissory note and deed of trust, and by causing the filing of a notice of election and demand based in part or whole thereon, the Defendant violated the spurious lien statute by "purporting to convey, encumber, create a lien and otherwise affected the title" of the Plaintiffs' property. The Defendant knew and/or had reason to know that the false assignment was forged and groundless, and contained a material misstatement and false claim, or was otherwise invalid as no purchase transaction ever took place between MERS and the Defendant and no consideration was ever paid.

## COUNT VIII.

### Violation of the Due Process Clause of the U.S. Constitution

151.     Plaintiffs incorporate paragraphs 1 through 150 as if fully set forth herein. Whereas foreclosure proceedings under Rule 120 are limited in purpose to the questions of default and military active duty membership; whereas foreclosure proceedings under Rule 120 are not subject to appellate review; whereas the Plaintiffs as homeowners are required to file their own lawsuit in another forum and raise their objections and defenses there, Rule 120 and Colo. Rev. Stat. § 38-38-101 *et seq.* violate the due process clause of the U.S. Constitution by improperly shifting the burden of proof from the bank to the Plaintiffs.

## COUNT IX.

### Violation of the Equal Protection Clause of the U.S. Constitution

152.     Plaintiffs incorporate paragraphs 1 through 151 as if fully set forth herein. Whereas Rule 120; Colo. Rev. Stat. § 38-38-100.3(10),(20) and Colo. Rev. Stat. § 38-38-101(1)(b)(II), differentiate between Colorado citizens whose real estate purchase or

refinance loans were obtained from financial institutions lenders such as the Defendant

and that of private non-financial institution lenders, Rule 120; Colo. Rev. Stat. § 38-38-

100.3(10),(20) and Colo. Rev. Stat. § 38-38-101(1)(b)(II) violate the equal protection

clause of the U.S. Constitution by effectively creating two classes of Colorado citizens.

As a result, Plaintiffs as Colorado citizens are not the afforded the same protection under

the law as are other Colorado citizens whose loans were obtained from non-financial

institution lenders. Such citizens can only undergo foreclosure proceedings under Rule

105 where no shift of burden of proof from the bank to the foreclosed upon party can take

place.

## COUNT X.

### Violation of Civil Rights Pursuant to 42 U.S.C. § 1983

153.    Plaintiffs incorporate paragraphs 1 through 152 as if set forth in full herein.

The defendant's practices, policies, conduct, and failures to act as alleged herein deprived

the plaintiffs *inter alia* of their right to due process of law. Whereas Plaintiffs have the

constitutional right not to have their real property taken from them without due process of

law; the Defendant has violated that right by fabricating a false assignment purporting to

transfer the beneficial rights, title and interest in Plaintiffs' promissory note and deed of

trust; and under color of state law (i.e. Colorado recording statute) recorded the said false

assignment in official county records.

154.    Whereas the Defendant initiated foreclosure proceedings against the Plaintiffs

pursuant to and facilitated by Rule 120; Colo. Rev. Stat. § 38-38-100.3(10),(20) and

Colo. Rev. Stat. § 38-38-101(1)(b)(II); in part or whole on the basis of the said false

assignment, the Defendant has violated Plaintiffs' due process rights. Whereas the

Defendant has admitted that it is not the owner of Plaintiffs' loan, and therefore does not satisfy the standing requirement under the United States Constitution to bring a claim against the Plaintiffs, yet currently continues to pursue foreclosure proceedings against the Plaintiffs, while being facilitated by state law (i.e. Rule 120; Colo. Rev. Stat. § 38-38-100.3(10),(20) and Colo. Rev. Stat. § 38-38-101(1)(b)(II)), the Defendant violates Plaintiffs' due process rights. Because the Defendant's actions are under color of state law and facilitated by state law, the State of Colorado provides the Defendant with a mantle of authority; Defendant's actions therefore constitute state action.

155.    More specifically, the State of Colorado provides the mantle of authority that: mere possession of Plaintiffs' promissory note or copy thereof, constitutes sufficient standing for the taking of Plaintiffs' real property. The defendant's practices, policies, conduct, and failures to act as alleged herein violate 42 U.S.C. § 1983. As a result, plaintiffs have suffered irreparable harm and damages entitling them to injunctive and other relief. Further, plaintiffs have been required to retain an attorney to assist Plaintiffs in asserting Plaintiffs' claims and protecting Plaintiffs' rights in bankruptcy proceedings.

## PUNITIVE DAMAGES

156.    The type of behavior alleged in the present complaint is not confined to plaintiffs' case alone. In fact, this is a nationwide problem, and the defendant, along with other large banks, is currently in negotiations with the Attorney Generals of all 50 states to settle civil liability charges. The settlement is reportedly worth $25 Billion. See Huffington Post article dated January 18th, 2012) available at:

http://www.huffingtonpost.com/2012/01/18/foreclosure-settlement-talks_n_1214782.html

157.     For such callous behavior punitive damages are warranted. The purpose of

punitive damages is to punish and deter the defendant from engaging in harmful conduct

to others both now and in the future. The defendant acted with willful misconduct,

malice, fraud, oppression, wantonness and an entire want of care raising the presumption

of conscience indifference to the consequences. The defendant by and through its

conduct, has acted willfully, with malice, intending and achieving fraud such that

plaintiffs are entitled to an award of punitive damages in accordance with the enlightened

conscience of an impartial jury.

## RELIEF REQUESTED

Wherefore, plaintiffs seek a judgment as follows:

A.  Preliminarily and permanently enjoin all proceedings subsequent to and under Rule 120
    and Colo. Rev. Stat. § 38-38-101 *et seq*;

B.  Preliminarily and permanently enjoin the sale of plaintiffs' property in a foreclosure sale
    scheduled for Wednesday, July 10, 2013;

C.  Declaratory and injunctive relief dismissing the foreclosure of plaintiffs' property with
    prejudice;

D.  Declaratory and injunctive relief declaring the mortgage, promissory note and other
    related instruments of plaintiffs void and unenforceable;

E.  Declaratory and injunctive relief declaring Rule 120; Colo. Rev. Stat. § 38-38-
    100.3(10),(20) and Colo. Rev. Stat. § 38-38-101(1)(b)(II) unconstitutional;

F.  Award the plaintiffs actual damages;

G.  Award the plaintiffs punitive damages;

H.  Grant such other relief as the Court deems just, equitable and proper.

Plaintiffs hereby reserve the right to amend this complaint to supplement or modify the factual

obligations and claims contained herein, based upon information received from the defendant,

witnesses, experts, and others in the course of discovery in this matter.

### REQUEST FOR TRIAL BY JURY

Plaintiffs respectfully request a trial by jury on all issues in the within action so triable.

Respectfully submitted this 24th day of May, 2013.

By: _____          _____

John M. Mbaku
Luvibidila Jolie Lumuenemo
1177 S. Alton St. Unit A
Denver, CO 80247
Ph: 303-731-1145
E-mail: john_mbaku@yahoo.com

### CERTIFICATE OF SERVICE

We, John M. Mbaku & Luvibidila Jolie Lumuenemo, plaintiffs hereby certify that a copy of this
document is being simultaneously delivered to the Defendant via U.S. Mail to the following
address:

Victoria E. Edwards
AKERMAN SENTERFITT LLP
1400 Wewatta Street
Suite 500
Denver, CO 80202

_____          _____

John M. Mbaku
Luvibidila Jolie Lumuenemo
1177 S. Alton St. Unit A
Denver, CO 80247
Ph: 303-731-1145
E-mail: john_mbaku@yahoo.com