IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-00190-PAB-KLM

JOHN M. MBAKU, and
LUVIBIDILA JOLIE LUMUENEMO,

    Plaintiffs,

v.

BANK OF AMERICA, NATIONAL ASSOCIATION, successor BAC Home Loans Servicing, LP, formerly known as Countrywide Home Loans Servicing, LP,

    Defendant.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiffs' **Second Motion for Leave to File Amended Complaint Pursuant to Fed. R. Civ. P. 15(a)(2)** [Docket No. 39; Filed May 24, 2013] (the "Motion"). On June 14, 2013, Defendant filed a Response [#45]. On July 1, 2013, Plaintiffs filed a Reply [#56]. The Motion is thus fully briefed and ripe for resolution. For the reasons set forth below, the Court **RECOMMENDS** that the Motion [#39] be **GRANTED in part and DENIED in part**.[1]

---

[1] A magistrate judge may issue orders on nondispositive motions only. *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1461, 1462-63 (10th Cir. 1988). Whether motions to amend are dispositive is an unsettled issue. *Chavez v. Hatterman*, No. 06-02525-WYD-MEH, 2009 WL 82496, at *1 (D. Colo. Jan. 13, 2009) (collecting cases). When an order denying a motion to amend removes or precludes a defense or claim from the case it may be dispositive. *Cuenca v. Univ. of Kan.*, 205 F. Supp. 2d 1226, 1228 (D. Kan. 2002). For the purposes of resolving the present Motion, the Court assumes that the issue is dispositive and requires a recommendation to District Judge.

In short, this matter pertains to Defendant's allegedly illegal and fraudulent initiation of foreclosure proceedings against Plaintiffs' homestead property. *See generally Compl.* [#1]; *see also Recommendation* [#22] at 2-5 (discussing Plaintiffs' allegations). Pursuant to the Motion [#39], Plaintiffs, who proceed in this matter *pro se*,[2] seek leave to amend their Complaint [#1] to clarify their constitutional due process claim related to Colorado Rule of Civil Procedure ("C.R.C.P.") 120, to re-plead their claims of fraud, violation of the Colorado Consumer Protection Act ("CCPA"), negligence per se, intentional infliction of emotional distress ("IIED"), negligence, and violation of the Colorado Fair Debt Collection Practices Act ("CFDCPA"),[3] and to add a claim for "spurious lien." Defendant does not oppose the portion of the Motion seeking leave to clarify Plaintiffs' due process claim, but opposes the other proposed amendments. *Response* [#45] at 2.

As a preliminary matter, the pleading amendment deadline was May 27, 2013, and thus Plaintiffs timely filed the Motion [#39]. *Scheduling Order* [#33] at 32. The Court therefore considers any arguments raised by the parties related to whether justice would

---

[2] When considering Plaintiffs' filings, the Court is mindful that it must construe the filings of *pro se* litigants liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be an advocate for *pro se* litigants, nor should the Court "supply additional factual allegations to round out [a *pro se* litigants'] complaint or construct a legal theory on [their] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, Plaintiffs, as *pro se* litigants, must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

[3] Defendant argues that the District Judge previously dismissed these state law claims with prejudice. *Response* [#45] at 1. In actuality, the District Judge did not explicitly specify whether Plaintiffs' state law claims were dismissed with or without prejudice. *Order* [#26] at 19. While the District Judge did indeed dismiss these claims, he did so on the basis of the sufficiency of Plaintiffs' allegations. *See id.* at 12-18. Thus, the Court finds no support for Defendant's assertion in the record, and therefore approaches these claims as having been dismissed without prejudice and as subject to re-pleading. *Compare Order* [#26] at 19 *with Recommendation* [#22] at 13.

be served by amendment. Specifically, the Court should grant leave to amend "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave should generally be permitted unless the moving party unduly delayed or failed to cure, the opposing party would be unduly prejudiced, the proposed amendment would be futile, or there appears to be bad faith or dilatory motive on the part of the movant. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Defendant argues that amendment should be denied primarily based on futility. *Response* [#45] at 3. An amendment is futile if it would not survive a motion to dismiss. *Innovatier, Inc. v. CardXX, Inc.*, No. 08-cv-00273-PAB-KLM, 2010 WL 148285, at *2 (D. Colo. Jan. 8, 2010) (citing *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004)). The Court therefore addresses each of Plaintiffs' contested claims in turn to determine whether the allegations in Plaintiffs' proposed Amended Complaint [#39-1] would survive a motion to dismiss.

