IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-00190-PAB-KLM

JOHN M. MBAKU, and
LUVIBIDILA JOLIE LUMUENEMO,

      Plaintiffs,

v.

BANK OF AMERICA, NATIONAL ASSOCIATION, successor BAC Home Loans Servicing,
LP, formerly known as Countrywide Home Loans Servicing, LP,

      Defendant.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on Defendant's **Motion to Dismiss Plaintiffs' First**

**Amended Complaint** [#124][1] (the "Motion").  Plaintiffs, who proceed as pro se litigants,[2]

filed a Response [#130] in opposition to the Motion to Dismiss [#124], and Defendant filed

a Reply [#137].[3]  The Motion is thus fully briefed and ripe for resolution.  Pursuant to 28

---

    [1]  "[#124]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF).  This convention is used throughout the Recommendation.

    [2]  When considering Plaintiffs' filings, the Court is mindful that it must construe the filings of pro se litigants liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be an advocate for pro se litigants, nor should the Court "supply additional factual allegations to round out [pro se litigants'] complaint or construct a legal theory on [their] behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).  In addition, Plaintiffs, as  pro se litigants, must follow the same procedural rules that govern other litigants.  *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

    [3]  The Colorado Center on Law and Policy, Inc. and Colorado Progressive Coalition has also filed briefing in connection with the Motion as *amici curiae.  See Motion for Leave to Appear as*

U.S.C. § 636(b) and D.C.COLO.LCivR 72.1(c)(3), the Motion has been referred to this Court for recommendation [#125].   Having reviewed the entire case file and being sufficiently advised, the Court respectfully **RECOMMENDS** that the Motion [#124] be **GRANTED in part and DENIED in part**.

## I.  Background

In short, this matter pertains to Defendant's allegedly illegal and fraudulent initiation of foreclosure proceedings against Plaintiffs' homestead property.   *See generally Recommendation* [#22] at 2-5.  On January 21, 2014, Plaintiffs filed an Amended Complaint [#115].   In the present Motion [#124], Defendant seeks dismissal of the Amended Complaint.  Remaining in this diversity lawsuit are three constitutional claims and one claim under the Colorado Fair Debt Collection Practices Act ("CFDCPA").

## II.  Standard of Review

The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations."   *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that

---

Amici Curiae [#132] (the "Amici Motion"); *Responses* [#135, #138]; *Reply* [#139].  The Court accepts this briefing to the extent relevant to the determination of any material issue in the present Motion to Dismiss.  *See Minute Order* [#140].  The Court also notes and accepts the filing of the Brief in Support of the Constitutionality of Colorado's Mortgage Foreclosure Laws [#123] by Intervenor Colorado Attorney General.

they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). That said, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests;" the 12(b)(6) standard does not "require that the complaint include all facts necessary to carry the plaintiff's burden." *Khalik*, 671 F.3d at 1192.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citation omitted).

### III.  Analysis

**A.      Counts II-IV: Federal Claims**

Plaintiffs assert three federal claims, all of which concern the foreclosure process under Rule 120 of the Colorado Rules of Civil Procedure.  The District Judge recently summarized Rule 120 proceedings as follows:

> In Colorado, an interested party may request that a court enter an order authorizing the public trustee to sell real property when the power of sale is contained in a deed of trust. *Amos v. Aspen Alps 123, LLC*, 280 P.3d 1256, 1259 (Colo. 2012).  Colorado Rule of Civil Procedure 120 provides the procedure through which the owner of an evidence of debt secured by a deed of trust may obtain a court order authorizing a public trustee's foreclosure sale.  Colo. R. Civ. P. 120(a).
>
> To secure an order authorizing sale, the moving party must file a verified motion with a state district court requesting an order authorizing sale.  Colo. R. Civ. P. 120(a).  The motion must "specify the default or other facts claimed by the moving party to justify invocation of the power of sale." *Id.*  Upon receipt of the motion, the state court clerk sets a date for a hearing on the motion.  *Id.*  Any interested party may file a response no less than seven days prior to the scheduled hearing.  Colo. R. Civ. P. 120(c).  If no response to the motion is filed, "the court shall examine the motion and, if satisfied that venue is proper and the moving party is entitled to an order authorizing sale upon the facts stated therein, the court shall dispense with the hearing and forthwith enter an order authorizing sale."  Colo. R. Civ. P. 120(e).  The issuance of an order authorizing sale permits the public trustee to proceed with a foreclosure sale.  *See* Colo. Rev. Stat. §§ 38-37-104(b), 38-38-100.3(16).

*May v. U.S. Bank, N.A.*, No. 13-cv-01621-PAB-MJW, 2013 WL 4462033, at *5 (D. Colo. Aug. 20, 2013).

"Count II" of Plaintiffs' claims asserts that Colorado's Rule 120 foreclosure process violates the due process clause of the United States Constitution. *Am. Compl.* [#115] ¶ 129 ("Whereas foreclosure proceedings under Rule 120 are limited in purpose to the questions of default and military active duty membership; whereas foreclosure proceedings under Rule 120 are not subject to appellate review, whereas the Plaintiffs as homeowners are required to file their own lawsuit in another forum and raise their objections and defenses

there, Rule 120 and Colo. Rev. Stat. § 38-38-101 *et seq.* violate the due process clause of the U.S. Constitution by improperly shifting the burden of proof from the bank to the Plaintiffs.").

"Count III" asserts that Colorado's Rule 120 foreclosure process violates the equal protection clause of the United States Constitution. *Id.* ¶ 130 ("Whereas Rule 120; Colo. Rev. Stat. § 38-38-100.3(10),(20) and Colo. Rev. Stat. § 38-38-101(1)(b)(II), differentiate between Colorado citizens whose real estate purchase or refinance loans were obtained from financial institution[ ] lenders such as the Defendant and that of private non-financial institution lenders, Rule 120; Colo. Rev. Stat. § 38-38-100.3(10),(20) and Colo. Rev. Stat. § 38-38-101(1)(b)(II) violate the equal protection clause of the U.S. Constitution by effectively creating two classes of Colorado citizens.").

"Count IV" asserts a § 1983 claim that Defendant misused Colorado law to violate Plaintiffs' right to due process of law under the United States Constitution. *Id.* ¶¶ 131-33 (stating, in part: "Whereas Plaintiffs have the constitutional right not to have their real property taken from them without due process of law; the Defendant has violated that right by fabricating a false assignment purporting to transfer the beneficial rights, title and interest in Plaintiffs' promissory note and deed of trust; and under color of state law (i.e. Colorado recording statute) recorded the said false assignment in official county records.").

Defendant asserts that these three claims are all brought by Plaintiffs under § 1983. *See, e.g.*, *Response* [#138] at 4.   However, the Amended Complaint [#115] does not support this reading of Plaintiffs' claims.   In Count IV, Plaintiffs specify that their civil rights were violated pursuant to § 1983 due to Defendant's conduct. *Am. Compl.* [#115] ¶ 133. Counts II and III, on the other hand, merely assert that Rule 120 proceedings are

unconstitutional as written, without regard to Defendant's conduct except for the fact that Defendant used the Rule 120 procedure to initiate foreclosure proceedings. Plaintiffs do not state that these two counts are asserted under § 1983. In short, therefore, the Court construes Count II and Count III of Plaintiffs' Amended Complaint as seeking a declaratory judgment and injunctive relief in connection with the constitutionality of Colorado's Rule 120 foreclosure process, *id.* ¶¶ 129-30, and Count IV as asserting a § 1983 claim against Defendant, *id.* ¶¶ 131-32. *See Lewis v. JP Morgan Chase Bank, N.A.*, No. 13-cv-01375-PAB-KLM, 2014 WL 1217948, at *5 n.8 (D. Colo. Mar. 24, 2014) (noting the difference between raising the issue of the constitutionality of Colorado's foreclosure procedures through declaratory judgment versus through § 1983); *see also Am. Compl.* [#115] at 39 (seeking "[d]eclaratory and injunctive relief declaring Rule 120; Colo. Rev. Stat. § 38-38-100.3(10),(20) and Colo. Rev. Stat. § 38-38-101(i)(b)(II) unconstitutional").

### 2.    Count IV: § 1983

Defendant first argues that Plaintiffs' § 1983 claim fails because Plaintiffs have not alleged facts sufficient to demonstrate that Defendant was a state actor or otherwise acting under color of state law. *Motion* [#124] at 10-13. Persons and entities acting under color of state law can be held liable under § 1983 for depriving others of their constitutional rights. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). An action is taken under color of state law if (1) the "alleged constitutional deprivation is 'caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible,'" and (2) the "'party charged with the deprivation is a person who may fairly be said to be a state actor.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Lugar v. Edmondson Oil Co., Inc.*, 475 U.S.

922, 937 (1982)).

With regard to the first element of the test, Count IV asserts that Defendant misused Colorado's Rule 120 foreclosure procedure. *Am. Compl.* [#115] ¶¶ 131-33. Plaintiffs allege that Defendant used Rule 120 to initiate foreclosure proceedings with a false assignment of Plaintiffs' promissory note and deed of trust. However, a private entity's misuse of state laws is insufficient to satisfy this element. *Yanaki v. Iomed, Inc.*, 415 F.3d 1204, 1209 (10th Cir. 2005) (citing *Lugar*, 547 U.S. at 941). Thus, to the extent Plaintiffs are asserting in Count IV that Defendant misused state laws to foreclose on Plaintiffs' property, they have failed to demonstrate that they were deprived of a constitutional right by "the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible." *See Sullivan*, 526 U.S. at 50 (internal quotations omitted); *see also Pls.' Response* [#130] at 7 (stating that "Defendant cannot now reasonably argue that it is merely following state foreclosure laws" because it "use[d] a forged endorsement"). The Court therefore need not address whether Plaintiffs have sufficiently alleged the second element of this test.

Accordingly, the Court **recommends** that Plaintiffs' Count IV be **dismissed with prejudice**. *See Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (holding that prejudice should attach to a dismissal when plaintiffs have not made allegations "which, upon further investigation and development could raise substantial issues").

### 3.      Count III: Equal Protection

Plaintiffs assert that the Rule 120 foreclosure process violates the equal protection clause of the United States Constitution. *Am. Compl.* [#115] ¶ 130. They state that "Plaintiffs as Colorado citizens are not afforded the same protection under the law as are

other Colorado citizens whose loans were obtained from non-financial institution lenders," and that "[s]uch citizens can only undergo foreclosure proceedings under Rule 105 where no shift of burden of proof from the bank to the foreclosed upon party can take place." *Id.* In other words, Plaintiffs assert the unconstitutionality of a system that differentiates between Colorado citizens whose real estate purchase or refinance loans were obtained from financial institution lenders versus private non-financial institution lenders. *Id.*

Defendant and the Attorney General argue at length that Rule 120's procedures do not violate the equal protection clause. *Motion* [#124] at 16-17; *Brief* [#123] at 12-14. The *amici curiae* state that they leave the equal protection arguments to the parties, although they mention that "there is no rational basis for allowing foreclosures by private parties to proceed with statutorily created evidentiary fictions with substantial assistance from state officials, on the one hand, while requiring parties to produce their own actual evidence to support their claims in all other civil and criminal proceedings, on the other hand." *Amici Motion* [#132] at 5 n.2. This statement suggests that Rule 120 violates the equal protection clause by creating evidentiary short cuts that do not exist in other litigation. In their Response [#130], Plaintiffs, while adopting the arguments set forth in the *amici* briefs, do not themselves separately address the merits of whether Rule 120 violates the equal protection clause. Thus, the briefing before the Court in support of Plaintiffs' contention that the equal protection clause is violated by Rule 120's procedures is far from comprehensive.

"[T]he Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently from others." *McGowan v. Maryland*, 366 U.S. 420, 425 (1961). The United States Supreme Court has emphasized

that differential treatment among citizens "will offend the equal protection safeguard only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective, or if the objective itself is beyond the State's power to achieve." *Lindsey v. Normet*, 405 U.S. 56, 70 (1972) (internal quotation and citation omitted).[4]

In determining the standard under which an equal protection claim must be evaluated, the Court first determines whether the challenged law "intentionally discriminate[s] between groups of persons." *Washington v. Davis*, 426 U.S. 229, 240 (1976). Discriminatory intent requires more than an awareness that distinguishing between groups of citizens has particular consequences. *SECYS, LLC v. Vigil*, 666 F.3d 678, 685 (10th Cir. 2012) (citing *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)). Rather, discriminatory intent means that the differential treatment is because of, and not just in spite of, the differences among certain classes of persons. *SECYS, LLC*, 666 F.3d at 685 (citing *Vacco v. Quill*, 521 U.S. 783 (1997)). In other words, the law may recognize meaningful distinctions among citizens without violating the equal protection clause. *SECYS, LLC*, 666 F.3d at 686 (citing *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439-40 (1985)). Here, Plaintiffs do not allege that the equal protection clause is violated due to Rule 120's reliance on an impermissible classification such as race, gender, or religion. *SECYS, LLC*, 666 F.3d at 687. Thus, the Court determines whether the State's

---

[4] In *Lindsey v. Normet*, the United States Supreme Court rejected an equal protection challenge to Oregon's forcible entry and detainer statute. *See Attorney General's Brief* [#123] at 13-14 (discussing *Lindsey*, 405 U.S. at 70-74). The *Lindsey* Court found that the statute had potentially uniform application as to all tenants regardless of wealth or status and that it served the legitimate purpose of protecting "landlords from accruing economic loss and tenants from uncertainty and 'unmerited harassment and dispossession' during protracted litigation." *Id.* (citing *Lindsey*, 405 U.S. at 73).

decision to provide its citizens, i.e., lenders and borrowers, with the choice between quasi-judicial Rule 120 and judicial Rule 105 foreclosure methods meets the rational basis standard. *Id.* at 686-87. Under the rational basis standard, "[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan*, 366 U.S. at 426. Moreover, "state laws are generally entitled to a presumption of validity against attack under the Equal Protection Clause." *Parham v. Hughes*, 441 U.S. 347, 351 (1979).

Plaintiffs' assertion that the Rule 120 foreclosure process violates the equal protection clause is based on a misunderstanding of Colorado's rules governing foreclosures. Plaintiffs appear to assert that all mortgage loans originating with non-financial institution lenders *must* follow the Rule 105 foreclosure process and that all mortgage loans originating with financial institution lenders *must* follow the Rule 120 foreclosure process. However, even a cursory look at the statutes behind these rules demonstrates otherwise. *Any* lender with a loan secured by a deed of trust *may* use Colorado's Rule 120 quasi-judicial foreclosure process. Colo. Rev. Stat. § 38-38-101(1). In order to use the Rule 120 procedure, the deed of trust must be signed by the borrowers *and* contain a provision providing for the public trustee's power of sale by public auction. Colo. R. Civ. P. 120(a). Otherwise, lenders must follow the judicial foreclosure procedures under Colo. R. Civ. P. 105, which require the filing of a quiet title action. Thus, the premise underlying Plaintiffs' equal protection claim does not withstand scrutiny.

Plaintiffs have failed to allege in a nonconclusory manner that Colorado's Rule 120 quasi-judicial foreclosure process discriminates by creating impermissible classifications of the State's citizens. Indeed, the applicable foreclosure process in Colorado is

determined not by the type of lender or the kind of "citizen" borrower, but rather by the parties' agreement at the time of contract. More specifically, Rule 120 proceedings govern mortgages that include a public trustee's power of sale by public auction, to which the parties have agreed in the mortgage documents. Rule 105 proceedings govern mortgages that do not include the power of sale by a public trustee, hence the requirement that a judge "grant full and adequate relief so as to completely determine the controversy and enforce the rights of the parties" by quieting title to the property. *Keith v. Kinney*, 961 P.2d 516, 519 (Colo. App. 1997).

Not only do the foreclosure rules fail to impermissibly discriminate between types of borrowers and lenders, but there is also a rational basis for scheme created by the rules. In essence, Colorado's Rule 120 quasi-judicial foreclosure process sets forth a streamlined procedure for sale of mortgaged properties on default by the borrower, so long as the deed of trust is signed by the borrower and allows for sale of the property by the public trustee. When the mortgage documents contain no such agreement for sale of the property by the public trustee, a judge must determine who has title to the property under Rule 105. As the Attorney General states, the State's foreclosure rules "serve the legitimate purpose of providing a speedy and efficient resolution of possessory disputes between mortgagors and lenders." *Brief* [#123] at 14. Thus, the Court finds that Colorado's Rule 120 quasi-judicial foreclosure procedure does not violate the equal protection clause of the United States Constitution for any reason alleged by Plaintiffs.

Accordingly, the Court **recommends** that Plaintiffs' Count III be **dismissed with prejudice**. *See Reynoldson*, 907 F.2d at 127.

### 3.    Count II: Due Process

Plaintiffs assert that the Rule 120 quasi-judicial foreclosure process violates the due process clause of the United States Constitution, because the real-party-in-interest status of the lender is presumed, mortgagors must raise their defenses in a separate lawsuit under Rule 105, and the process is not subject to appellate review.[5]  *Am. Compl.* [#115] ¶ 129.

"While a property right can only be created by state law, once a property right is established, the determination of what process is due before that right can be deprived is a question answered by the federal Constitution."  *See, e.g.*, *Kingsford v. Salt Lake City Sch. Dist.*, 247 F.3d 1123, 1132 (10th Cir. 2001).  Precedent in this District makes clear that a judicial proceeding brought pursuant to and in accordance with Rule 120 which follows the dictates of the rule does not violate an individual's due process rights under the Fourteenth Amendment.  *See Lewis v. JP Morgan Chase Bank, Nat'l Assoc.*, No. 13-cv-01375-PAB-KLM, 2014 WL 1217948, at *10 n.5 (D. Colo. Mar. 24, 2014) (citing *Driskell v. Thompson*, 971 F. Supp. 2d 1050, 1070 (D. Colo. 2013); *Ramsey v. Citibank, N.A.*, No. 10-cv-02653-WYD-CBS, 2011 WL 4485918, at *4 (D. Colo. Sept. 28, 2011)).  "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their

---

[5]    The *Amici* parties and Plaintiffs present wide-ranging arguments regarding the constitutionality of Rule 120 and related foreclosure statutes in both the *Amici* brief here [#115] and in briefs in a similar case which the *Amici* parties incorporate by reference.  *See Brief* [#132] at 1-3 (citing its *amici curiae* brief in *Brumfiel v. U.S. Bank*, No. 12-cv-02716-WJM-MEH, Docket No. 134). However, the Court only addresses those arguments which dovetail with the narrow grounds asserted in Plaintiffs' Count II cause of action as outlined in the Amended Complaint [#115] ¶ 129.

objections.*" Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) ("An essential principle of due process is that a deprivation of . . . property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'"); *Wilkinson v. Austin*, 545 U.S. 209, 226 (2005) ("Our procedural due process cases have consistently observed that [notice and an opportunity to respond] are among the most important procedural mechanisms for purposes of avoiding erroneous deprivations.").

Plaintiffs do not allege that they failed to receive actual and timely notice of the Rule 120 proceedings. *See Ramsey*, 2011 WL 4485918, at *4. They do not allege that they were not afforded an opportunity to be heard. *See id.* In fact, there is every indication in the Amended Complaint that Plaintiffs were actively involved in the Rule 120 proceeding, although they appear to disagree with some of the judge's rulings. *See id.*; *see, e.g.*, *Am. Compl.* [#115] ¶ 111. Overall, Plaintiffs' allegations are somewhat inconsistent in that they primarily assert that Defendant misused the Rule 120 foreclosure procedure, but also assert in part that the Rule 120 foreclosure procedure itself is unconstitutional. However, as discussed below, the statements and arguments presented in Plaintiff's Amended Complaint, the *Amici* Motion, and the other briefs all compel the conclusion that, when properly applied, Rule 120's procedures do not violate the due process clause of the United States Constitution.

Regarding the real-party-in-interest burden, *see, e.g.*, *Am. Compl.* [#115] ¶ 111, Plaintiffs are correct that at the administrative, pre-hearing portion of the Rule 120 proceeding, the foreclosing entity need only file a verified motion specifying the default or other facts claimed by the moving party to justify invocation of the power of sale. Colo. R.

Civ. P. 120(a).  Regarding the hearing itself, the District Judge has stated:

> The scope of the inquiry in any Rule 120 hearing "shall not extend beyond the existence of a default or other circumstances authorizing, under the terms of the instrument described in the motion, exercise of a power of sale contained therein, and such other issues required by the Service Member Civil Relief Act." Colo. R. Civ. P. 120(d).  To determine whether there is a "reasonable probability" that the moving party is entitled to an order authoring the sale, the district court must consider "the evidence offered by the creditor seeking the order of sale [and] also [ ] any evidence offered by the debtor to controvert the moving party's evidence or to support" a debtor's legitimate defense to the order authorizing sale.  *Goodwin v. Dist. Court In & For the Sixteenth Judicial Dist.*, 779 P.2d 837, 842 (Colo. 1989); *see Premier Farm Credit, PCA v. W–Cattle, LLC*, 155 P.3d 504, 512 (Colo. App. 2006) (noting that a district court must consider "all relevant evidence" in a Rule 120 hearing).  For a moving party to show that it is entitled to initiate a public trustee foreclosure sale, it must provide evidence of default and establish that it is the real party that is entitled to enforce the power of sale contained in the deed of trust.  *Goodwin*, 779 P.2d at 843.  By contrast, a debtor objecting to the issuance of an order authorizing sale may present relevant evidence challenging whether the "moving parties are the real parties in interest and also [whether] the asserted defenses of waiver and estoppel" are applicable.  *Goodwin*, 779 P.2d at 844.

*May*, 2013 WL 4462033, at *6.  Plaintiffs assert that mortgagors carry the burden in a Rule 120 hearing regarding whether the foreclosing entity is the real party in interest.  Contrary to this assertion, the law in Colorado is otherwise.  "In *Goodwin*, the Colorado Supreme Court noted that, once a debtor raises the real party in interest defense in a Rule 120 proceeding, 'the burden should devolve upon the party seeking the order of sale to show that he or she is indeed the real party in interest.'" *Id.* at *6 n.5 (quoting *Goodwin*, 779 P.2d at 843).  In addition, *Goodwin* mandates that, although the burden of proving who is the real party in interest is on the party seeking foreclosure, the debtor has the option, but not the burden of proof, of presenting any relevant evidence demonstrating that the foreclosing party is not the real party in interest.  Thus, Plaintiffs have failed to demonstrate that this

-14-

aspect of a Rule 120 proceeding violates the due process clause of the United States Constitution.   Further, to the extent the parties argue that in a Rule 105 collateral proceeding this burden may be reversed, the Court notes that the constitutionality of that proceeding is not before the Court.  *See Am. Compl.* [#115] ¶ 129; *Amici Motion* [#132] at 12-14; *May*, 2013 WL 4462033, at *6, n.5.

Plaintiffs also assert the unconstitutionality of the Rule 120 proceeding based on the need to file a collateral action to raise other issues and on the nonappealability of the Rule 120 hearing.  *See Am. Compl.* [#115] ¶ 112.  In connection with these issues, the District Judge has stated:

> Although neither the grant nor denial of a motion under Rule 120 is directly appealable, it is "without prejudice to the right of any person aggrieved to seek injunctive or other relief in any court of competent jurisdiction."  Colo. R. Civ. P. 120(d).  Because the scope of the inquiry in a Rule 120 proceeding is limited to the existence of a default or other circumstances authorizing the sale, a collateral action is usually necessary to resolve remaining outstanding issues. Colo. R. Civ. P. 120(d); *Ragsdale Bros. Roofing, Inc. v. United Bank of Denver N.A.*, 744 P.2d 750, 754 (Colo. App. 1987).  In a collateral attack, debtors "may then present evidence showing a likelihood of success on the merits of their defenses in support of injunctive relief" from the order authorizing the sale. [*Plymouth Capital Co., Inc. v. Dist. Ct. of Elbert Cnty.*, 955 P.2d 1014, 1017 (Colo. 1998)].

*May*, 2013 WL 4462033, at *6.  Plaintiffs do not provide any cognizable argument regarding precisely how this inhibits their due process rights.  *See Wilkinson*, 545 U.S. at 225-26. The Rule 120 procedure is intended to be a speedy, efficient procedure to allow creditors to foreclose in a public-trustee sale, but the procedure also protects debtors by allowing them to raise certain issues in the Rule 120 proceeding and all other issues in a collateral Rule 105 hearing, should debtors so choose.  *See Plymouth Capital Co.*, 955 P.2d at 1015,

1017.  Although Plaintiffs characterize this as "improperly shifting the burden of proof from the bank to the Plaintiffs," *Am. Compl.* [#115] ¶ 129, in reality, these statutes give control to Plaintiffs to choose the depth and breadth of hearings before any final decision is made regarding foreclosure on their property.  Thus, Plaintiffs have failed to demonstrate that these aspects of a Rule 120 proceeding violate the due process clause of the United States Constitution.

Accordingly, the Court **recommends** that Plaintiffs' Count II be **dismissed with prejudice**.  *See Reynoldson*, 907 F.2d at 127.

## B.    Count I: State Law Claim

Plaintiffs also assert a violation of the CFDCPA.  *Am. Compl.* [#115] ¶¶ 127-28. Colo. Rev. Stat. § 12-14-108(1) prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt . . . ."  The statute then lists many examples of such conduct, although Plaintiffs do not specify whether Defendant's alleged actions fall within any of these categories.[6]

---

[6]  The examples listed in Colo. Rev. Stat. § 12-14-108(1) are as follows:

(a) The collection of any amount, including any interest, fee, charge, or expense incidental to the principal obligation, unless such amount is expressly authorized by the agreement creating the debt or permitted by law;

(b) The acceptance by a debt collector or collection agency from any person of a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's or collection agency's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit;

(c) The solicitation by a debt collector or collection agency of any postdated check or other postdated payment instrument for the purpose of threatening or instituting criminal prosecution;

Plaintiffs allege that the endorsement on the promissory note at issue in this case was forged. *Am. Compl.* [#115] ¶¶ 78, 127.  In a previous Order in this matter, the District Judge noted that Defendants' argument on Plaintiffs' Motion to Amend [#96] regarding the futility of asserting a claim for violation of the CFDCPA "focus[ed] . . . [on] plaintiffs' allegations regarding the validity of the assignment" and not on "plaintiffs' allegations that the endorsement was forged." *Order* [#108] at 10-11.  The present Motion remedies this

---

(d) Depositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument;

(e) Causing charges to be made to any person for communications by concealment of the true purpose of the communication. Such charges include, but are not limited to, collect telephone calls and telegram fees.

(f) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if:

(I) There is no present right to possession of the property claimed as collateral through an enforceable security interest;

(II) There is no present intention to take possession of the property; or

(III) The property is exempt by law from such dispossession or disablement;

(g) Communicating with a consumer regarding a debt by postcard;

(h) Using any language or symbol, other than the debt collector's or collection agency's address, on any envelope when communicating with a consumer by use of the mails or by telegram; except that a debt collector or collection agency may use his business name if such name does not indicate that he is in the debt collection business;

(i) Failing to comply with the provisions of section 13-21-109, C.R.S., regarding the collection of checks, drafts, or orders not paid upon presentment;

(j) Communicating credit information to a consumer reporting agency earlier than thirty days after the initial notice to the consumer has been mailed, unless the consumer's last-known address is known to be invalid. This paragraph (j) shall not apply to checks, negotiable instruments, or credit card drafts.

issue by focusing on whether Plaintiffs have properly alleged that the endorsement was forged.

Although Plaintiffs have alleged that the endorsement was forged, the crux of this issue is whether Plaintiffs have properly alleged Defendant's involvement in the forgery and whether such involvement, if any, constitutes an unfair or unconscionable means to collect or attempt to collect Plaintiffs' debt. An allegation that an endorsement of a mortgage-related document, such as an assignment of a promissory note, is forged or otherwise fraudulent must not only meet the pleading standard of Fed. R. Civ. P. 8(a)(2) as set by *Iqbal*, but it must also meet the heightened pleading standard of Fed. R. Civ. P. 9(b). *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521-22 (10th Cir. 2013). Pursuant to Fed. R. Civ. P. 9(b), "the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." To comply with this rule, the Amended Complaint must "set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006) (internal quotation marks omitted). "The purpose of Rule 9(b) is to afford defendant fair notice of plaintiff's claims and the factual ground upon which [they] are based." *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997) (internal quotations omitted) (citations omitted). "The requirements of Rule 9(b) must be read in conjunction with the principles of Rule 8, which calls for pleadings to be simple, concise, direct, and to be construed as to do substantial justice." *Id.* (citing Fed. R. Civ. P. 8(e)) (internal quotation

marks omitted).

The Court finds that Plaintiffs' Amended Complaint provides adequate allegations to meet the requirements of Fed. R. Civ. P. 9(b). *See, e.g.*, *McDaniel v. Denver Lending Grp., Inc.*, No. 08-cv-02617-PAB-KLM, 2009 WL 1873581, at *6 (D. Colo. June 30, 2009). Plaintiffs believe that Defendant forged the signature on the promissory note used to instigate the foreclosure on their property. Plaintiffs allege that Defendant "fabricat[ed] the false assignment; engag[ed] in forgery and record[ed] in official county records . . . the fabricated and otherwise forged document." [#115] ¶ 127. They further allege that: (1) Erla Carter Shaw ("Shaw"), the person whose name appears to endorse Plaintiffs' promissory note, does not exist; (2) Ms. Shaw is not a corporate officer of Taylor Bean and Whitaker Mortage Corporation ("TBW"), with whom Plaintiffs originally refinanced their property; (3) the abbreviation "EVP", written as part of the endorsement, is not a corporate officer designation of TBW; (4) the fabricated Ms. Shaw was not authorized to endorse Plaintiffs' promissory note; (5) Ms. Shaw's facsimile signature was not authorized by anyone at TBW; and (6) a real person with Ms. Shaw's name did not sign Plaintiffs' promissory note. *Am. Compl.* [#115] ¶¶ 78, 127. In short, therefore, Plaintiffs allege that one of Defendant's employees forged an endorsement using Ms. Shaw's name on the promissory note pertaining to Plaintiffs' property some time prior to Defendant's recording of the document in county records, thus creating the appearance that Defendant was entitled to foreclose on Plaintiff's property. The Court finds these allegations sufficient to state a claim that Defendant used "unfair or unconscionable means to collect or attempt to collect any debt."

Colo. Rev. Stat. § 12-14-108(1).

Defendant argues in part that, even were the endorsement forged, Defendant still had the right to foreclose on the property. *Motion* [#124] at 7-9; *Reply* [#137] at 4-6. However, this misses the point of a claim under the CFDCPA. A CFDCPA claim is not about whether Defendant had the legal right to initiate foreclosure proceedings or its ultimate entitlement to possess Plaintiff's property. Rather, a CFDCPA claim revolves around the means used by Defendant to obtain that foreclosure, i.e., whether such means were unfair or unconscionable. *See, e.g.*, *Peterson-Hooks v. First Integral Recovery, LLC*, No. 12-cv-01019-PAB-BNB, 2013 WL 2295449, at *5 (D. Colo. May 24, 2013). In other words, Defendant could have the right to initiate foreclosure proceedings but could go about pursuing that right in an unfair or unconscionable manner, as prohibited by the CFDCPA. Although Defendant's ultimate right to foreclose *may* impact the amount of damages, it does not affect whether Plaintiffs have a claim under this statute. Thus, Defendant's argument on this point fails.

Finally, the Court notes that Defendant only moves to dismiss the portion of Plaintiffs' CFDCPA claim that falls under Colo. Rev. Stat. § 12-14-108(1). *See Motion* [#124] at 5-9; *Reply* [#137] at 2-6. Defendant does not address the portion of Plaintiffs' CFDCPA claim that falls under Colo. Rev. Stat. § 12-14-107. The District Judge has already determined that "Plaintiffs' allegation that defendant forged the blank endorsement on plaintiffs' promissory note is sufficient to state a claim for relief under the CFDCPA." *Order* [#108] at 10-11 (citing to Colo. Rev. Stat. § 12-14-107(1)) (stating that the CFDCPA

prohibits debt collectors from using "false, deceptive, or misleading representation(s) or means in connection with the collection of any debt); *see also Am. Compl.* [#115] ¶¶ 78, 127. Accordingly, this portion of Plaintiffs' CFDCPA claim also survives.

Accordingly, the Court **recommends** that the Motion be **denied** with respect to Plaintiffs' Claim I for violation of the CFDCPA.

## IV. Conclusion

Thus, based on the foregoing,

IT IS HEREBY **RECOMMENDED** that the Motion [#124] be **DENIED in part and GRANTED in part**, as set forth above.[7]

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147–48 (1985), and also waives appellate review of both factual and legal questions, *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review. *United States v. One Parcel of Real Prop.*, 73

---

[7] Although the Court recommends that all federal claims be dismissed, subject matter jurisdiction is retained over the CFDCPA claim based on diversity jurisdiction. *See Order* [#26] at 11.

F.3d 1057, 1060 (10th Cir. 1996).

Dated:  July 2, 2014

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge