IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-00190-PAB-KLM

JOHN M. MBAKU,
LUVIBIDILA JOLIE LUMUENEMO,

      Plaintiffs,

v.

BANK OF AMERICA, NATIONAL ASSOCIATION,
as successor by merger to BAC Home Loans Servicing, LP
f/k/a Countrywide Home Loans Servicing LP,

      Defendant.

_____

**ORDER**
_____

This matter is before the Court on Plaintiffs' Motion to Reconsider Pursuant to Fed. Civ. P. 60(b)(6) and (d) [Docket No. 114] filed by plaintiffs John M. Mbaku and Luvibidila Jolie Lumuenemo and Plaintiffs' Second Motion to Reconsider Pursuant to Fed. Civ. P. 60(b)(6) and (d) [Docket No. 120].

**I. PROCEDURAL HISTORY**

The relevant facts are set forth in the Recommendation of United States Magistrate Judge [Docket No. 81] and will not be recited here. On February 1, 2013, the Court dismissed *inter alia* plaintiffs' claims for relief under the Federal Fair Debt Collection Practices Act ("FDCPA"), *see* 15 U.S.C. § 1692 (2012). Docket No. 26 at 2-8. On May 24, 2013, plaintiffs moved for leave to file an amended complaint, asserting claims for fraud, violation of the Colorado Consumer Protection Act, violation of the Colorado Fair Debt Collection Practices Act ("CFDCPA"), violation of Colo. Rev. Stat.

§ 38-35-109(3), negligence, negligence per se, intentional infliction of emotional distress, violation of the due process clause of the United States Constitution, and violation of the equal protection clause of the United States Constitution.  Docket No. 39-1 at 35-45.  On January 10, 2014, the Court granted plaintiffs' motion to amend with respect to their claims under the CFDCPA and the U.S. Constitution.  Docket No. 108.

On January 16, 2014 plaintiffs filed a motion for reconsideration of the Court's February 1, 2013, Order, requesting leave to amend their complaint to add a claim under the Federal FDCPA.  Docket No. 114.  On February 3, 2014, plaintiffs filed a motion for reconsideration of the Court's January 10, 2014 Order, requesting leave to amend their complaint to add a claim under Colo. Rev. Stat. § 38-35-109(3).  Docket No. 120.  Defendant opposes plaintiffs' motions for reconsideration.  Docket No. 131.

## II.  STANDARD OF REVIEW

Rule 60(b) relief is "extraordinary and may only be granted in exceptional circumstances."  *The Servants of the Paraclete v. John Does*, 204 F.3d 1005, 1009 (10th Cir. 2000).  Parties seeking relief under Rule 60(b) have a higher hurdle to overcome because such a motion is not a substitute for an appeal, *Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281, 1289 (10th Cir. 2005), but instead a "grand reservoir of equitable power to do justice in a particular case."  *Pierce v. Cook & Co., Inc.*, 518 F.2d 720, 722 (10th Cir. 1975) (en banc) (citation omitted).

Under Rule 60(b)(6), the Court may relieve a party or its legal representative from a final judgment for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  Relief under Rule 60(b)(6) is appropriate when circumstances are so "unusual or

2

compelling" that extraordinary relief is warranted or when it "offends justice" to deny

such relief. *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 580 (10th Cir. 1996).  Courts

have granted relief under Rule 60(b)(6) "when, after entry of judgment, events not

contemplated by the moving party render enforcement of the judgment inequitable,"

where a party is indigent or when it offends justice to deny such relief.  *Id.* at 579; *Yapp*

*v. Excel Corp.*, 186 F.3d 1222, 1231-32 (10th Cir. 1999).

Rule 60(d) states that Rule 60 does not: "limit a court's power to: (1) entertain an

independent action to relieve a party from a judgment, order, or proceeding; (2) grant

relief under 28 U.S.C. § 1655 to a defendant who was not personally notified of the

action; or (3) set aside a judgment for fraud on the court."

Rule 15(a) of the Federal Rules of Civil Procedure instructs courts to "freely give

leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a).  Nevertheless,

denying leave to amend is justified if the proposed amendments are unduly delayed,

unduly prejudicial, futile, or sought in bad faith.  *Foman v. Davis*, 371 U.S. 178, 182

(1962); *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).  As a general rule,

the Court retains the discretion to permit such amendments.  *Minter v. Prime Equip.*

*Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006).

## III.  ANALYSIS

### A.  Spurious Liens

Plaintiffs argue that the Court erred in denying them leave to amend their

complaint to add a claim under § 38-35-109(3) because the documents they wish to

challenge (namely, the Notices of Election and Demand filed by defendant and the April

3

28, 2011 assignment purporting to transfer plaintiffs' promissory note and deed of trust

from Mortgage Electronic Registration Systems to BAC Home Loans Servicing, L.P.)

are spurious documents within the meaning of § 38-35-201(3).  Docket No. 120; *see*

*also* Docket No. 52-3.

> Colo. Rev. Stat. § 38-35-109(3) provides that:
>
> Any person who offers to have recorded or filed in the office of the county clerk and recorder any document purporting to convey, encumber, create a lien against, or otherwise affect the title to real property, knowing or having a reason to know that such document is forged or groundless, contains a material misstatement or false claim, or is otherwise invalid, shall be liable to the owner of such real property for the sum of not less than one thousand dollars or for actual damages caused thereby, whichever is greater, together with reasonable attorney fees.  Any grantee or other person purportedly benefited by a recorded document that purports to convey, encumber, create a lien against, or otherwise affect the title to real property and is forged or groundless, contains a material misstatement or false claim, or is otherwise invalid who willfully refuses to release such document of record upon request of the owner of the real property affected shall be liable to such owner for the damages and attorney fees provided for in this subsection (3).

This provision prohibits two types of conduct: (1) filing a "document that meets the

statutory or common-law requirements necessary to create a lien, but which is 'forged

or groundless, contains a material misstatement or false claim, or is otherwise invalid'";

and (2) filing a "document which does not comply with the statutory or common-law

requirements necessary to create a lien, knowing or having reason to know that the

document was unfounded" where the document "'purports' to create a lien against real

property in the sense that the filing party intended that the document act as a lien and

cloud title to real property."  *People v. Forgey*, 770 P.2d 781, 784 (Colo. 1989).

> Colo. Rev. Stat. § 38-35-204 provides that:
>
> Any person whose real or personal property is affected by a recorded or filed lien or document that the person believes is a spurious lien or spurious

4

document may petition the district court in the county or city and county in which the lien or document was recorded or filed or the federal district court in Colorado for an order to show cause why the lien or document should not be declared invalid.

A "spurious document" is "any document that is forged or groundless, contains a material misstatement or false claim, or is otherwise patently invalid." Colo. Rev. Stat. § 38-35-201(3); *see also Westar Holdings P'ship v. Reece*, 991 P.2d 328, 330 (Colo. App. 1999) ("a 'groundless document' [is] one for which a proponent can advance no rational argument based on evidence or the law to support the claim of a lien") (citing *Harris v. Hanson*, 821 P.2d 821, 824 (Colo. App. 1991)).

Under Colorado law, a notice of lis pendens provides "notice to any person thereafter acquiring, by, through, or under any party named in such notice, an interest in the real property described in the notice in the county or counties where recorded that the interest so acquired may be affected by the action described in the notice." Colo. Rev. Stat. § 38-35-110(1). "[A]nyone acquiring an interest in the property during the pendency of the litigation will be bound by its outcome so long as a notice of lis pendens has been recorded in the office of the county clerk and recorder where the property is located in accordance with section 38-35-110." *Kerns v. Kerns*, 53 P.3d 1157, 1161 (Colo. 2002).

A notice of lis pendens may be a spurious document within the meaning of § 38-35-201(3). *Pierce v. Francis*, 194 P.3d 505 (Colo. App. 2008) ("[a] notice of lis pendens is subject to analysis as a spurious document") (citing § 38-35-201(3)). Courts have also analyzed notices of lis pendens within the framework of § 38-35-109(3). *See Leoff v. S and J Land Co.*, 503 F. App'x 630, 638 (10th Cir. 2012) ("the [district] court ruled

that the notice of lis pendens was improper and gave rise to statutory liability under Colo. Rev. Stat. § 38-35-109").

"[P]rior to a foreclosure sale, an owner of real property holds all incidents of ownership in the Property." *In re Vitt*, 250 B.R. 711, 717 (Bankr. D. Colo. 2000) (citing *In re Christian*, 48 B.R. 833, 835 (Bankr. D. Colo. 1985)).  "Upon a foreclosure sale, the owner retains title to the property, right to possession of the premises, and the statutory right to redeem," until the redemption period expires. *Id*. (citation omitted).

Plaintiffs' argument conflates § 38-35-109(3) with § 38-35-204.  Section 38-35-109(3) creates a particular remedy–"not less than one thousand dollars or [] actual damages . . ., whichever is greater, together with reasonable attorney fees"–for filing or refusing to release a document "purporting to convey, encumber, create a lien against, or otherwise affect the title to real property."  In contrast, § 38-35-204(1) allows a property owner to petition a district court for an order to show cause as to why a particular lien or other allegedly spurious document should not be declared invalid.  Under § 38-35-204, a petitioner may recover only costs and attorney's fees, in addition to having the lien or document declared invalid. *Id*. at § 38-35-204(2).

Plaintiffs' proposed second amended complaint asserts the following claim:

## COUNT VII.

### Violation of Colo. Rev. Stat. § 38-35-109(3)

### (Spurious Lien)

150.   . . . By filing and recording the false assignment purporting to transfer Plaintiffs' promissory note and deed of trust, and by causing the filing of a notice of election and demand based in part or whole thereon, the Defendant violated the spurious lien statute by "purporting to

convey, encumber, create a lien and otherwise affected [sic] the title" of the Plaintiffs' property. The Defendant knew and/or had reason to know that the false assignment was forged and groundless, and contained a material misstatement and false claim, or was otherwise invalid as no purchase transaction ever took place between [Mortgage Electronic Registration Systems] and the Defendant and no consideration was ever paid.

Docket No. 39-1 at 42-43, ¶ 150. In this motion, plaintiffs do not reference or seek relief under § 38-35-204. Rather, the motion specifically incorporates the language of § 38-35-109(3) and alleges that the challenged documents affect plaintiffs' title. Docket No. 39-1 at 43. As the Court explained in its January 10, 2014 Order, Docket No. 108 at 2-3, the challenged documents are not liens and do not affect plaintiffs' title, which was encumbered by their deed of trust before either of the challenged documents was recorded. *See In re Vitt*, 250 B.R. at 717; *see also* Colo. Rev. Stat. § 38-39-204 (if "there shall be filed in the office of the country clerk and recorder of the proper county . . . a notice of election and demand for sale, the lien created by [a deed of trust] shall continue until final disposition of the action or foreclosure proceeding"); *Bayou Land Co. v. Talley*, 924 P.2d 136, 152 (Colo. 1996) ("When a seller transfers real property that is encumbered by a deed of trust, the buyer may either take the property subject to the encumbrance or assume the obligation secured by the encumbrance itself."). The challenged documents neither meet the "statutory or common-law requirements necessary to create a lien" nor purport to create a lien. *See Forgey*, 770 P.2d at 784.

The cases plaintiffs cite are inapposite because a notice of lis pendens, unlike an assignment of a deed of trust to a third party or a Notice of Election and Demand, can in fact alter a party's title. *See Leoff*, 503 F. App'x at 637 ("'[T]he only prerequisite imposed on the action to which the notice of lis pendens pertains is that it be one

affecting title to real property.'") (quoting *Kerns*, 53 P.3d at 1161).  Absent the filing of a

lis pendens, a person acquiring an interest in property that is subject to pending

litigation might not be bound by the outcome of that litigation.  The filing of a lis pendens

thus restricts an owner's ability to transfer property free and clear of pending litigation.

*See Kerns*, 53 P.3d at 1161 ("a claimant must record a notice of lis pendens if he

wishes to preserve his contingent interest against those who purchase or encumber the

property while the lawsuit is pending").  In contrast, property transferred pursuant to a

deed of trust will remain subject to the deed of trust, regardless of whether an

assignment or a Notice of Election and Demand has been recorded.  *See Bayou Land

Co.*, 924 P.2d at 152.

 Plaintiffs' proposed amended complaint does not state a claim for relief under

§ 38-35-109(3) and plaintiffs do not address § 38-35-204 in their motion for leave to

amend.[1]  However, even if plaintiffs had invoked § 38-35-204, granting leave to amend

to add this claim would be futile.

 A party may only seek relief under § 38-35-204(1) against "any person who

recorded or filed" the document."  Colo. Rev. Stat. § 38-35-204(1)(a).

 With respect to the assignment, plaintiffs allege that it was recorded by

defendant's "own employee, Mercedes Judilla; acting as a MERS signing officer."

Docket No. 39-1 at 4-5, ¶¶ 12, 15.  Plaintiffs allege that, "at the behest" of defendant,

Ms. Judilla "fabricated and recorded the false assignment in order to give legitimacy to

the foreclosure proceedings against the Plaintiffs."  *Id*. at 4-5, ¶ 12.  Plaintiffs further

---

[1]The Court notes that, in any event, a party must file a motion for an order to
show cause in order to obtain relief under § 38-35-204(1).

allege that "MERS did not and could not have created/fabricated or recorded the assignment because internal MERS documents submitted to this Court for judicial notice clearly state that MERS does not exist for the purpose of creating or transferring beneficial rights, title and interest in real property." *Id*. at 5, ¶ 14.

Plaintiffs' statements regarding MERS' ability to record an assignment are "legal conclusion[s] couched as [] factual allegation[s]." *See Cunningham v. Bank of Am., N.A.*, No. 12-cv-03316-MSK-GPG, 2013 WL 2455945, at *4 (D. Colo. June 6, 2013); *see also id*. at *3 ("MERS is acting as nominee for the lender and the lender's successors and assigns.  []  Nothing in the Deed prohibits MERS from assigning as MERS sees fit.").

"MERS is a private electronic database, operated by MERSCORP, Inc., that tracks the transfer of the 'beneficial interest' in home loans, as well as any changes in loan servicers." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1038 (9th Cir. 2011).  "MERS was designed to avoid the need to record multiple transfers of the deed by serving as the nominal record holder of the deed on behalf of the original lender and any subsequent lender." *Id*. at 1039.  When a loan is originated, "MERS is designated in the deed of trust as a nominee for the lender . . ., which holds legal title to the security interest conveyed." *Id*.  If the lender conveys the beneficial interest in the loan to another MERS member, "the change is recorded only in the MERS database," but if the beneficial interest is sold to a non-MERS member, "the transfer of the deed from MERS to the new lender is recorded in county records." *Id*.  In the event of a transfer to a non-MERS member, "MERS does not draft or execute the paperwork on

behalf of its members," but instead "instructs [them] to have someone on their own staff become a certified MERS officer with authority to sign on behalf of MERS." *Jackson v. Mortgage Electronic Registration Systems, Inc.*, 770 N.W.2d 487, 491 (Minn. 2009).

Plaintiffs argue that the challenged assignment was effectively recorded by defendant and thus that defendant may be made to show cause pursuant to § 38-35-204(1). Docket No. 136 at 3. There is no legal basis for this conclusion. MERS is a corporate entity distinct from defendant, *see Commonwealth Property Advocates, LLC v. Mortgage Electronic Registration Systems, Inc.*, 680 F.3d 1194, 1197 n.1 (10th Cir. 2011); *Cervantes*, 656 F.3d at 1038, and MERS' officers act on behalf of MERS, even if they are also employed by member entities. *See Jackson*, 770 N.W.2d at 490. As plaintiffs allege that the assignment was recorded by Ms. Judilla "acting as a MERS signing officer," Docket No. 39-1 at 5, ¶ 15, plaintiffs cannot maintain a claim under § 38-35-204(1) against defendant.

With respect to the Notices of Election and Demand, plaintiffs allege that "[b]y filing and recording the false assignment purporting to transfer Plaintiffs' promissory note and deed of trust, and by causing the filing of a notice of election and demand based in part or whole thereon, the Defendant violated the spurious lien statute." Docket No. 39-1 at 43, ¶ 150. In their motion for reconsideration, plaintiffs argue that the notices are spurious because defendant "is not the holder of Plaintiffs' promissory note as the appellate Court draws no distinction between an owner and holder/qualified holder." Docket No. 120 at 4 (citing *In re Miller*, 666 F.3d 1255, 1263-64 (10th Cir. 2012)). Plaintiffs further argue that "their loan is covered by insurance, and as such is

10

not in default because of said insurance proceeds." Docket No. 136 at 6. All three of these arguments fail as a matter of law.

Defendant did not need to record an assignment of plaintiffs' promissory note or deed of trust in order to establish standing to foreclose under Colo. Rev. Stat. § 38-38-101. As plaintiffs point out, standing to foreclose can be established by filing a (1) "copy of the evidence of debt and a certification signed and properly acknowledged by a holder of an evidence of debt . . . certifying or stating that the copy of the evidence of debt is true and correct"; (2) "[c]opies of the recorded deed of trust"; and (3) a "signed statement by the attorney for [a holder of an evidence of debt], citing the paragraph of section 38-38-100.3(20) under which the holder claims to be a qualified holder and certifying or stating that the copies of the recorded deed of trust . . . are true and correct." Colo. Rev. Stat. § 38-38-101(1)-(2); *see* Docket No. 136 at 5. A party in possession of evidence of debt endorsed in blank does not need an assignment in order to execute or enforce it. Colo. Rev. Stat. § 38-38-100.3(10)(c). This statutory scheme is the "very basis of the challenge Plaintiffs bring with the present lawsuit." Docket No. 136 at 5. Accordingly, the Notices of Election and Demand were not based "in part or [in] whole" on the assignment, *see* Docket No. 39-1 at 43, ¶ 150, and plaintiffs' allegations, taken as true, do not undermine the validity of the Notices.

*In re Miller*, which held that physical possession of a promissory note endorsed in blank is sufficient on its own to establish a right to payment and standing to foreclose, is not to the contrary. 666 F.3d at 1263 ("When indorsed in blank, an instrument becomes payable to bearer and may be *negotiated by transfer of possession* alone.") (emphasis in original) (quoting Colo. Rev. Stat. § 4-3-205(b)). This case does not

11

support plaintiffs' argument that defendant "has no right to payment but is a mere conduit for payments as a purported servicer."  Docket No. 120 at 4.

Finally, plaintiffs allege that their loan was insured by the Government National Mortgage Association ("Ginnie Mae") and that Ginnie Mae paid the investors in full. Docket No. 120 at 4-5; Docket No. 136 at 6.  Based on these allegations, plaintiffs argue that Ginnie Mae has satisfied plaintiffs' obligation on the loan.  *Id*.  This argument has been rejected by a number of courts, and the Court rejects it here.  *See Rosas v. Carnegie Mortgage, LLC*, 2012 WL 1865480, at *8 (C.D. Cal. May 21, 2012) ("plaintiffs' theory that lenders that received funds through loan securitizations or credit default swaps must waive their borrowers' obligations fails as a matter of law"); *Dyson Fourness v. Mortgage Electronic Registration System, Inc.*, 2010 WL 5071049, at *2 (D. Nev. Dec. 6, 2010) ("Plaintiffs' theory, that the federal bailout funds somehow extinguished their mortgage obligation, is simply untenable."); *Flores v. Deutsche Bank Nat'l Trust Co.*, 2010 WL 2719849, at *5 (D. Md. July 7, 2010) ("although Plaintiff's default may have triggered insurance for any losses caused by that default, she is not discharged from the promissory notes themselves"); *Taylor v. CitiMortgage, Inc.*, 2010 WL 4683881, at *3 (D. Utah Nov. 10, 2010) ("there is no legal authority that the sale or pooling of investment interests in an underlying note can relieve borrowers of their mortgage obligations or extinguish a secured party's right to foreclose on secured property") (internal citation and alteration omitted).  Even if Ginnie Mae has made some or all of the payments due to the investors who purchased interests in a trust containing plaintiffs' loan, those payments did not extinguish plaintiffs' obligations to make

payments on their loan.

Since it would be futile for plaintiffs to amend their complaint to assert a claim under § 38-35-204(1), the Court did not err in denying them leave to do so.  *See Foman*, 371 U.S. at 182.  Plaintiffs have not established any other basis for obtaining relief under Rules 60(b)(6) or 60(d).[2]

## B.  Federal Fair Debt Collection Practices Act

Plaintiffs request that the Court grant them leave to amend their complaint to add a claim under the FDCPA because the Court granted plaintiffs leave to add a claim pursuant under the CFDCPA, which "is patterned on the federal law."  Docket No. 114 at 1-2.

In their initial complaint, plaintiffs alleged parallel claims for relief (i.e., claims based on the same set of alleged facts) under the FDCPA and CFDCPA and the Court analyzed those claims together.  Docket No. 1 at 25, ¶¶ 167-76; Docket No. 26 at 2 n.1. In their second motion for leave to file an amended complaint, plaintiffs sought leave to add a claim under the CFDCPA, but not under the FDCPA.  Docket No. 39-1 at 42. Plaintiffs do not argue that the Court erred or that plaintiffs' deliberate decision not to seek leave to add an FDCPA claim was the product of mistake, excusable neglect, newly discovered evidence, fraud, or any other basis for relief under Rule 60.  *See* Docket No. 114; Fed. R. Civ. P. 60(b)(1)-(6); *Cashner*, 98 F.3d at 580 ("The broad power granted by clause (6) is not for the purpose of relieving a party from free,

---

[2]Plaintiffs appear to argue that they are entitled to relief under Rule 60(b)(6) on the basis that the Court erred; they do not address the standards for obtaining relief under Rule 60(d).

calculated and deliberate choices he has made.  A party remains under a duty to take legal steps to protect his own interests.") (quoting 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2864, p.359 (3d ed.)).  As a result, plaintiffs' motion to reconsider to allow them to file a federal Fair Debt Collection Practices Act claim is denied.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiffs' Motion to Reconsider Pursuant to Fed. Civ. P. 60(b)(6) and (d) [Docket No. 114] filed by plaintiffs John M. Mbaku and Luvibidila Jolie Lumuenemo is DENIED.  It is further

**ORDERED** that Plaintiffs' Second Motion to Reconsider Pursuant to Fed. Civ. P. 60(b)(6) and (d) [Docket No. 120] is DENIED.

DATED August 11, 2014.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge