IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-00190-PAB-KLM

JOHN M. MBAKU,
LUVIBIDILA JOLIE LUMUENEMO,

      Plaintiffs,

v.

BANK OF AMERICA, NATIONAL ASSOCIATION,
as successor by merger to BAC Home Loans Servicing, LP
f/k/a Countrywide Home Loans Servicing LP,

      Defendant.

_____

## ORDER

_____

     This matter is before the Court on the Recommendation of United States

Magistrate Judge Kristen L. Mix (the "Recommendation") filed on July 2, 2014 [Docket

No. 141].  The magistrate judge recommends that the Court grant in part and deny in

part the Motion to Dismiss Plaintiffs' First Amended Complaint [Docket No. 124] filed by

defendant Bank of America, National Association ("BANA") pursuant to Federal Rule of

Civil Procedure 12(b)(6).  Specifically, the magistrate judge recommends that the Court

dismiss the federal claims plaintiffs assert in Counts II through IV of their amended

complaint,[1] Docket No. 115 at 36-38, and deny defendant's motion to dismiss with

respect to plaintiffs' claim under the Colorado Fair Debt Collection Practices Act

("CFDCPA").  Docket No. 141.  Plaintiffs John M. Mbaku and Luvibidila Jolie

_____

    [1]Although plaintiffs titled this document "Second Amended Complaint for
Declaratory and Injunctive Relief," Docket No. 115, they have not previously amended
their complaint and thus the Court refers to this document as the amended complaint.

Lumuenemo filed a timely objection [Docket No. 143] to the Recommendation, as did

BANA [Docket No. 147].

The Court will "determine de novo any part of the magistrate judge's disposition

that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  In the absence of a

proper objection, the Court may review a magistrate judge's recommendation under any

standard it deems appropriate.  *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir.

1991); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("[i]t does not appear that

Congress intended to require district court review of a magistrate's factual or legal

conclusions, under a de novo or any other standard, when neither party objects to those

findings").  An objection is proper if it is specific enough to enable the Court "to focus

attention on those issues–factual and legal–that are at the heart of the parties' dispute."

*United States v. 2121 East 30th Street*, 73 F.3d 1057, 1059 (10th Cir. 1996). In light of

plaintiffs' pro se status, the Court construes their filings liberally.  *See Haines v. Kerner*,

404 U.S. 519, 520 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991).

## I.  BACKGROUND

The amended complaint sets forth the following allegations relevant to plaintiffs'

claims.  For the purpose of ruling on BANA's Rule 12(b)(6) motion to dismiss, the Court

accepts plaintiffs' non-conclusory allegations as true.  *See Alvarado v. KOB-TV, LLC*,

493 F.3d 1210, 1215 (10th Cir. 2007).

Plaintiffs are individuals who reside at 1177 South Alton Street in Denver,

Colorado.  Docket No. 115 at 6, ¶ 19.  On February 22, 2008, plaintiffs took out a loan

from Taylor, Bean & Whitaker to refinance their home.  *Id.* at 1, ¶ 1.  Plaintiffs allege that

BANA "initiated foreclosure proceedings on August 16, 2010," by recording certain

documents with the Clerk and Recorder's Office for the County of Arapahoe, Colorado,

including a Statement by Attorney for Qualified Holder Pursuant to 38-38-101, C.R.S.

*Id.* at 4, 7 ¶¶ 11, 20; Docket No. 1-1 at 9.[2]  Plaintiffs allege that, at that time, BANA was

a "mere servicer" of plaintiffs' loan. *Id.* at 4, ¶ 11.

On August 1, 2011, an assignment of plaintiffs' deed of trust and promissory note

from MERS to BAC Home Loans Servicing, L.P. ("BAC")[3] was recorded in Arapahoe

County.  Docket No. 1-1 at 4-5; Docket No. 115 at 5, ¶ 16.  On October 27, 2011,

defendant moved the Arapahoe County District Court for an order authorizing sale of

plaintiffs' home.  Docket No. 115 at 4, 10 ¶¶ 11, 32.  Plaintiffs allege that it "therefore

follows that on August 16, 2010 the defendant did not have a proper assignment" and

was not in possession of plaintiffs' promissory note or deed of trust, although BANA

claimed that it did have possession of these documents in its filings with the Arapahoe

County Clerk.  *Id.* at 4, ¶ 11.  Plaintiffs allege that, "[i]n order to foreclose," BANA

fabricated an assignment of plaintiffs' promissory note and deed of trust from Mortgage

Electronic Registration Systems, Inc. ("MERS") to BANA.  *Id.* at 5, ¶ 12.  The

assignment is dated April 28, 2011.  *Id.* at 7, ¶ 21.

In the fall of 2010, plaintiffs filed for bankruptcy.  Docket No. 115 at 9, ¶ 30.

BANA did not appear at the creditor meetings and did not move for relief from the

_____

[2]In their amended complaint, plaintiffs cite to the exhibits attached to their initial
complaint. *See, e.g.*, Docket No. 115 at 15, ¶ 49.  On a Rule 12(b)(6) motion to
dismiss, a court may consider a document attached to a pleading or incorporated by
reference. Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a
pleading is part of the pleading for all purposes.").

[3]In July 2011, BAC "merged with and into" BANA. *Sartori v. Susan C. Little &
Assocs., P.A.*, --- Fed. App'x ----, 2014 WL 3302588, at *1 (10th Cir. July 9, 2014).

automatic stay. *Id.* at 10, ¶ 32. Plaintiffs allege that BANA "deliberately avoided filing a motion to lift the automatic stay in Plaintiffs' bankruptcy proceedings because it knew that it had no valid assignment of the note and deed of trust to support a proof of claim in bankruptcy court." *Id.* at 25, ¶ 89.

After BANA filed its October 27, 2011 motion for an order authorizing sale, the state court held a hearing pursuant to Colorado Rule of Civil Procedure 120 ("Rule 120"). Docket No. 115 at 7, ¶ 20. At the hearing, BANA did not produce the allegedly fabricated assignment. *Id.* BANA "made no claim that it is the successor of [Taylor, Bean & Whitaker] and offered no proof that [plaintiffs' promissory note] was assigned to it." *Id.* at 10, ¶ 33. BANA produced a document that appears to be plaintiffs' promissory note. *Id.* at 15, ¶ 49. The note is endorsed in blank by Eria Carter-Shaw as "E.V.P." for Taylor, Bean & Whitaker Mortgage Corp. Docket No. 1-1 at 26. Plaintiffs allege, *inter alia*, that there is "no verified identity" as to Ms. Shaw, that she does not exist, that she did not sign plaintiffs' promissory note, that she did not have authority to sign the note, and that her signature is a forgery. Docket No. 115 at 16, ¶ 52.

Plaintiffs allege that at the Rule 120 hearing 1) BANA was not required to produce a "valid assignment"; (2) the state court did not inquire into "the manner in which [BANA] acquired plaintiffs' promissory note"; (3) BANA was not required to produce "evidence as to the origin, date and purpose of delivery of plaintiffs' promissory note" to BANA; and (4) the state court "hear[d] testimony via telephone of a witness whose identity and credibility was challenged."[4] Docket No. 115 at 30-31, ¶¶ 110, 111.

---

[4]Plaintiffs do not raise this evidentiary issue in their objections to the Recommendation and thus the Court considers it waived. *See Soliz v. Chater*, 82 F.3d

In the fall of 2012, BANA moved to dismiss its state court foreclosure action. Docket No. 115 at 11, ¶ 35. The state court dismissed the action without prejudice on September 21, 2012. *Id.* On May 3, 2013, BANA filed another motion for an order authorizing sale of plaintiffs' property. *Id.* BANA's second foreclosure case was closed on November 20, 2013 and is no longer pending before the state court. *See Bank of America, N.A. v. Mbaku*, Case No. 2013CV200883 (D. Ct. Arapahoe Cnty. Colo. Nov. 20, 2013).

In their amended complaint, plaintiffs assert claims under the equal protection and due process clauses of the Fourteenth Amendment to the United States Constitution and under the CFDCPA. Docket No. 115 at 35-38. Plaintiffs request the following relief:

A.    Preliminarily and permanently enjoin all proceedings subsequent to and under Rule 120 and Colo. Rev. Stat. § 38-38-101 *et seq*;

B.    Preliminarily and permanently enjoin the sale of plaintiffs' property in a foreclosure sale;

C.    Declaratory and injunctive relief dismissing the foreclosure of plaintiffs' property with prejudice;

D.    Declaratory and injunctive relief declaring the mortgage, promissory note and other related instruments of plaintiffs void and unenforceable;

E.    Declaratory and injunctive relief declaring Rule 120; Colo. Rev. Stat. § 38-38-100.3(10),(20) and Colo. Rev. Stat. § 38-38-101(1)(b)(II) unconstitutional;

F.    Award the plaintiffs actual damages;

_____

373, 375-76 (10th Cir. 1996) (arguments not raised in an objection to a magistrate judge's recommendation are waived).

G.      Award the plaintiffs punitive damages;

H.      Grant such other relief as the Court deems just, equitable and proper.

*Id.* at 39.

## II. ANALYSIS

### A. Constitutional Claims

#### 1. Declaratory Judgment

Plaintiffs "contend that [Rule 120] is unconstitutional on its face and/or as applied in this case." Docket No. 115 at 2, ¶ 4. In Count II of the amended complaint, they allege that Rule 120 and Colo. Rev. Stat. §§ 38-38-101 *et seq.* "violate the due process clause of the U.S. Constitution by improperly shifting the burden of proof from the bank to the Plaintiffs." *Id.* at 36, ¶ 129. In Count III, plaintiffs allege that these statutes violate the equal protection clause of the United States Constitution. *Id.* at 36, ¶ 130. In Count IV, they allege that defendant violated plaintiffs' "right not to have their real property taken from them without due process of law." *Id.* at 37, ¶ 131. Plaintiffs request relief in the form of, *inter alia*, (1) a permanent injunction against "all proceedings subsequent to and under Rule 120 and Colo. Rev. Stat. §§ 38-38-101 *et seq.*" and (2) a declaration that Rule 120 and Colo. Rev. Stat. §§ 38-38-100.3(10), (20), and 38-38-101(1)(b)(II) are unconstitutional. *Id.* at 39, ¶¶ A and E.

The magistrate judge found that Counts II and III "seek[] a declaratory judgment and injunctive relief in connection with the constitutionality of Colorado's Rule 120 foreclosure process." Docket No. 141 at 6. In its response to plaintiffs' objections, BANA argues that plaintiffs cannot obtain a declaratory judgment regarding the

constitutionality of the cited laws because the State of Colorado is not a defendant in this case.  Docket No. 148 at 9-10.

Under the Declaratory Judgment act, "[i]n a case of actual controversy within its jurisdiction," a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  A declaratory judgment is available where there is a dispute between the parties that is "definite and concrete, touching the legal relations of parties having adverse legal interests," as well as "real and substantial," admitting of "specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) ("Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.") (citation omitted).

On July 8, 2013, the Colorado Attorney General gave "notice of his intervention in this matter to defend the constitutionality of C.R.C.P. 120 proceedings."  Docket No. 58 at 1.  The Attorney General intervened pursuant to 28 U.S.C. § 2403(b), which provides that,

> In any action, suit, or proceeding in a court of the United States to which a State or any agency, officer, or employee thereof is not a party, wherein the constitutionality of any statute of that State affecting the public interest is drawn in question, the court shall certify such fact to the attorney general of the State, and shall permit the State to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality.

*Id.* at 2.  Under this statute, "[t]he fact that [a constitutional question] is involved must be

7

certified to the Attorney General and the [state] must be permitted to intervene with all the rights of a party." *Int'l Ladies' Garment Workers' Union v. Donnelly Garment Co.*, 304 U.S. 243, 249 (1938).  The Attorney General stated that his intervention did not waive the State of Colorado's sovereign immunity under the Eleventh Amendment or any defense to claims for equitable or monetary relief available to state agencies, officers, or employees.  Docket No. 58 at 2.

Parties may challenge the constitutionality of state laws in legal disputes with private parties.  *See, e.g.*, *Wreyford v. Citizens for Transp. Mobility, Inc.*, 957 F. Supp. 2d 1378, 1379-80 (N.D. Ga. 2013) (non-profit and limited liability corporation argued that Telephone Consumer Protection Act was unconstitutional as applied to them in suit brought by individual cellphone user; United States intervened to defend law); *Simonian v. MeadWestvaco Corp.*, 812 F. Supp. 2d 925, 928 (N.D. Ill. 2011) (defendant corporation in qui tam action argued that 35 U.S.C. § 292 violates the take care clause of United States Constitution; United States intervened to defend law); *MONY Life Ins. Co. v. Ericson*, 533 F. Supp. 2d 921, 923 n.2, 928 (D. Minn. 2008) (in interpleader action regarding family members' competing claims to life insurance policy, father argued that state law was unconstitutional as applied to him; State Attorney General declined to intervene and court held that state law was unconstitutional to the extent it retroactively revoked beneficiary designations).  Indeed, the structure of § 2403(b) suggests that the constitutionality of a state law may arise in litigation between private parties and that the state may decline to intervene.

In this case, there is a "definite and concrete" dispute between plaintiffs and BANA that turns on whether BANA may use Rule 120 and Colo. Rev. Stat. §§ 38-38-

101 *et seq.* to foreclose on plaintiffs' property. *See MedImmune*, 549 U.S. at 127. If the Court were to find that the challenged statutes were unconstitutional, either facially or as applied to plaintiffs, BANA would be required to use other means to vindicate its purported interest in plaintiffs' property.[5] On the other hand, if the Court were to find no constitutional defect, BANA would be able to seek available remedies under the challenges statutes. Thus, the parties' dispute is susceptible to resolution "through a decree of a conclusive character." *See id.*

### 2. Due Process

The magistrate judge recommends that the Court dismiss plaintiffs' claim for a judgment declaring Colorado's non-judicial foreclosure procedure unconstitutional under the due process clause of the Fourteenth Amendment to the United States Constitution. Docket No. 141 at 12-16; *see* Colo. Rev. Stat. §§ 38-38-100.3 *et seq.*; Colo. R. Civ. P. 120. In their objections, plaintiffs argue that the Court should find the challenged provisions unconstitutional on the grounds that: (1) the state court issued an Order Authorizing Sale based on BANA's possession of a promissory note endorsed in blank, even though BANA did not produce evidence to show how it came into possession of the note; and (2) the hearing provided for by Colorado Rule of Civil Procedure 120 is unduly limited in scope. Docket No. 143 at 15.

The due process clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S.

---

[5]The Court notes that this issue is distinct from the question of whether BANA is a state actor for the purpose of 42 U.S.C. § 1983, which is addressed in Part I.A.3.a of this Order.

Const. amend. XIV, § 1.  "There can be no doubt that at a minimum [the due process clause] require[s] that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case."  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 312-13 (1950).

The Court will begin by determining whether plaintiffs sufficiently allege that their constitutional rights were violated in the course of the Rule 120 proceedings.  *See Renne v. Geary*, 501 U.S. 312, 324 (1991) ("even if one may read the complaint to assert a facial challenge, the better course might have been to address in the first instance the constitutionality of [the law] as applied")*.*

### a. Negotiable Instruments

Plaintiffs argue that their right to due process was violated because the state court found that BANA had standing to foreclose under Colorado law, based on its possession of plaintiffs' promissory note, which is endorsed in blank.[6]  *See* Docket No. 143 at 15 ("Plaintiff's [sic] 'opportunity to respond' in the Rule 120 proceeding is effectively shut by the Rule 120 court's finding that possession alone is sufficient for standing purposes and therefore the burden of proof as a practical matter **never devolves** upon the party seeking the order of sale as required by *Goodwin v. Dist. Court In & For the Sixteenth Judicial Dist.*, 779 P.2d 837 (Colo. 1989)].") (emphasis in original); *see id.* ("Even in this case, at the 2013 preliminary injunction hearing, possession again was sufficient for this Court to find standing.  As the law is currently

---

[6]It appears that plaintiffs intend to raise the issue of Colorado constitutional standing as opposed to statutory standing.  *See* Docket No. 143 at 4 ("Colorado state law stands for the proposition that constitutional standing requirements are validly observed with the filing of a mere photocopy and an unsworn statement.").

applied, standing is an impregnable fortress so long as possession is the only thing that determines it.").

Colorado foreclosure law presumes that a person "in possession of a negotiable instrument evidencing a debt, which has been . . . indorsed in blank" is a "holder of an evidence of debt" and thus has standing to foreclose. Colo. Rev. Stat. §§ 38-38-100.3(10)(c), 38-38-101. This provision is not, as plaintiffs imply, unique to Colorado foreclosure law, but is instead part of the law of negotiable instruments as set forth in Article III of the Uniform Commercial Code ("UCC"), which every state except for New York and South Carolina has adopted. *See* Colo. Rev. Stat. §§ 4-1-101 *et seq.* (2006); U.C.C. §§ 3-101 *et seq.* (2002); States Adopting the UCC, *available at* http://uniformcommercialcode.uslegal.com/states-adopting-the-ucc/.

Under Colorado law, a "negotiable instrument" is an

unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:

(1)  Is payable to bearer or to order at the time it is issued or first comes into possession of a holder;

(2)  Is payable on demand or at a definite time; and

(3)   Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

Colo. Rev. Stat. § 4-3-104(a). A "promise or order that is not payable to bearer is payable to order if it is payable (i) to the order of an identified person." *Id.* at § 4-3-109(b). A promissory note that contains "an unconditional promise to pay and a fixed

11

date of payment" is a negotiable instrument.  *See Haberl v. Bigelow*, 855 P.2d 1368,

1372 (Colo. 1993).  A "holder" is a "person in possession of a negotiable instrument that

is payable either to bearer or to an identified person that is the person in possession."[7]

Colo. Rev. Stat. § 4-1-201(b)(20).  An "indorsement" is a "signature, other than that of a

signer as maker, drawer, or acceptor, that alone or accompanied by other words is

made on an instrument for the purpose of (i) negotiating the instrument."[8]  *Id.* at § 4-3-

204(a).  The indorsement of an instrument by someone who is not a holder "does not

affect the manner in which the instrument may be negotiated."  *Id.* at § 4-3-205(d).  "A

signature may be made . . . by means of a device or machine."  Colo. Rev. Stat. § 4-3-

401(b).  An indorsement that does not "identif[y] a person to whom it makes the

instrument payable" is known as a "blank indorsement."  *Id.* at §§ 4-3-205(a)-(b).  "When

indorsed in blank, an instrument becomes payable to bearer and may be negotiated by

transfer of possession alone."  *Id.* at § 4-3-205(b).

 Of relevance to this case is the UCC provision allowing the "holder"–that is, the

person in physical possession–of an instrument endorsed in blank to enforce the

instrument, even if that person "is not the owner of the instrument or is in wrongful

possession of the instrument."  *Id.* at § 4-3-301; *see also McDonald v. OneWest Bank,*

---

[7]A "holder" is different from a "holder in due course"; in order to be a holder in
due course, a person must, among other things, take the instrument for value, in good
faith, and without notice that it may be subject to certain defects or defenses.  *Compare*
Colo. Rev. Stat. § 4-1-201(b)(20) *with id.* at § 4-3-302(a)(2).

[8]However, "regardless of the intent of the signer, a signature and its
accompanying words is an indorsement unless the accompanying words, terms of the
instrument, place of the signature, or other circumstances unambiguously indicate that
the signature was made for a purpose other than indorsement."  Colo. Rev. Stat. § 4-3-
204(a).

*F.S.B.*, 680 F.3d 1264, 1266 (10th Cir. 2012) ("As the commercial code makes clear, a person entitled to enforce an instrument may be a holder, and need not be an owner, of the instrument.  Contrary to Mr. McDonald's position, nothing in the law states that 'holder in due course' status is required.") (citing Colo. Rev. Stat. § 4-3-301); *La Junta State Bank v. Travis*, 727 P.2d 48, 52 n.4 (Colo. 1986) ("The stipulation of facts and the evidence presented at trial do not make clear the manner in which Quick obtained possession of the check.  This factor does not, however, alter our analysis; once Quick obtained possession of the check, he was a holder of bearer paper, and whether or not the owner thereof, he had the right to transfer or negotiate the check.").

Although the issuer of a negotiable instrument can defend against its enforcement based on the theory that the instrument was lost or stolen, the burden of proving this defense rests with the issuer: "An obligor is not obliged to pay the instrument if the person seeking enforcement of the instrument does not have rights of a holder in due course and the obligor proves that the instrument is a lost or stolen instrument."  Colo. Rev. Stat. § 4-3-305(c); *see also id.* at cmt. ¶ 4 ("The last sentence of subsection (c) allows the issuer of an instrument such as a cashier's check to refuse payment in the rare case in which the issuer can prove that the instrument is a lost or stolen instrument and the person seeking enforcement does not have rights of a holder in due course.").

If a defendant in a Rule 120 proceeding challenges the plaintiff's standing to foreclose, the burden shifts to the plaintiff to prove at the hearing that it is legally entitled to foreclose by, for example, proving that it is in possession of the original promissory note, endorsed in blank.  *See Goodwin*, 779 P.2d at 843.  *Goodwin* does not require

13

that a plaintiff prove facts beyond those necessary to establish its standing to foreclose under Colorado law.  *See id.*

Tenth Circuit precedent is consistent.  Plaintiffs cite *In re Miller*, 666 F.3d 1255, 1263-64 (10th Cir. 2012), presumably for the following statement: "In the case of bearer paper such as the [Promissory] Note, physical possession is essential because it constitutes proof of ownership and a consequent right to payment."  Docket No. 143 at 3.  Plaintiffs read this to mean that, "under the Tenth Circuit Court of Appeals controlling precedent, the Defendant is not the holder of Plaintiffs' promissory note as the appellate Court draws no distinction between an owner and holder/qualified holder."  Docket No. 130 at 2.  This interpretation of *In re Miller* is incorrect.  That sentence in *In re Miller* means that physical possession of a promissory note endorsed in blank is itself sufficient to establish a right to enforcement.  *See* 666 F.3d at 1264.  Thus, the Tenth Circuit held that the plaintiff had to prove it was in possession of the promissory note, but did not hold that the plaintiff had to prove any additional facts such how it came to possess the note.  *Id.* at 1263.  In addition, the appellate court held that a party can establish its standing to foreclose simply by complying with the requirements of Colo. Rev. Stat. § 38-38-101(1)(b)(II).  *See Miller*, 666 F.3d at 1265 ("There is no evidence that Deutsche Bank or its attorneys have executed [the certification provided for in Colo. Rev. Stat. § 38-38-101(1)(b)(II)] or intend to do so.  We therefore reject Deutsche Bank's claim to standing founded on these statutes.").

This framework does not, as plaintiffs suggest, do away with the injury requirement necessary to establish standing under Rule 120.  *See Ainscough v. Owens*, 90 P.3d 851, 855 (Colo. 2004) (reciting the "two prongs of Colorado's test for standing:

14

the plaintiff suffered (1) an injury-in-fact, (2) to a legally protected interest").[9]  A legally

protected interest may be one that arises from a constitution, a statute, or case law.  *Id.*

at 856.  Since the UCC grants a party the right to enforce a negotiable instrument in its

possession when such a note has been endorsed in blank, the right to enforcement is a

legally protected interest arising from a statute and thus the denial of or interference

with that right constitutes an actual injury.

In this case, plaintiffs' promissory note is a negotiable instrument since it contains

an unconditional promise to pay and a fixed date of payment.  *See* Docket No. 113 at 2,

¶ G (requesting the Court take judicial notice of the documents recorded in the County

of Arapahoe, Colorado pertaining to the foreclosure of plaintiffs' home); *Haberl*, 855

P.2d at 1372.[10]  Accordingly, if the note is endorsed in blank, it may be enforced based

on physical possession.  Plaintiffs' disagreement with the wisdom of this statutory

framework does not demonstrate that they were deprived of either notice or an

"opportunity for hearing appropriate to the nature of the case."  *See Mullane*, 339 U.S.

at 312-13.

### b.  Scope of Rule 120 Hearing

---

[9]Plaintiffs cite *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), in support of
their Rule 120 standing argument, *see* Docket No. 143 at 4, but that case applies only
to standing in federal courts; states may define their own standing requirements.  *See,
e.g.*, *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2667 (2013) (recognizing "California's
sovereign right to maintain . . . the right of initiative proponents to defend their initiatives
in California courts, where Article III does not apply").

[10]On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6),
the Court may take judicial notice of matters of public record, as well as documents that
are central to the complaint and incorporated into it by reference.  *Tal v. Hogan*, 453
F.3d 1244, 1265 n.24 (10th Cir. 2006); *GFF Corp. v. Associated Wholesale Grocers,
Inc.*, 130 F.3d 1381, 1384-85 (10th Cir. 1997).

In their objections to the Recommendation, plaintiffs argue that, due to the limited scope of a Rule 120 hearing, they are forced to file a collateral action to assert their rights and must therefore

> bear the burden of proof of their collateral attacks such as pointing to (1) the admission of non-ownership; (2) the violation of the [Taylor, Bean & Whitaker] bankruptcy injunction preventing the transfer [of] Plaintiffs' deed of trust, promissory note and servicing rights arising thereunder; (3) the forged endorsement; (4) false assignment; and (5) the fact that payments under their promissory note are covered by insurance proceeds.

Docket No. 143 at 15.  Plaintiffs contend that the "need to file a collateral action violates due process because the standard as to standing remains the same." *Id.*  Plaintiffs further state that the "burden could simply be alleviated by requiring that the Rule 120 court determine real party in interest as it is its duty to do so." *Id.*

It is true, as plaintiffs note in their objections, that *Goodwin* stated that "the availability of a collateral remedy should not serve to divest the Goodwins of their opportunity to defend against the deprivation of their real property interest by showing that the parties seeking the order of sale were without authority to exercise the power of sale." Docket No. 143 at 14 (quoting *Goodwin*, 779 P.2d at 843).  However, *Goodwin* itself has strengthened the procedural protections afforded to defendants at Rule 120 hearings:

> The due process protections contemplated by Rule 120 will be satisfied only when a court conducting a Rule 120 proceeding considers all relevant evidence in determining whether there is a reasonable probability of a default or other circumstance authorizing the exercise of the power of sale under the terms of the instrument described in the Rule 120 motion.  The court's resolution of the Rule 120 motion, therefore, should necessarily encompass a consideration not only of the evidence offered by the creditor seeking the order of sale but also of any evidence offered by the debtor to controvert the moving party's evidence or to support a legitimate defense to the motion.  A court's refusal to consider such properly offered evidence in resolving the

16

issue of default adversely to the debtor is tantamount to the taking of property in a summary fashion without any hearing at all–a deprivation clearly violative of due process of law.

779 P.2d at 842. *Goodwin* further held that, "[o]nce a debtor in a Rule 120 proceeding raises the 'real party in interest' defense, [] the burden should devolve upon the party seeking the order of sale to show that he or she is indeed the real party in interest." *Id.* at 843. *Goodwin* requires the consideration of "all relevant evidence in determining whether there is a reasonable probability of a default or other circumstances authorizing the exercise of the power of sale." *Id.* at 842.

There is no basis for the Court to conclude that the judge in the Rule 120 hearing in this case did not follow *Goodwin*. Moreover, plaintiffs do not allege in their complaint that they raised or attempted to raise the issues noted above during the Rule 120 hearing, were prevented from doing so, or were otherwise denied a fair hearing by the state court judge.[11]  *See generally* Docket No. 115.  The allegations in the complaint fail to state a claim that plaintiffs' right to due process was violated in this case.

### 3. *Equal Protection*

The magistrate judge recommends that the Court dismiss plaintiffs' claims pursuant to the equal protection clause of the Fourteenth Amendment.  Docket No. 141 at 6-11.

### a.  42 U.S.C. § 1983

The magistrate judge found that plaintiffs cannot maintain their equal protection claim pursuant to 42 U.S.C. § 1983 against defendant because defendant is not a state

---

[11]The Court notes that the fact that the state court judge did not find in favor of plaintiffs is not evidence that their arguments were not given due consideration.

actor.  Plaintiffs argue that defendant is a state actor "on the basis, among other things, of its drafting of the challenged statute in conjunction with state public trustees."  Docket No. 143 at 5.  Plaintiffs further argue that their allegations regarding state action go beyond "simple misuse of the state statute" because defendant did not file a claim in plaintiffs' bankruptcy proceeding and allegedly fabricated an assignment of plaintiffs' deed of trust and the indorsement on plaintiffs' promissory note.  *Id.* at 5-6.

Section 1983 of Title 42 of the United States Code creates a private right of action against the violation of constitutional rights under the color of state law.  Only parties determined to be "state actors" may be held liable under § 1983.  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999).  By using the phrase "misuse of the state statute," Docket No. 143 at 5, plaintiffs refer to the theory that "invocation of a state statute without the grounds to do so [can] in no way be attributed to a state rule or a state decision" and thus is not sufficient to make a private party into a state actor.  *See Yanaki v. Iomed, Inc.*, 415 F.3d 1204, 1208 (10th Cir. 2005) (citation and quotation marks omitted).

Plaintiffs' assertions regarding defendant's counsel's participation in the drafting of the non-judicial foreclosure scheme do not establish defendant's status as a state actor for several reasons.  First, a private citizen may lobby the government and urge the passage of legislation without becoming a state actor.  *See Sheikh v. Rabin*, --- Fed. App'x ----, 2014 WL 1876266, at *6 (7th Cir. May 12, 2014) ("Successful lobbying, though, does not turn [] neighbors into state actors."); *see also Missere v. Gross*, 826 F. Supp. 2d 542, 568-69 n.18 (S.D.N.Y. 2011) (the lobbying activity of a private actor does not constitute state action under § 1983 and is constitutionally protected) (citation

omitted).  Moreover, plaintiffs assert that defendant's foreclosure counsel, Lawrence Castle, drafted the statute, which was enacted in 2006, several years before defendant initiated foreclosure proceedings against plaintiffs' property.  *See* 2006 Colo. Sess. Laws Ch. 305, § 7; Docket No. 143 at 6; Docket No. 115 at 4, ¶ 11 ("the defendant initiated foreclosure proceedings on August 16, 2010").  There is, however, no basis for ascribing Mr. Castle's conduct to BANA.  Finally, plaintiffs do not raise their allegations regarding Mr. Castle's legislative activities in the amended complaint, but rather assert them for the first time in their objections.

Plaintiffs assert that "this case is not limited to misuse of statute alone, but involves the joint efforts of a private party and state officials in order to bestow upon the Defendant rights that it did not have prior to the 2006 changes in the Colorado foreclosure statutes." Docket No. 143 at 5.  However, all of the conduct, apart from lobbying, that plaintiffs argue constitutes state action is related to plaintiffs' allegation that defendant sought to foreclose without the legal right to do so.  Specifically, plaintiffs allege that defendant forged an assignment of plaintiffs' deed of trust and a blank indorsement on plaintiffs' promissory note.  *Id.* at 6.  These allegations establish the private misuse of a state law, which, as noted in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 940-41 (1982), "does not describe conduct that can be attributed to the State."

Plaintiffs further allege that defendant declined to file a claim in plaintiffs' bankruptcy proceeding.  There is, however, no obligation to file a claim in bankruptcy. *See* 11 U.S.C. § 501(a) (providing that a creditor "may file a proof of claim").  On the contrary, since a party's right to foreclose survives bankruptcy, *see Johnson v. Home State Bank*, 501 U.S. 78, 82-83 (1991), a creditor may in some instances prefer to wait

until the bankruptcy proceeding is over to enforce its secured interest.  Accordingly, this allegation does not suggest misconduct on defendant's part or make defendant into a state actor.

In sum, because plaintiffs fail to allege facts that support defendant being a state actor, defendant is not subject to liability on plaintiffs' § 1983 claim.

### b. Declaratory Judgment

Plaintiffs seek a judgment declaring that Colo. Rev. Stat. § 38-38-100.3(20) violates the equal protection clause because it affords certain rights to corporations pursuing a foreclosure that it denies to natural persons whose property is subject to foreclosure: "it is the intent of the state of Colorado to favor corporate citizens . . . over citizens that are natural persons and remove from corporate citizens the burden of having to show injury and then transfer upon natural person citizens the burden of showing that injury did not occur."  Docket No. 143 at 7.

The equal protection clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  It "is essentially a direction that all persons similarly situated should be treated alike."  *Lawrence v. Texas*, 539 U.S. 558, 579 (2003) (citation and quotation marks omitted).

Plaintiffs' equal protection argument is unavailing because plaintiffs, as potential defendants in a foreclosure proceeding, are not similarly situated to defendant.  *See Lawrence*, 539 U.S. at 578.  To the extent that Colo. Rev. Stat. § 38-38-100.3(20)[12]

_____

[12]Colo. Rev. Stat. § 38-38-100.3(20) defines a "qualified holder"–that is, someone entitled to initiate a foreclosure on the basis of a photocopy of the evidence of debt and

distinguishes between incorporated and natural persons, it does so by limiting who may

initiate foreclosure proceedings as a qualified holder of an evidence of debt.  Natural

persons pursuing a foreclosure under Rule 120 are similarly situated to defendant;

homeowners defending against a foreclosure are not.  As the legislature has no

obligation to afford the same rights and privileges or impose the same duties and

obligations on persons who are not similarly situated, plaintiffs fail to state a claim for

declaratory relief under the equal protection clause.  *See Tuan Anh Nguyen v. I.N.S.*,

533 U.S. 53, 63 (2001) (the "imposition of a different set of rules for making [a] legal

determination with respect to" persons who are not similarly situated "is neither

surprising nor troublesome from a constitutional perspective").

### B.  Colorado Fair Debt Collections Practices Act

The magistrate judge recommends that the Court deny defendant's motion to

dismiss plaintiffs' complaint under §§ 12-14-107(1) and 12-14-108(1) of the Colorado

Fair Debt Collection Practices Act ("CFDCPA").[13]  Docket No. 141 at 16-21.  Defendant

objects on the grounds that (1) plaintiffs do not allege the details of the purported fraud

with sufficient particularity; (2) plaintiffs' allegations are undermined by the documents

they submitted to this Court for judicial notice, *see* Docket No. 113; (3) plaintiffs do not

---

a qualified holder statement–as (1) a bank; (2) a federally chartered savings and loan association doing business in Colorado; (3) a supervised lender that is or is owned by a public entity; (4) a mortgagee approved by the Federal Housing Administration; (5) a credit union; (6) a department or agency of the federal government; or (7) a government-sponsored entity that originates, insures, guarantees, or purchases loans.

[13]Section 12-14-107(1) prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Section 12-14-108(1) prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

allege they were damaged by the purported fraud; and (4) plaintiffs' claims regarding the false assignment are precluded by the Court's January 10, 2014 Order.  Docket No. 147 at 3-7.

In their amended complaint, plaintiffs make the following allegations with respect to their claim that defendant violated Colo. Rev. Stat. § 12-14-108(1) by forging the endorsement on plaintiffs' promissory note:

> During the course of the rule 120 hearing, BOA produced a note with no actual signature on it but rather a "***facsimile signature***" that is part of a signature stamp it claims to be proper endorsement.  Plaintiffs contend that the said signature is a forgery, a fabricated signature just as the assignment of the promissory note and deed of trust was fabricated.  As a result, BOA cannot and would not offer TBW corporate record (resolution) relating to a facsimile signature of that officer as being valid.  There is no date as to the purported endorsement, and no notary signature or stamp.  More importantly, there was no allonge indicating that it has been transferred to another party. . . .

> In the instant case, the note itself was purportedly "signed" by one "Erla [sic] Carter-Shaw".  BOA cannot and would not provide evidence as to: a) who this person is; b) what her title and position are; c) whether this person had the authority to endorse the note, as described in corporate records and on what date–as the signature is not dated; d) whether this document was in fact "signed" by her; e) who the notary public who witnessed the signature is; f) where the notary log book is; g) whether the notary's signature is in fact legitimate and not fraudulent; h) whether the identity of the notary has been verified.

> There is no verified identity as to "Erla Carter-Shaw" and Plaintiffs contend that she does not exist.  She did not "sign" the document; therefore the purported "signature" is a forgery.  She does not have authority to "sign" a mortgage assignment. . . .

> Erla Carter Shaw whose name appears on Plaintiffs' purportedly endorsed note does not exist; Erla Carter Shaw is not a corporate officer of TBW; the term "EVP" is not a corporate officer designation of TBW; Erla Carter Shaw was not authorized to endorse Plaintiffs' promissory note; Erla Carter Shaw's facsimile signature was not authorized; Erla Carter Shaw did not sign plaintiffs' promissory note; Erla Carter Shaw's purported undated endorsement is invalid; Erla Carter Shaw's purported signature is not

notarized and therefore invalid.

Docket No. 115 at 15-16, 22, §§ 49, 51-52, 78 (emphasis in original; internal citations omitted).

Under Federal Rule of Civil Procedure 9(b), a claim of fraud must be pled with particularity, meaning that a plaintiff must, at the minimum, "set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006) (quoting *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000)).  Although a plaintiff may plead "[m]alice, intent, knowledge, and other conditions of a person's mind" generally, Rule 9(b) "merely excuses a party from pleading discriminatory intent under an elevated pleading standard.  It does not give him license to evade the less rigid–though still operative–strictures of [Federal Rule of Civil Procedure] 8." *Ashcroft v. Iqbal*, 556 U.S. 662, 686-87 (2009).  "[A]llegations of fraud may be based on information and belief when the facts in question are peculiarly within the opposing party's knowledge and the complaint sets forth the factual basis for the plaintiff's belief." *Koch*, 203 F.3d at 1237 (quoting *Scheidt v. Klein*, 956 F.2d 963, 967 (10th Cir. 1992)).  Rule 9(b) does not "excuse the generality" of allegations that lack a factual basis. *Id.*

Under Colorado's Uniform Commercial Code, an individual may validly sign a document "by means of a device or machine."  Colo. Rev. Stat. § 4-3-401(b).  The comments to this section explain further that:

> A signature may be handwritten, typed, printed or made in any other manner.
> It need not be subscribed . . . . It may be made by mark, or even by thumb-
> print.  It may be made in any name, including any trade name or assumed

23

> name, however false and fictitious, which is adopted for the purpose. Parol evidence is admissible to identify the signer, and when the signer is identified the signature is effective.

*See id.*, at cmt. ¶ 2. In addition, a person may be bound by a contract that she has authorized someone else to sign on her behalf. *See* Colo. Rev. Stat. § 4-3-402(b)(1).

The magistrate judge noted that plaintiffs allege "that one of Defendant's employees forged an endorsement using Ms. Shaw's name on the promissory note pertaining to Plaintiffs' property some time prior to Defendant's recording of the document in county records, thus creating the appearance that Defendant was entitled to foreclose on Plaintiff's property," and held that these allegations meet the requirements of Rule 9(b). Docket No. 141 at 19. Defendant objects on the basis that "nowhere in the [amended complaint] do plaintiffs clearly identify BANA as the party who allegedly 'forged' the indorsement on the promissory note" or "clearly identify when BANA allegedly 'forged' the indorsement." Docket No. 147 at 4.

The Court agrees with defendant that plaintiffs do not meet the heightened pleading requirements of Rule 9(b) because they do not set forth the "who, what, when, where and how of the alleged fraud." *Sikkenga*, 472 F.3d at 727 (internal citations and quotation marks omitted).

Plaintiffs allege that the endorsement is forged because it does not bear an "actual signature," but rather a "'***facsimile signature***' that is part of a signature stamp." Docket No. 115 at 15, ¶ 49 (emphasis in original). This allegation is insufficient to state a claim for fraud because, under Colorado law, a signature stamp is valid unless it is made by someone who is not an authorized agent of the signatory. Colo. Rev. Stat. § 4-3-401(a), (b). Plaintiffs do not allege that Ms. Shaw's stamp was used without her

24

authorization.

Plaintiffs allege that the endorsement is invalid because it is undated and was not notarized, and because there is no allonge attached to the promissory note.  Docket No. 115 at 15, ¶ 49.  However, there is no requirement that an endorsement must be dated or notarized in order to be valid, or that it must be made on an allonge, as opposed to on the original document itself.[14]  *See* Colo. Rev. Stat. §§ 4-3-204(a) ("'Indorsement' means a signature, other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words is made on an instrument for the purpose of [] negotiating the instrument"); Colo. Rev. Stat. § 4-3-401(b).

Plaintiffs allege that Ms. Shaw does not exist and that she "does not have the authority to 'sign' a mortgage assignment."  Docket No. 115 at 16, ¶ 52.  These allegations are not only contradictory, but also conclusory insofar as plaintiffs do not set forth a factual basis to support either proposition.  *See Koch*, 203 F.3d at 1237.[15] Plaintiffs' allegations that Ms. Shaw is not a corporate officer of Taylor, Bean & Whitaker and that her title "E.V.P." is not a "corporate officer designation" of Taylor, Bean & Whitaker, Docket No. 115 at 22, ¶ 78, are similarly conclusory.  *See id.*

Plaintiffs further allege that defendant violated Colo. Rev. Stat. § 12-14-107(1) by fabricating and recording an assignment of plaintiffs' deed of trust.  Docket No. 115 at 5-

---

[14]An "allonge" is a "slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements."  Black's Law Dictionary 1859 (9th ed. 2009).

[15]Plaintiffs argue that the precise details of the forgery are unavailable to them. Docket No. 155 at 2.  Nevertheless, plaintiffs must plead some factual basis in support of their allegations that Ms. Shaw is a fictitious person and/or lacked authority to sign a mortgage assignment.  *See Koch*, 203 F.3d at 1237.  Plaintiffs have not done so.

6, 35, ¶¶ 12-16, 127.  As defendant points out, Docket No. 147 at 6, the Court has previously held that a "valid assignment is not necessary to initiate foreclosure proceedings under Colorado law."  Docket No. 108 at 8.  Thus, these allegations do not state a claim for relief under the CFDCPA.  *See also* Docket No. 26 at 7-8.

## III.  CONCLUSION

In the absence of an objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate.  *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings").  In this matter, the Court has reviewed the parts of the Recommendation to which no party has objected to satisfy itself that there is "no clear error on the face of the record."[16]  Fed. R. Civ. P. 72(b), Advisory Committee Notes.  Based on this review, the Court has concluded that the remaining portions of the Recommendation are a correct application of the facts and the law.  Wherefore, it is

**ORDERED** that the Recommendation of United States Magistrate Judge Kristen L. Mix (the "Recommendation") filed on July 2, 2014 [Docket No. 141] is ADOPTED in part and REJECTED in part.  It is further

**ORDERED** that the Motion to Dismiss Plaintiffs' First Amended Complaint [Docket No. 124] filed by defendant Bank of America, National Association is

---

[16]This standard of review is something less than a "clearly erroneous or contrary to law" standard of review, Fed.R.Civ.P. 72(a), which in turn is less than a de novo review.  Fed. R. Civ. P. 72(b).

GRANTED.  It is further

      **ORDERED** that the Second [sic] Amended Complaint for Declaratory and

Injunctive Relief [Docket No. 115] filed by plaintiffs John M. Mbaku and Luvibidila Jolie

Lumuenemo is DISMISSED.  It is further

      **ORDERED** that this case is CLOSED.

      DATED August 20, 2014.

                      BY THE COURT:

                    s/Philip A. Brimmer_____
                    PHILIP A. BRIMMER
                    United States District Judge