**A.   "Spurious Lien"**

Plaintiffs assert this claim in the proposed Amended Complaint for the first time. Specifically, Plaintiffs argue that Defendant violated C.R.S. § 38-35-109(3), which states in full:

> Any person who offers to have recorded or filed in the office of the county clerk and recorder any document purporting to convey, encumber, create a lien against, or otherwise affect the title to real property, knowing or having a reason to know that such document is forged or groundless, contains a material misstatement or false claim, or is otherwise invalid, shall be liable to the owner of such real property for the sum of not less than one thousand dollars or for actual damages caused thereby, whichever is greater, together with reasonable attorney fees. Any grantee or other person purportedly benefited by a recorded document that purports to convey, encumber, create a lien against, or otherwise affect the title to real property and is forged or groundless, contains a material misstatement or false claim, or is otherwise invalid who willfully refuses to release such document of record upon request of the owner of the real property affected shall be liable to such owner for the

damages and attorney fees provided for in this subsection (3).

Colorado law defines a "spurious lien" as "a purported lien or claim of lien that: (a) [i]s not provided for by a specific Colorado or federal statute or by a specific ordinance or charter of a home rule municipality; (b) [i]s not created, suffered, assumed, or agreed to by the owner of the property it purports to encumber; or (c) [i]s not imposed by order, judgment or decree of a state court or a federal court." C.R.S. § 38-35-201(4). A "lien" is "an encumbrance on real or personal property as security for the payment of a debt or performance of an obligation." C.R.S. § 38-35-201(2).

Plaintiffs assert that Defendant violated C.R.S. § 38-35-109(3) by "filing and recording the false assignment purporting to transfer Plaintiffs' promissory note and deed of trust, and by causing the filing of a notice of election and demand based in part or whole thereon . . . ." *Am. Compl.* [#39-1] at 43. Defendant responds that an assignment document and a notice of election and demand are not documents falling within the meaning of C.R.S. § 38-35-109(3). *Response* [#45] at 11. Plaintiffs reply that the meaning of the statute is much broader than Defendant asserts. *Reply* [#56] at 5.

Interpreting a statute under Colorado law requires the Court to "determine legislative intent" by interpreting "statutory terms in accordance with their plain and ordinary meaning." *Yotes, Inc. v. Industrial Claim Appeals Office*, __ P.3d __, __, No. 12CA1047, 2013 WL 4402321, at *2 (Colo. App. Aug. 15, 2013). Here, the language of the statute is clear. While a deed of trust is a lien, an assignment merely transfers the deed of trust to another without conveying, encumbering, or creating a lien against the title of real property. *See Deutsche Bank Trust Co. Ams. v. Samora*, __P.3d__, __, No. 12CA0872, 2013 WL 2338183, at *11 (Colo. App. May 23, 2013) (citing C.R.S. § 38-35-201(2)); *see also Medical*

*Lien Mgmt., Inc. v. Allstate Ins. Co.*, __ P.3d __, __, No. 12CA0691, 2013 WL 2450632, at *3 (Colo. App. June 6, 2013) (stating that an "assignment is a voluntary transfer of some right or interest to another person"). A notice of election and demand for sale "makes demand on the public trustee to give notice, advertise for sale, and sell the property described in the notice." *Land Title Ins. Corp. v. Ameriquest Mortg. Co.*, 207 P.3d 141, 143 n.6 (Colo. 2009). In other words, the filing of this document "commences the public trustee foreclosure process." *Id.* (citing C.R.S. § 38-38-101). Thus, neither an assignment nor a notice of election and demand conveys title to real property, encumbers title to real property, creates a lien against real property, or otherwise affects the title to real property, as required by C.R.S. § 38-35-109(3).

Accordingly, the Court **recommends** that the Motion to Amend be **denied** with respect to Plaintiff's proposed Claim VII for violation of C.R.S. § 38-35-109(3) regarding an alleged spurious lien.

**B.   Fraud**

The Court incorporates the District Judge's discussion of the allegations supporting Plaintiff's claim of fraud and the applicable law. *See Order* [#26] at 12-13. In his Order, the District Judge determined that the one element Plaintiffs failed to allege was that "defendant initiated foreclosure proceedings with the intent of inducing plaintiffs' reliance." *Id.* at 12.

The Court finds Plaintiffs' attempt to re-plead this claim to be insufficient. In the original Complaint, Plaintiffs asserted that Defendant's conduct "was motivated in part by its expectation that [P]laintiffs would not challenge the foreclosure." *Id.* at 12-13 (citing

*Compl.* [#1] at 15). The District Judge pointed out that, "Instead of remaining passive as they allege defendants hoped, plaintiffs attempted to prevent the foreclosure by filing for bankruptcy, objecting to defendant's evidence in the Rule 120 hearing, and filing a motion for a preliminary injunction in this Court." *Order* [#26] at 13. In the proposed Amended Complaint, Plaintiffs now state that "Defendant knew that the representation [that it possessed Plaintiffs' note] was false and intended for the Plaintiffs to file for bankruptcy." *Am. Compl.* [#39-1] at 35. In an attempt to address the deficiency in the fraud claim noted by the District Judge, Plaintiffs now provide an allegation that is in direct contradiction to an allegation they made in their original Complaint. This conduct is akin to the filing of a sham affidavit. *See Andersen v. Lindenbaum*, 160 P.3d 237, 241 (Colo. 2007) ("A party's affidavit directly contradicting his own earlier deposition testimony on an issue of material fact can be rejected as a sham affidavit only if it fails to include an explanation for the contradiction that could be found credible by a reasonable jury . . . ."). Thus, it would appear here that Plaintiffs have fabricated a new allegation solely for the purpose of reviving their fraud claim. This conduct is impermissible. *See Foman*, 371 U.S. at 182.

Accordingly, the Court **recommends** that the Motion to Amend be **denied** with respect to Plaintiff's proposed Claim I of fraud.

**C.     Colorado Consumer Protection Act**

The Court incorporates the District Judge's discussion of the allegations supporting Plaintiffs' CCPA claim and the applicable law. *See Order* [#26] at 13-15. Defendant responds to Plaintiffs' asserted amended CCPA claim by arguing that Plaintiffs' proposed Amended Complaint fails to demonstrate that Defendant engaged in an unfair or deceptive

trade practice; that the practice significantly impacted the public as actual or potential consumers of their goods, services, or property; that Plaintiffs suffered injury in fact to a legally protected interest; and that the challenged practice caused Plaintiffs' injury. *Response* [#45] at 5; *see also Order* [#26] at 13 (reciting the elements of a private cause of action under the CCPA).

The Court need only address the first element of a CCPA claim because, as originally found by the District Judge, *Order* [#26] at 14, Plaintiffs have again failed to provide allegations of an unfair or deceptive trade practice within the meaning of the CCPA. The asserted unfair or deceptive trade practice cited by Plaintiffs is that "Defendant fabricated a false document (i.e. the assignment) purporting to transfer beneficial rights and recorded it in official county records . . . ." *Am. Compl.* [#39-1] at 37. In *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 147-49 (Colo. 2003), the Colorado Supreme Court discussed at length the unfair or deceptive trade practice element of the CCPA, ultimately concluding that "a false representation [within the meaning of the CCPA] must either induce a party to act, refrain from acting, or have the capacity or tendency to attract consumers."

Plaintiffs do not contend that Defendant's actions caused them to act or that those actions had a capacity or tendency to attract consumers. Rather, they only weakly argue that Defendant's conduct relating to the alleged fabrication of a false assignment "induces Colorado consumers to believe that the assignment is legitimate and [they] therefore do not challenge the foreclosure of their property." *Am. Compl.* [#39-1] at 38. The Court has found no case in which a similar inducement of inaction has been deemed sufficient under the CCPA. However, even assuming *arguendo* that this assertion does satisfy the CCPA's

first element, Plaintiffs fail to connect the allegation to their own situation, i.e., Plaintiffs do not assert that they believed the assignment was legitimate and *therefore were induced not to act on it*. Under *Rhino Linings*, this potential claim must fail.

Accordingly, the Court **recommends** that the Motion to Amend be **denied** with respect to Plaintiff's proposed Claim II for violation of the CCPA.

**D.    Negligence Per Se**

The Court incorporates the District Judge's discussion of the allegations supporting Plaintiffs' claim of negligence per se and the applicable law. *See Order* [#26] at 13-15. Plaintiffs argue that Defendant was negligent per se in its violation of the CCPA. *Am. Compl.* [#39-1] at 39. In his prior Order, the District Judge held that Plaintiffs failed to state a claim for violation of the CCPA, and that they therefore could not "establish the requisite violation of a statute necessary to a claim for negligence per se." *Order* [#26] at 15. The same logic applies here. Having found that Plaintiffs have again failed to establish a violation of the CCPA, the Court finds that their claim for negligence per se also fails.

Accordingly, the Court **recommends** that the Motion to Amend be **denied** with respect to Plaintiff's proposed Claim III of negligence of per se.

**E.    Intentional Infliction of Emotional Distress**

The Court incorporates the District Judge's discussion of the allegations supporting Plaintiffs' claim of IIED and the applicable law. *See Order* [#26] at 16-17. In his Order, the District Judge found that Plaintiff's allegations did not meet the first element of an IIED claim, i.e., that Defendant engaged in extreme and outrageous conduct. *Id.* at 16 (citing *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999)). In the proposed Amended

Complaint, Plaintiffs specifically aver that Defendant exhibited extreme and outrageous conduct by fabricating a false assignment, engaging in forgery, and recording in official records a fabricated/forged document, resulting in whole or in part in foreclosure procedures on Plaintiffs' property. *Am. Compl.* [#39-1] at 40.  Defendant responds that, even if true, such conduct does not rise to the level of extreme and outrageous conduct as contemplated by Colorado law.  *Response* [#45] at 8.

The Supreme Court of Colorado has stated that demonstrating extreme and outrageous conduct is a "high standard" to meet.  *Coors Brewing Co.*, 978 P.2d at 666. The District Judge has already held that it "was neither extreme nor outrageous for an entity possessing and filing the requisite documentation under Colorado law to institute foreclosure proceedings on borrowers in default."  *Order* [#26] at 16; *see also Patrick v. Bank of New York Mellon*, No. 11-cv-01304-REB-MJW, 2012 WL 934288, at *13 (D. Colo. Mar. 1, 2012) (quoting *Smith v. Bank of New York as Trustee*, 366 B.R. 149, 152 (D. Colo. 2007) ("Whether or not [the former holder of the Note] executed any separate assignment of the Deed of Trust to the Defendant is not relevant because proof that Defendant is the holder of the Note is conclusive as to Defendant's interest in the Deed of Trust.").  Thus, without a showing that the allegedly forged assignment led to the foreclosure of Plaintiff's property, the Court cannot find that Defendant's alleged actions on these grounds were sufficiently extreme and outrageous to state a viable IIED claim.  *See McKinsey v. GMAC Mortg., LLC*, No. 13-cv-00084-REB-MJW, 2013 WL 3448483, at *13 (D. Colo. July 9, 2013).

Accordingly, the Court **recommends** that the Motion to Amend be **denied** with respect to Plaintiff's proposed Claim IV of IIED.

**F.    Negligence**

The Court incorporates the District Judge's discussion of the allegations supporting Plaintiffs' claim of negligence and the applicable law. *See Order* [#26] at 17-18. In holding that Plaintiffs failed to state a claim for negligence, the District Judge found that Plaintiffs' allegations failed to establish the existence of a duty owed by Defendant to Plaintiffs. *Id.* at 18. He identified the duty that Plaintiffs asserted as an alleged duty to "exercise reasonable care with respect to plaintiffs as to certain facts, including but not limited to the fact that defendant's agent threatened to lock plaintiffs' [sic] out of their home by changing the locks." *Id.* (quoting *Compl.* [#1] at 24). However, the District Judge ultimately found that the alleged duty was not really a duty because it "merely restate[d] the challenged conduct without explaining the nature of the duty at issue." *Order* [#26] at 18.

Plaintiffs now assert two other duties allegedly breached by Defendant: (1) the "duty not to fabricate a false assignment that induces the Plaintiffs to believe that [Defendant] purchased in a valid contractual transaction for the sum of ten dollars as consideration, Plaintiffs' promissory note and Deed of Trust," and (2) the "duty to exercise reasonable care with respect to Plaintiffs as to the actions of its own employee or agent Mercedes Judilla who fabricated a false assignment in order to facilitate foreclosure proceedings brought by the Defendant." *Am. Compl.* [#39-1] at 41.

As to the first asserted duty, the Court finds that it fails for the same reason stated by the District Judge, i.e., this "duty not to fabricate" "merely restates the challenged conduct without explaining the nature of the duty at issue." *Order* [#26] at 18. However, Plaintiffs characterize the second asserted duty as a failure by Defendant to supervise its employee/agent, i.e., negligent supervision. *Am. Compl.* [#26] at 41. To demonstrate

negligent supervision, a plaintiff must allege that the defendant owed the plaintiff a legal duty to supervise others, that the defendant breached that duty, and that the breach of the duty caused the harm that resulted in damages to the plaintiff. *Settle v. Basinger*, __ P.3d __, __, 2013 WL 781110, at *3 (Colo. App. Feb. 28, 2013) (citing *Keller v. Koca*, 111 P.3d 445, 447 (Colo.2005)).

"Whether a particular defendant owes a legal duty to a particular plaintiff, as well as the scope of the duty, are questions of law for [the] court to resolve." *Settle*, 2013 WL 781110, at *3 (quoting *Bath Excavating & Constr. Co. v. Wills*, 847 P.2d 1141, 1147 (Colo. 1993)). To determine the existence of this duty, the Court considers "the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the actor's conduct, the magnitude of the burden guarding against injury or harm, and the consequences of placing the burden upon the actor." *Settle*, 2013 WL 781110, at *3 (citing *Bath Excavating & Constr. Co.*, 847 P.2d at 1147). A defendant's duty to supervise arises only when it "has reason to know" that its agent or employee "is likely to harm others" because of her "qualities" and "the work or instrumentalities entrusted" to her. *Settle*, 2013 WL 781110, at *3 (quoting *Destefano v. Grabrian*, 763 P.2d 275, 287 (Colo. 1988) (emphases removed)). Therefore, there is only a breach of the duty to supervise if the principal/employer knows that the agent/employee is "incompetent, vicious, or careless" and fails to take "the care which a prudent [person] would take in selecting the person for the business at hand." *Settle*, 2013 WL 781110, at *3 (quoting *Destefano*, 763 P.2d at 287; citing *Keller*, 111 P.3d at 448 (stating that the duty is breached when the "employer knows or should have known that the employee would cause harm"); *Moses v. Diocese of Colo.*, 863 P.2d at 310, 327 (Colo. 1993) (stating that there is a breach of the duty to care when

-11-

the defendant does not recognize "potential employee attribute[s] of character or prior conduct which would create an undue risk of harm to those with whom the employee came in contact in executing [her] employment responsibilities" (internal quotation omitted)).

Negligent supervision is a direct tort; thus the plaintiff must allege that the defendant had a duty and personally breached that duty, not merely that the agent/employee had and breached a duty, for which the defendant as principal or employer is vicariously liable. *Settle*, 2013 WL 781110, at *3 (citing *Keller*, 111 P .3d at 448). For example, in *Settle v. Basinger*, 2013 WL 781110, the Court of Appeals affirmed the trial court's denial of the plaintiffs' motion to add a claim for negligent supervision of a defendant-physician over defendant-nurses in an emergency medical care situation. In that case, the physician was actually present and placing a chest tube in the plaintiff-patient while the nurses unsuccessfully attempted to intubate the plaintiff-patient. *Id.* at *1. The trial court determined that such a claim under those circumstances would not survive a motion to dismiss because:

> Plaintiffs did not allege that the nurses, because of their personal qualities, were likely to harm others in view of the work or instrumentalities entrusted to them. They did not allege that Dr. Basinger hired, employed, requested, or knew the Air Life nurses before they arrived such that she would have had an "antecedent ability" to recognize the Air Life nurses' alleged "attribute[s] of character or prior conduct which would create an undue risk of harm" to Mr. Settle. *Moses*, 863 P.2d at 327. Nor did plaintiffs allege that Dr. Basinger knew or should have known that, because of their personal attributes, the nurses who attempted the intubation posed a risk of harm to Mr. Settle when they did so. *See Keller*, 111 P.3d at 448. Thus, plaintiffs alleged no facts upon which the court could have concluded that Dr. Basinger owed them a duty to supervise the Air Life nurses when they attempted the intubation. Therefore, the trial court did not abuse its discretion when it denied plaintiffs' motion to amend their complaint to include a claim for negligent supervision against Dr. Basinger.

*Id.* at *4.

Here, Plaintiff has alleged far less than did the plaintiffs in *Settle*. Thus, pursuant to *Settle*, the Court finds that Plaintiff's vague and conclusory assertions are insufficient to allege that Defendant owed Plaintiffs a duty to supervise Mercedes Judilla when she allegedly fabricated the false assignment. *See Am. Compl.* [#39-1] at 41. Thus, Plaintiffs fail to state a claim for negligent supervision against Defendant.

Accordingly, the Court **recommends** that the Motion to Amend be **denied** with respect to Plaintiff's proposed Claim V of negligence.

### G.     Colorado Fair Debt Collection Practices Act

The Court incorporates the District Judge's discussion of the allegations supporting Plaintiffs' CFDCPA claim and the applicable law. *See Order* [#26] at 2-8. Plaintiff reasserts this claim by arguing that Defendant misrepresented itself as a mortgagee through the fabrication of a false assignment. *Am. Compl.* [#39-1] at 42. Plaintiffs specifically point to two provisions of the CFDCPA. *Id.* C.R.S. § 12-14-108(1) prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt . . . ." The statute then lists many examples of such conduct, although Plaintiffs do not specify whether Defendant's alleged actions fall within any of these categories. C.R.S. § 12-14-107 prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt . . . ." This statute also lists many examples of such conduct, although Plaintiffs similarly fail to specify whether Defendant's alleged actions fall within any of these categories.

Plaintiffs previously asserted that Defendant "violated the [C]FDCPA by falsely misrepresenting itself as a mortgagee and that defendant lacked the right to foreclose on

plaintiffs' property." *Order* [#26] at 7 (citing *Compl.* [#1] at 15, 25). In the proposed Amended Complaint, Plaintiffs appear to assert that the CFDCPA was violated because Defendant held itself out as having standing to foreclose on Plaintiffs' property. However, as Defendant points out, the District Judge has already determined that Defendant complied with the statutory requirements of Colorado law and, therefore, that Defendant had "standing" to foreclose on Plaintiffs property. Consequently, Plaintiffs failed to state a claim under the CFDCPA. *Order* [#26] at 8. The Court finds that Plaintiffs' present allegations do not disturb the District Court's previous ruling.[4]

Accordingly, the Court **recommends** that the Motion to Amend be **denied** with respect to Plaintiff's proposed Claim VI for violation of the CFDCPA.

## H.    Constitutional Claims

Plaintiffs also seek to plead three constitutional causes of action based on their assertion that C.R.C.P. 120 violates the United States Constitution. The District Judge previously held that Plaintiffs' due process claim could move forward in this litigation. *Order* [#26] at 18-19. Defendant does not oppose these related amendments as they seek to "clarify and identify" the specific bases for Plaintiffs' constitutional claims. The Court agrees with this characterization of these amendments.

Accordingly, the Court **recommends** that the Motion to Amend be **granted** with respect to Plaintiff's proposed Claim VIII ("Violation of the Due Process Clause of the U.S.

---

[4] Plaintiffs argue that they now allege that Defendant was not the holder of the note and therefore had no standing to foreclose. However, whether Defendant was the holder of the note is a legal determination, and the District Judge has already determined that Defendant complied with statutory requirements to initiate foreclosure proceedings.

Constitution"), Claim IX ("Violation of the Equal Protection Clause of the U.S. Constitution"), and Claim X ("Violation of Civil Rights Pursuant to 42 U.S.C. § 1983").

Thus, based on the foregoing,

IT IS HEREBY **RECOMMENDED** that the Motion [#39] be **GRANTED in part and DENIED in part**, as outlined above.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147–48 (1985), and also waives appellate review of both factual and legal questions, *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412–13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  September 24, 2013

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge